UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
                            :

INVISTA B.V., et al.

                            :

          Plaintiffs,     :

                            :

          v.                :          08 CV 3063 (SHS)

                            :

E.I. DU PONT DE NEMOURS AND COMPANY,  :

                            :

          Defendant.     :

                            :
-------------------------------------------------------------x

## ANSWER TO COUNTERCLAIMS

     Plaintiffs (collectively "INVISTA"), by and through their undersigned counsel, hereby submit their Answer to Counterclaims of Defendant E.I. du Pont de Nemours and Company ("DuPont").

     1.     INVISTA denies the allegations contained in the paragraph 1 of the Counterclaims, except admits that DuPont and two entities owned by Koch Industries, Inc., KED Fiber, Ltd. and KED Fiber, LLC (collectively "KED"), entered into a Purchase Agreement dated November 16, 2003, which was subsequently amended (hereinafter the "Purchase Agreement"), that pursuant to the Purchase Agreement, DuPont divested itself of its nylon, polyester and spandex operations comprising DuPont's Textiles and Interiors ("DTI") business, which constituted approximately one-third of the entire company, in a transaction that closed on April 30, 2004, and that Skadden, Arps, Slate, Meagher and Flom LLP served as deal counsel for DuPont and Latham & Watkins LLP served as deal counsel for INVISTA.

     2.     INVISTA denies the allegations contained in paragraph 2 of the Counterclaims, except admits that the Purchase Agreement was a negotiated agreement, and that it consists of 251 pages and multiple schedules and further states that: (a) the vast majority of

INVISTA's claims relate to sites at which DuPont restricted INVISTA's due diligence; (b) because of, among other things, the limited due diligence, DuPont made broad representations and warranties that the DTI facilities were in compliance with "Environmental Laws" (Sections 3.11) and agreed to broad indemnification for INVISTA's "Losses" arising from breaches of the representations and warranties, "Environmental Claims" and/or "requirements of Environmental Law" (Sections 8.4 and 8.5); and (c) the Parties agreed to a schedule to the Purchase Agreement entitled "Known Existing Violations of Environmental Law" (Schedule 1(hh)), which includes violations of the Prevention of Significant Deterioration ("PSD") and Non-Attainment New Source Review ("NNSR") regulations under the Clean Air Act at Victoria, Camden, Chattanooga and Seaford.

       3.    INVISTA denies the allegations contained in paragraph 3 of the Counterclaims, and refers to, among other provisions in the Purchase Agreement, Section 8.5(b) for the contents thereof.

       4.    INVISTA denies the allegations contained in paragraph 4 of the Counterclaims, and refers to, among other provisions of the Purchase Agreement, Section 8.5(e) including, without limitation, the qualifications set forth therein.

       5.    INVISTA denies the allegations contained in paragraph 5 of the Counterclaims, and refers to the Purchase Agreement for the contents thereof.

       6.    INVISTA denies the allegations contained in paragraph 6 of the Counterclaims, and refers to the Purchase Agreement for the contents thereof.

       7.    INVISTA denies the allegations contained in paragraph 7 of the Counterclaims, and refers to the Purchase Agreement for the contents thereof, including the definition of Retained Liability, which includes "DuPont Environmental Liabilities."

8.    INVISTA denies the allegations contained in paragraph 8 of the Counterclaims, and refers to the Purchase Agreement for the contents thereof.

9.    INVISTA denies the allegations contained in paragraph 9 of the Counterclaims, and refers to the Purchase Agreement for the contents thereof.

10.    INVISTA denies the allegations contained in paragraph 10 of the Counterclaims.

11.    INVISTA denies the allegations contained in paragraph 11 of the Counterclaims and states that (a) there is no requirement in the Purchase Agreement that INVISTA provide DuPont with "sufficient advance notice" of its intent to self report violations of Environmental Law to the EPA or TCEQ; and (b) nothing in the Purchase Agreement prohibits INVISTA from self reporting and/or taking reasonable steps to ascertain and document the true, accurate and complete scope of the "historic" "violations of Environmental Law" that existed at the DTI facilities.

12.    INVISTA denies the allegations contained in paragraph 12 of the Counterclaims, and states, by way of example, that:

a)    With knowledge that INVISTA was conducting various audits pursuant to an audit agreement between INVISTA and EPA, DuPont chose not to participate in any manner or to seek from INVISTA any information in connection therewith.

b)    By a 7-page letter to DuPont dated October 14, 2004, which preceded the first quarterly report submitted to EPA, INVISTA advised DuPont with respect to matters discovered during the audits to date, and stated, inter alia, that "[t]he violations included in this letter will be reported in INVISTA's quarterly report due October 31, 2004 under the Audit Agreement," and ". . . INVISTA is correcting any violations within the 60-day period

mandated by the Audit Policy or requesting additional time to correct if necessary." In addition, INVISTA stated in its October 14, 2004 letter: "[p]lease advise if, pursuant to Section 8.5(e) of the [Purchase Agreement] you wish to discuss the corrective actions being taken . . . "; and "[i]f you have any questions or dispute the claims set forth in these notice letters, please do not hesitate to contact me." DuPont did not respond or otherwise take action.

        c)      By letter to DuPont dated December 6, 2004, which enclosed the first quarterly report to EPA, INVISTA advised DuPont:

> This, and our prior letters, represent formal continuing notice under the [Purchase Agreement] and other documents relating thereto that INVISTA is entitled to indemnification for any Losses (as defined in the [Purchase Agreement]) that result from the matters disclosed in this letter. This letter is intended to provide an updated cumulative listing of the environmental issues in the United States of which INVISTA is presently aware and for which INVISTA is claiming indemnification from DuPont. As indicated in all our correspondence, INVISTA is continuing to review compliance at the facilities and will continue to make timely, necessary corrective action. For example, as you are aware from my prior letters, INVISTA is correcting any violations at the U.S. facilities that are covered by the Audit Agreement within the 60-day period mandated by the Audit Policy, or requesting additional time to correct if necessary. We construe the decision by DuPont not to discuss these corrective measures with us to represent acquiescence by DuPont in INVISTA's program to use its good faith efforts to resolve these matters in an appropriate and reasonable manner.

*    *    *

> If you wish to correspond with us concerning these matters, please contact me.

Again, DuPont did not respond or otherwise take action.

        13.      INVISTA denies the allegations contained in paragraph 13 of the Counterclaims, and states that (a) DuPont was fully apprised of the negotiations of the consent decree; (b) DuPont first responded to INVISTA's notice letters regarding the EPA audit claims

nearly ten months after it had received the first letter from INVISTA; and (c) when DuPont finally responded, DuPont informed INVISTA that it would participate in the meetings with the EPA and would assemble a "technical team" to work on solutions, yet shortly thereafter and without explanation changed its position and reverted to virtually ignoring the entire situation.

14.    INVISTA denies the allegations contained in paragraph 14 of the Counterclaims, and refers to the Complaint for the contents thereof.

15.    INVISTA denies the allegations contained in paragraph 15 of the Counterclaims, refers to EPA's policy on *Incentives for Self-Policing, Discovery, Disclosure, Correction and Prevention of Violations*, 65 Fed. Reg. 19,1618 (Apr. 11, 2000) (the "Audit Policy"), which encourages entities to act responsibly vis-à vis their employees and the public at large and to discover, promptly disclose and expeditiously correct violations of Federal environmental regulations (*see* 65 Fed. Reg. at 19,618), and states that (a) nothing in the Purchase Agreement prohibited INVISTA from self reporting (and any such provision would have violated public policy); and (b) the Department of Justice sent a tolling agreement to INVISTA stating that: "[t]he United States contends that it presently has potential causes of action against INVISTA regarding the INVISTA facilities in the United States pursuant to . . . the Clean Water Act . . . RCRA . . . the Clean Air Act  . . . and any other federally-enforceable environmental requirement under federal and state law," and INVISTA timely and sufficiently notified DuPont of this communication.

16.    INVISTA denies the allegations contained in paragraph 16 of the Counterclaims, and states that (a) INVISTA sent at least 182 letters to DuPont, many of which related to negotiations with EPA; and (b) DuPont had every reasonable opportunity to participate in the process with regulators, but chose not to do so.

17.     INVISTA denies the allegations contained in paragraph 17 of the Counterclaims, and states that, with respect to many of the Non-Consent Decree Claims, DuPont had itself identified the violations and noncompliance and determined the nature and scope of the remediation prior to Closing but, in many instances, did not approve or implement the remediation, or delayed approving and initiating the implementation of the remediation, to address the violations and noncompliance.

18.     INVISTA denies the allegations contained in paragraph 18 of the Counterclaims, except states that in certain of its notice letters, INVISTA identified Losses it had incurred to date in connection with the remediation of noncompliant conditions and, in many cases, the corrective action projects that INVISTA implemented had been developed, scoped, and approved by DuPont.

19.     INVISTA denies the allegations contained in paragraph 19 of the Counterclaims, and refers to the Complaint for the contents thereof.

20.     INVISTA denies the allegations contained in paragraph 20 of the Counterclaims, and refers to the Purchase Agreement for the contents thereof.

21.     INVISTA denies the allegations contained in paragraph 21 of the Counterclaims.

22.     INVISTA denies the allegations contained in paragraph 22 of the Counterclaims.

23.     INVISTA denies the allegations contained in paragraph 23 of the Counterclaims.

24.     INVISTA admits the allegations contained in paragraph 24 of the Counterclaims.

6

25.     INVISTA admits the allegations contained in paragraph 25 of the Counterclaims.

26.     INVISTA admits the allegations contained in paragraph 26 of the Counterclaims.

27.     INVISTA admits the allegations contained in paragraph 27 of the Counterclaims.

28.     INVISTA admits the allegations contained in paragraph 28 of the Counterclaims.

29.     INVISTA admits the allegations contained in paragraph 29 of the Counterclaims.

30.     INVISTA admits the allegations contained in paragraph 30 of the Counterclaims.

31.     INVISTA admits the allegations contained in paragraph 31 of the Counterclaims.

32.     INVISTA admits the allegations contained in paragraph 32 of the Counterclaims.

33.     INVISTA admits the allegations contained in paragraph 33 of the Counterclaims.

34.     With respect to paragraph 34 of the Counterclaims, INVISTA admits that Plaintiffs refer to themselves in the Complaint collectively as "INVISTA."

35.     INVISTA denies the allegations contained in paragraph 35 of the Counterclaims but does not dispute the Court's subject matter jurisdiction.

36.     INVISTA denies the allegations contained in paragraph 36 of the Counterclaims, except admits that the Purchase Agreement provides for the Court's exercise of personal jurisdiction over INVISTA with respect to the matters at issue.

37.     INVISTA admits the allegations contained in paragraph 37 of the Counterclaims.

38.     INVISTA admits the allegations contained in paragraph 38 of the Counterclaims as a general matter, but asserts that DuPont's purported counterclaims are not appropriate claims for consideration under 28 U.S.C. § 2201 et seq.

39.     INVISTA admits the allegations contained in paragraph 39 of the Counterclaims.

40.     INVISTA denies the allegations contained in paragraph 40 of the Counterclaims, and refers to the Purchase Agreement and the Complaint for the contents thereof.

41.     Paragraph 41 of the Counterclaims purports to be a summary statement of DuPont's Answer and Additional Defenses and therefore does not require an answer; to the extent that an answer may be required, INVISTA denies the allegations contained in paragraph 41 of the Counterclaims.

42.     INVISTA denies the allegations contained in paragraph 42 of the Counterclaims and refers to Section 8.5(e) of the Purchase Agreement.

43.     INVISTA denies the allegations contained in paragraph 43 of the Counterclaims, and refers to Section 8.5(e) of the Purchase Agreement.

44.     INVISTA denies the allegations contained in paragraph 44 of the Counterclaims.

45.     INVISTA denies the allegations contained in paragraph 45 of the Counterclaims, and refers to the Purchase Agreement for the contents thereof.

46.     INVISTA denies the allegations contained in paragraph 46 of the Counterclaims.

47.     INVISTA denies the allegations contained in paragraph 47 of the Counterclaims.

48.     INVISTA denies the allegations contained in paragraph 48 of the Counterclaims.

49.     INVISTA admits the allegations contained in paragraph 49 of the Counterclaims and refers to the Complaint for the contents thereof.

50.     INVISTA denies the allegations contained in paragraph 50 of the Counterclaims, and refers to the Purchase Agreement for the contents thereof.

51.     Paragraph 51 of the Counterclaims purports to be a summary statement of DuPont's Answer and Additional Defenses and therefore does not require an answer; to the extent that an answer may be required, INVISTA denies the allegations contained in paragraph 51 of the Counterclaims.

52.     INVISTA denies the allegations contained in paragraph 52 of the Counterclaims.

53.     INVISTA denies the allegations contained in paragraph 53 of the Counterclaims, and refers to Section 8.4(f) of the Purchase Agreement for the contents thereof.

54.     INVISTA denies the allegations contained in paragraph 54 of the Counterclaims.

55.     INVISTA denies the allegations contained in paragraph 55 of the Counterclaims.

56.     INVISTA denies the allegations contained in paragraph 56 of the Counterclaims.

57.     INVISTA denies the allegations contained in paragraph 57 of the Counterclaims.

58.     INVISTA denies the allegations contained in paragraph 58 of the Counterclaims, and refers to the Purchase Agreement for the contents thereof.

59.     INVISTA denies the allegations contained in paragraph 59 of the Counterclaims, and refers to the Purchase Agreement for the contents thereof.

60.     INVISTA denies the allegations contained in paragraph 60 of the Counterclaims.

61.     INVISTA denies the allegations contained in paragraph 61 of the Counterclaims, and refers to INVISTA's June 17, 2004 letter to DuPont for the contents thereof.

62.     INVISTA denies the allegations contained in paragraph 62 of the Counterclaims, and states that DuPont did not respond in any manner to INVISTA's June 17, 2004 letter.

63.     INVISTA denies the allegations contained in paragraph 63 of the Counterclaims.

64.     INVISTA denies the allegations contained in paragraph 64 of the Counterclaims, and states that INVISTA, faced with serious BWON and other violations by DuPont at the newly acquired facilities, the nature and extent of which threatened INVISTA's ability to continue to operate certain of said facilities, reasonably self-reported the violations to

EPA Region VI and TCEQ and that nothing in the Purchase Agreement precluded INVISTA from doing so.

65.    INVISTA denies the allegations contained in paragraph 65 of the Counterclaims, except states that (a) INVISTA, faced with serious BWON and other violations by DuPont at the newly acquired facilities, reasonably communicated with EPA Region VI and TCEQ, and nothing in the Purchase Agreement prevented INVISTA from doing so; and (b) INVISTA engaged in auditing activities at the newly acquired facilities and nothing in the Purchase Agreement precluded INVISTA from doing so, and admits:

a.    On June 3, 2004 INVISTA met with TCEQ regarding the nitrile stripper column.

b.    On June 7, 2004, INVISTA had a conference call with EPA Region VI regarding the Victoria facility.

c.    On June 7, 2004, INVISTA filed a Notice of Intent to Audit with TCEQ.

d.    On or about June 8, 2004, INVISTA began an audit of the Victoria facility.

e.    On June 14, 2004, INVISTA sent written notice to EPA Region VI, and refers to that written notice for the contents thereof.

f.    On June 16, 2004, INVISTA met with TCEQ.

g.    On June 18, 2004, INVISTA sent a letter to EPA Region VI, and refers to that letter for the contents thereof.

h.    On June 20, 2004, INVISTA met with EPA Region VI to discuss potential BWON violations at the LaPorte facility.

i.    On June 25, 2004, INVISTA met with TCEQ to discuss various issues at the Orange, LaPorte and Victoria facilities.

j.    On June 28, 2004, INVISTA sent a letter to EPA Region VI, and refers to that letter for the contents thereof.

k.    On June 29, 2004, INVISTA representatives met with EPA Region VI regarding the Victoria Cogeneration unit and the APF Filter Press at Orange.

l.     On or about July 1, 2004, INVISTA began an audit of the Seaford facility.

m.     On or about July 8, 2004, INVISTA began an audit of the Kinston and Kentec facilities.

n.     On July 9, 2004, INVISTA sent two letters to EPA Region VI, and refers to those letters for the contents thereof.

o.     On July 12, 2004, INVISTA sent a letter to EPA Region VI, and refers to that letter for the contents thereof.

p.     On or about July 12, 2004, INVISTA began a third-party audit of the Victoria facility.

q.     On July 13, 2004, INVISTA sent a letter to TCEQ, and refers to that letter for the contents thereof.

r.     On July 13, 2004, INVISTA sent a letter to EPA Region VI, and refers to that letter for the contents thereof.

66.     INVISTA denies the allegations contained in paragraph 66 of the

Counterclaims, and states that by letter dated July 13, 2004 captioned "Environmental Claims –

Notice #2", INVISTA advised DuPont as follows:

> I am writing to notify you of claims under the Purchase Agreement
> . . . . The claims are related to compliance with Environmental
> Laws (as defined in the [Purchase Agreement]) at the facilities
> located in Victoria, Orange (Sabine River Works), and LaPorte,
> Texas and to potential violations that have been discovered at those
> facilities. All of these violations began prior to and/or existed as of
> the Closing Date.

The July 13, 2004 letter identified potential violations at each of the three facilities under the

Clean Air Act and implementing regulations, including violations of the BWON relating to the

operation of the Nitrile Stripper Column and the benzene flasher at Victoria and the filter press at

Orange, and stated:

> II.     Actions Taken
>
> In order to reduce the risk of enforcement and to avail itself of the
> benefits afforded by EPA's Final Policy on "Incentives for Self-
> Policing: Discovery, Disclosure, Correction and Prevention of
> Violations" (the "Audit Policy"), INVISTA promptly has filed

12

notices of the potential violations pursuant to Section D(3) of the Audit Policy.  Section D(3) requires that the reporting entity disclose the violation in writing within 21 calendar days of discovery and each of the potential violations has been disclosed in writing to EPA Region VI within this 21-day period. . . . INVISTA also has met with EPA Region VI to discuss the potential violations.

In addition, INVISTA filed a Notice of Audit pursuant to the Texas Environmental Health & Safety Audit Privilege Act (the "Texas Audit Act" or "Act") with the Texas Commission on Environmental Quality (TCEQ) on June 7, 2004. . . .  The violations discovered during the on-going investigation, which was commenced on June 8, 2004, have been reported to the TCEQ consistent with the requirements of the Act.  Again, INVISTA has met with TCEQ and has made these filings in order to reduce the risk of enforcement relating to these violations.

III.     Next Steps

Both EPA and TCEQ have requested that INVISTA continue its investigation and report any additional violations of Environmental Law pursuant to the requirements of the Audit Policy and the Texas Audit Act.  INVISTA will be working with EPA at both the Regional and National level, as appropriate or as directed by EPA, and expects to enter into a formal agreement to pursue additional auditing under EPA's policy for Corporate Auditing Agreements for Audit Policy Disclosures dated May 7, 2001, or as otherwise directed by EPA.  To ensure continued self-policing and the opportunity to qualify for Audit Policy protection, if necessary, INVISTA may expand its comprehensive audit and investigation to include all U.S. facilities acquired from DuPont.  If this occurs, INVISTA attends to work with each affected state to ensure that protections afforded under state audit policies or laws also are available to it.

INVISTA concluded its letter by advising DuPont that it was continuing its investigation and inviting DuPont to contact it.  Notwithstanding this detailed notice of "claims" under the Purchase Agreement and actions taken to date and contemplated in connection with the discovered noncompliance, DuPont did not respond to INVISTA's July 13, 2004 letter.

67.    INVISTA denies the allegations contained in paragraph 67 of the Counterclaims, and refers to the July 13, 2004 letter for the contents thereof (see paragraph 66 above).

68.    INVISTA denies the allegations contained in paragraph 68 of the Counterclaims, refers to the July 13, 2004 letter for the contents thereof (see paragraph 66 above), and states that DuPont sought no information from INVISTA notwithstanding INVISTA's invitation to contact it.

69.    INVISTA denies the allegations contained in paragraph 69 of the Counterclaims, and states that (a) it had no "intentions" about which DuPont should have been "wary," and as reflected by the June 17, 2004 and July 13, 2004 letters, INVISTA was in no way "deliberately keeping [DuPont] in the dark"; (b) DuPont chose not to contact INVISTA in the face of notice of serious violations; and (c) INVISTA's only "intention" was to operate its newly acquired facilities, which it purchased in good faith from DuPont for approximately $4 billion, in a safe manner and in compliance with all relevant laws and regulations.

70.    INVISTA denies the allegations contained in paragraph 70 of the Counterclaims, refers to its July 28, 2004 letter for the contents thereof, and states that DuPont was well aware and informed of the possibility that INVISTA might enter into an audit agreement with EPA yet chose not to take any action or to contact INVISTA.

71.    INVISTA denies the allegations contained in paragraph 71 of the Counterclaims, except admits that INVISTA and EPA entered into an audit agreement providing for the audits of the U.S. facilities INVISTA acquired from DuPont under various environmental laws and regulations, the timing of the completion of the audits, and reporting requirements in

connection therewith and states that these audits revealed hundreds of violations of Environmental Law.

72.     INVISTA denies the allegations contained in paragraph 72 of the Counterclaims.

73.     INVISTA denies the allegations contained in paragraph 73 of the Counterclaims, and refers to the Audit Protocol for the contents thereof.

74.     INVISTA denies the allegations contained in paragraph 74 of the Counterclaims, except admits that INVISTA and EPA met on July 22, 2004 to discuss a potential audit agreement between INVISTA and EPA.

75.     INVISTA denies the allegations contained in paragraph 75 of the Counterclaims, refers to the July 29, 2004 letters for the contents thereof, including the statements therein that "EPA has expressed interested in INVISTA entering into a formal corporate-wide audit agreement under the Audit Policy" that "would require auditing of all the facilities acquired from DuPont," and that EPA had requested a copy of the Purchase Agreement and relevant schedules, and states that DuPont **did not respond** to this letter.

76.     INVISTA denies the allegations contained in paragraph 76 of the Counterclaims, refers to the July 29, 2004 letter for the contents thereof and states that DuPont **did not respond** to INVISTA's July 29, 2004 letter.

77.     INVISTA denies the allegations contained in paragraph 77 of the Counterclaims, except admits that INVISTA and EPA met on August 5, 2004 to discuss a potential audit agreement between INVISTA and EPA.

78.     INVISTA denies the allegations contained in paragraph 78 of the Counterclaims, and refers to the August 12, 2004 letter from EPA to INVISTA for the contents thereof.

79.     INVISTA denies the allegations contained in paragraph 79 of the Counterclaims, and refers to the Complaint for a statement of INVISTA's claims.

80.     INVISTA denies the allegations contained in paragraph 80 of the Counterclaims, refers to the August 18, 2004 letter for the contents thereof and states that DuPont **did not respond** to INVISTA's August 18, 2004 letter.

81.     INVISTA denies the allegations contained in paragraph 81 of the Counterclaims, refers to the August 18, 2004 letter for the contents thereof and states that DuPont **did not respond** to INVISTA's August 18, 2004 letter.

82.     INVISTA denies the allegations contained in paragraph 82 of the Counterclaims, and states that DuPont, with full knowledge of the audit agreement, chose not to become involved in any manner in the selection of auditors, the auditing process, the review of findings, or the reporting thereof.

83.     INVISTA denies the allegations contained in paragraph 83 of the Counterclaims, refers to paragraph 12 of this Answer, states that (a) on December 6, 2004, INVISTA provided the first quarterly report to DuPont and DuPont **did not respond** or otherwise take any action; (b) on February 15, 2005, INVISTA provided the second quarterly report to DuPont and DuPont **did not respond** or otherwise take any action; (c) on May 12, 2005, INVISTA provided the third quarterly report to DuPont and DuPont **did not respond** or otherwise take any action; (d) on August 12, 2005, INVISTA provided the fourth quarterly report to DuPont and DuPont **did not respond** or otherwise take any action (except that, by letter dated

October 12, 2005, DuPont requested information relating to the audit findings at the Waynesboro

facility and by letter dated November 10, 2005, INVISTA provided the requested information to

DuPont); (e) on November 2, 2005, INVISTA provided the fifth quarterly report to DuPont and

DuPont **did not respond** or otherwise take any action; and (f) on February 3, 2006, INVISTA

provided the final audit report to DuPont and DuPont **did not respond** or otherwise take any

action, and refers to paragraphs 136-155 of the Complaint.

   84. INVISTA denies the allegations contained in paragraph 84 of the

Counterclaims, and refers to the Complaint for the contents thereof.

   85. INVISTA denies the allegations contained in paragraph 85 of the

Counterclaims, and states that:

   a) Ten months after receiving the first notice letter (in a series of

letters) from INVISTA urging DuPont to contact it about the serious and sensitive issues it had

discovered, DuPont, by letter dated April 14, 2005,  responded to INVISTA's notice of an

upcoming meeting with EPA, **for the first time** acknowledging receipt of INVISTA's various

notice letters relating to the EPA Audit Claims, for the first time invoking Section 8.5(e) of the

Purchase Agreement, and stating with respect to the upcoming EPA meeting that:

> DuPont expects that, consistent with the express terms of the
> Purchase Agreement, it will be permitted to (x) assist INVISTA
> with the preparation for any meetings that INVISTA has scheduled
> with the EPA and (y) send a DuPont representative to attend and
> participate in such meetings.

   b) On April 19, 2005, at DuPont's request, INVISTA representatives

met with DuPont representatives in connection with the upcoming EPA meeting and DuPont

thereafter chose not to attend the EPA meeting.

c)     DuPont advised at the April 19, 2005 meeting that it would establish a technical team to review the noncompliance issues discovered in the audits and would cooperate with INVISTA in addressing them but then chose not to do so until many months later (see Complaint ¶ 141).

86.     INVISTA denies the allegations contained in paragraph 86 of the Counterclaims.

87.     INVISTA denies the allegations contained in paragraph 87 of the Counterclaims, refers to INVISTA's May 12, 2005 letter for the contents thereof, including, without limitation, the statements that INVISTA was "neither agreeing nor disagreeing" with DuPont's assertions in its April 14, 2005 letter regarding DuPont's claimed rights under the Purchase Agreement, and that "[r]ather, for now, we propose to continue the dialogue concerning what makes sense on a going forward basis," and states that DuPont chose not to continue that dialogue, did not establish a technical team to work with INVISTA's technical team, as it had promised and reverted to largely ignoring INVISTA's letters except occasionally to ask for information about particular claims, yet doing nothing once provided with that information other than further deny INVISTA's requests for indemnification under the Purchase Agreement.

88.     INVISTA denies the allegations in paragraph 88 of the Counterclaims, and refers to DuPont's June 23, 2006 letter (which was sent to INVISTA more than a year after the April 14, 2005 letter and after multiple additional communications between INVISTA and DuPont, including, without limitation, those alleged in the Complaint) for the contents thereof.

89.     INVISTA denies the allegations contained in paragraph 89 of the Counterclaims.

90.     INVISTA denies the allegations contained in paragraph 90 of the Counterclaims, and refers to the Complaint for the contents thereof.

91.     INVISTA denies the allegations contained in paragraph 91 of the Counterclaims, and refers to the Complaint for the contents thereof.

92.     INVISTA denies the allegations contained in paragraph 92 of the Counterclaims.

93.     INVISTA denies the allegations contained in paragraph 93 of the Counterclaims.

94.     INVISTA denies the allegations contained in paragraph 94 of the Counterclaims, and refers to DuPont's November 21, 2007 letter for the contents thereof.

95.     INVISTA denies the allegations contained in paragraph 95 of the Counterclaims, refers to INVISTA's November 26, 2007 letter for the contents thereof, including the statement that "[i]f DuPont truly believes that there are no PSD violations at Victoria, DuPont can exercise its authority under Section 8.5(e) of the Purchase Agreement and explain its views regarding the Nylon Expansion and Deepwell Elimination projects to EPA, provided that it agrees to indemnify, defend and hold harmless INVISTA in accordance with Section 8.5(b) of the Purchase Agreement," and states that DuPont's November 21, 2007 letter (with DuPont's "arguments in defense of alleged [PSD and NNSR] . . . violations") came more than two and a half years after INVISTA disclosed the audit findings relating to Victoria to DuPont.

96.     INVISTA denies the allegations contained in paragraph 96 of the Counterclaims.

97.     INVISTA denies the allegations contained in paragraph 97 of the Counterclaims.

98.     INVISTA denies the allegations contained in paragraph 98 of the Counterclaims.

99.     INVISTA denies the allegations contained in paragraph 99 of the Counterclaims, and states that with respect to many of the Non-Consent Decree Claims, DuPont had itself identified the violations and noncompliances and determined the nature and scope of the remediation prior to Closing and, in fact, in many instances, approved the projects and the funding therefore.

100.     INVISTA denies the allegations contained in paragraph 100 of the Counterclaims, and states that, with respect to many of the Non-Consent Decree Claims, INVISTA merely completed projects that DuPont had commenced pre-Closing in order to address noncompliance that DuPont had identified.

101.     INVISTA denies the allegations contained in paragraph 101 of the Counterclaims.

102.     INVISTA denies the allegations contained in paragraph 102 of the Counterclaims.

103.     INVISTA denies the allegations contained in paragraph 103 of the Counterclaims.

104.     INVISTA denies the allegations contained in paragraph 104 of the Counterclaims.

105.     INVISTA denies the allegations contained in paragraph 105 of the Counterclaims.

106.     INVISTA denies the allegations contained in paragraph 106 of the Counterclaims, refers to paragraph 75 of the Complaint and the December 6, 2004 letter for the

contents thereof, and states that (a) on August 12, 2005, INVISTA provided DuPont with additional information relating to this claim; (b) notwithstanding INVISTA's invitations in the December 6, 2004 and August 12, 2005 letters, DuPont did not respond in any fashion until January 20, 2006, when it requested additional information purportedly to evaluate the claim; (c) by letter dated February 13, 2006, INVISTA provided DuPont with additional information requested by DuPont relating to this claim and DuPont never responded to INVISTA's February 13, 2006 letter in any fashion; and (d) INVISTA's corrective actions were undertaken in substantial part following the December 6, 2004 letter, those corrective actions were reasonable and appropriate (to remedy a risk that DuPont had identified well prior to Closing, which is also the case with respect to many of the other claims), and DuPont was in no way prejudiced by INVISTA's corrective actions.

107.    INVISTA denies the allegations contained in paragraph 107 of the Counterclaims, refers to paragraph 76 of the Complaint and the October 13, 2005 letter for the contents thereof, and states that (a) notwithstanding INVISTA's invitation in the October 13, 2005 letter, DuPont did not respond in any fashion until March 6, 2006, when it requested additional information purportedly to evaluate the claim; (b) by letter dated June 21, 2006, INVISTA provided DuPont with additional information requested by DuPont relating to this claim and DuPont never responded to INVISTA's June 21, 2006 letter in any fashion; and (c) INVISTA's corrective actions were undertaken in substantial part following the October 13, 2005 letter, were reasonable and appropriate, and DuPont was in no way prejudiced by INVISTA's corrective actions.

108.    INVISTA denies the allegations contained in paragraph 108 of the Counterclaims, refers to paragraph 77 of the Complaint and the August 12, 2005 letter for the

contents thereof, and states that (a) notwithstanding INVISTA's invitation in the August 12, 2005 letter, DuPont did not respond in any fashion until January 30, 2006, when it requested additional information purportedly to evaluate the claim; (b) by letter dated February 24, 2006, INVISTA provided DuPont with additional information requested by DuPont relating to this claim and DuPont never responded to INVISTA's February 24, 2006 letter in any fashion; and (c) INVISTA merely completed corrective actions that had been approved by DuPont prior to Closing, which were reasonable and appropriate, and DuPont was in no way prejudiced by INVISTA's corrective actions.

109.     INVISTA denies the allegations contained in paragraph 109 of the Counterclaims, refers to paragraphs 81-82 of the Complaint and the August 12, 2005 letter for the contents thereof, and states that (a) notwithstanding INVISTA's invitation in the August 12, 2005 letter, DuPont did not respond in any fashion until February 21, 2006, when it requested additional information purportedly to evaluate the claim; (b) by letter dated July 21, 2006, INVISTA provided DuPont with additional information requested by DuPont relating to this claim and DuPont never responded to INVISTA's July 21, 2006 letter in any fashion; and (c) INVISTA's corrective actions were undertaken in substantial part following the August 12, 2005 letter, were reasonable and appropriate, and DuPont was in no way prejudiced by INVISTA's corrective actions.

110.     INVISTA denies the allegations contained in paragraph 110 of the Counterclaims, refers to paragraph 83 of the Complaint and the August 31, 2005 letter for the contents thereof, and states that (a) notwithstanding INVISTA's invitation in the August 31, 2005 letter, DuPont did not respond in any fashion until February 17, 2006, when it requested additional information purportedly to evaluate the claim; (b) by letter dated March 21, 2006,

INVISTA provided DuPont with additional information requested by DuPont relating to this claim and DuPont never responded to INVISTA's March 21, 2006 letter in any fashion; and (c) INVISTA merely completed corrective actions that had been approved by DuPont prior to Closing, which were reasonable and appropriate, and DuPont was in no way prejudiced by INVISTA's corrective actions.

111.    INVISTA denies the allegations contained in paragraph 111 of the Counterclaims, refers to paragraph 84 of the Complaint and the October 18, 2005 letter for the contents thereof, and states that (a) notwithstanding INVISTA's invitation in the October 18, 2005 letter, DuPont did not respond in any fashion until February 20, 2006, when it requested additional information purportedly to evaluate the claim; (b) by letter dated March 21, 2006, INVISTA provided DuPont with additional information requested by DuPont relating to this claim and DuPont never responded to INVISTA's March 21, 2006 letter in any fashion; and (c) INVISTA's corrective actions were undertaken in substantial part following the October 18, 2005 letter, were reasonable and appropriate, and DuPont was in no way prejudiced by INVISTA's corrective actions.

112.    INVISTA denies the allegations contained in paragraph 112 of the Counterclaims, refers to paragraph 85 of the Complaint and the November 14, 2005 letter for the contents thereof, and states that (a) notwithstanding INVISTA's invitation in the November 14, 2005 letter, DuPont did not respond in any fashion until March 7, 2006, when it requested additional information purportedly to evaluate the claim; (b) by letter dated July 6, 2006, INVISTA provided DuPont with additional information requested by DuPont relating to this claim and DuPont never responded to INVISTA's July 6, 2006 letter in any fashion; and (c) INVISTA's corrective actions, which are on-going, were undertaken in substantial part following

the November 14, 2005 letter, were reasonable and appropriate, and DuPont was in no way prejudiced by INVISTA's corrective actions.

113.    INVISTA denies the allegations contained in paragraph 113 of the Counterclaims, refers to paragraphs 86-87 of the Complaint and the March 7, 2007 letter for the contents thereof, and states that (a) notwithstanding INVISTA's invitation in the March 7, 2007 letter, DuPont did not respond in any fashion; and (b) INVISTA's corrective actions, which are on-going, were undertaken in substantial part following the March 7, 2007 letter, were reasonable and appropriate, and DuPont was in no way prejudiced by INVISTA's corrective actions.

114.    INVISTA denies the allegations contained in paragraph 114 of the Counterclaims, refers to paragraph 93 of the Complaint and the October 13, 2005 letter for the contents thereof, and states that (a) notwithstanding INVISTA's invitation in the October 13, 2005 letter, DuPont did not respond in any fashion until March 6, 2006, when it requested additional information purportedly to evaluate the claim; (b) by letters dated August 7, 2006 and September 22, 2006, INVISTA provided DuPont with additional information requested by DuPont relating to this claim and DuPont never responded to INVISTA's August 7, 2006 and September 22, 2006 letters in any fashion; and (c) INVISTA merely completed corrective actions that had been approved by DuPont prior to Closing, which were reasonable and appropriate, and DuPont was in no way prejudiced by INVISTA's corrective actions.

115.    INVISTA denies the allegations contained in paragraph 115 of the Counterclaims, refers to paragraph 93 of the Complaint and the October 13, 2005 letter for the contents thereof, and states that (a) notwithstanding INVISTA's invitation in the October 13, 2005 letter, DuPont did not respond in any fashion until March 6, 2006, when it requested

additional information purportedly to evaluate the claim; (b) by letter dated July 17, 2006, INVISTA provided DuPont with additional information requested by DuPont relating to this claim and DuPont never responded to INVISTA's July 17, 2006 letter in any fashion; and (c) INVISTA merely completed corrective actions that had been approved by DuPont prior to Closing, which were reasonable and appropriate, and DuPont was in no way prejudiced by INVISTA's corrective actions.

116.    INVISTA denies the allegations contained in paragraph 116 of the Counterclaims, refers to paragraph 104 of the Complaint and the October 19, 2005 letter for the contents thereof, and states that (a) notwithstanding INVISTA's invitation in the October 19, 2005 letter, DuPont did not respond in any fashion until March 6, 2006, when it requested additional information purportedly to evaluate the claim; (b) by letter dated November 14, 2006, INVISTA provided DuPont with additional information requested by DuPont relating to this claim and DuPont never responded to INVISTA's November 14, 2006 letter in any fashion; and (c) INVISTA's corrective actions, which are on-going, were undertaken in substantial part following the October 19, 2005 letter, were reasonable and appropriate, and DuPont was in no way prejudiced by INVISTA's corrective actions.

117.    INVISTA denies the allegations contained in paragraph 117 of the Counterclaims, refers to paragraph 105 of the Complaint and the October 19, 2005 letter for the contents thereof, and states that (a) notwithstanding INVISTA's invitation in the October 19, 2005 letter, DuPont did not respond in any fashion; and (b) INVISTA merely completed corrective actions that had been approved by DuPont prior to Closing, which were reasonable and appropriate, and DuPont was in no way prejudiced by INVISTA's corrective actions.

118.    INVISTA denies the allegations contained in paragraph 118 of the Counterclaims, refers to paragraph 106 of the Complaint and the October 31, 2005 letter for the contents thereof, and states that (a) notwithstanding INVISTA's invitation in the October 31, 2005 letter, DuPont did not respond in any fashion; (b) by letters dated July 10, 2006, September 22, 2006 and April 24, 2007 INVISTA provided DuPont with additional information relating to this claim, and, again despite INVISTA's invitations, DuPont did not respond in any fashion; and (c) INVISTA's corrective actions, which are on-going, were undertaken in substantial part following the October 31, 2005 letter, were reasonable and appropriate, and DuPont was in no way prejudiced by INVISTA's corrective actions.

119.    INVISTA denies the allegations contained in paragraph 119 of the Counterclaims, refers to paragraph 109 of the Complaint and the November 14, 2005 letter for the contents thereof, and states that (a) notwithstanding INVISTA's invitation in the November 14, 2005 letter, DuPont did not respond in any fashion; and (b) INVISTA merely completed corrective actions that had been approved by DuPont prior to Closing, which were reasonable and appropriate, and DuPont was in no way prejudiced by INVISTA's corrective actions.

120.    INVISTA denies the allegations contained in paragraph 120 of the Counterclaims, refers to paragraph 110 of the Complaint and the October 14, 2004 letter for the contents thereof, and states that (a) notwithstanding INVISTA's invitation in the October 14, 2004 letter, DuPont did not respond in any fashion; (b) DuPont also did not respond in any fashion to multiple additional letters from INVISTA that referred or related to this claim; and (c) INVISTA's corrective actions, which are on-going, were undertaken in substantial part following the October 14, 2004 letter, were reasonable and appropriate, and DuPont was in no way prejudiced by INVISTA's corrective actions.

121.    INVISTA denies the allegations contained in paragraph 121 of the Counterclaims, refers to paragraphs 111-112 of the Complaint and the December 29, 2004 letter for the contents thereof, and states that (a) notwithstanding INVISTA's invitation in the December 29, 2004 letter, DuPont did not respond in any fashion; (b) by letter dated August 31, 2005, INVISTA provided DuPont with further information relating to this claim; (c) notwithstanding INVISTA's invitation in the August 31, 2005 letter, DuPont did not respond until October 27, 2005 when it requested additional information purportedly to evaluate the claim; (d) by letter dated November 18, 2005, INVISTA provided DuPont with additional information requested by DuPont relating to this claim and DuPont never responded to INVISTA's November 18, 2005 letter in any fashion; and (e) INVISTA's corrective actions were undertaken in substantial part following the December 29, 2004 letter, were reasonable and appropriate, and DuPont was in no way prejudiced by INVISTA's corrective actions.

122.    INVISTA denies the allegations contained in paragraph 122 of the Counterclaims, refers to paragraph 113 of the Complaint and the October 18, 2005 letter for the contents thereof, and states that (a) notwithstanding INVISTA's invitation in the October 18, 2005 letter, DuPont did not respond in any fashion; and (b) INVISTA merely completed corrective actions that had been approved by DuPont prior to Closing, which were reasonable and appropriate, and DuPont was in no way prejudiced by INVISTA's corrective actions.

123.    INVISTA denies the allegations contained in paragraph 123 of the Counterclaims, refers to paragraph 113 of the Complaint and the October 18, 2005 letter for the contents thereof, and states that (a) notwithstanding INVISTA's invitation in the October 18, 2005 letter, DuPont did not respond in any fashion; and (b) INVISTA merely completed

corrective actions that had been approved by DuPont prior to Closing, which were reasonable and appropriate, and DuPont was in no way prejudiced by INVISTA's corrective actions.

124.    INVISTA denies the allegations contained in paragraph 124 of the Counterclaims, refers to paragraph 113 of the Complaint and the October 18, 2005 letter for the contents thereof, and states that (a) notwithstanding INVISTA's invitation in the October 18, 2005 letter, DuPont did not respond in any fashion; and (b) INVISTA's corrective actions were undertaken in substantial part following the October 18, 2005 letter, were reasonable and appropriate, and DuPont was in no way prejudiced by INVISTA's corrective actions.

125.    INVISTA denies the allegations contained in paragraph 125 of the Counterclaims, refers to paragraph 113 of the Complaint and the October 18, 2005 letter for the contents thereof, and states that (a) notwithstanding INVISTA's invitation in the October 18, 2005 letter, DuPont did not respond in any fashion; and (b) INVISTA's corrective actions, which are on-going, were undertaken in substantial part following the October 18, 2005 letter, were reasonable and appropriate, and DuPont was in no way prejudiced by INVISTA's corrective actions.

126.    INVISTA denies the allegations contained in paragraph 126 of the Counterclaims, refers to paragraph 113 of the Complaint and the November 17, 2005 letter for the contents thereof, and states that (a) notwithstanding INVISTA's invitation in the November 17, 2005 letter, DuPont did not respond in any fashion; and (b) INVISTA's corrective actions, which are on-going, were undertaken in substantial part following the November 17, 2005 letter, were reasonable and appropriate, and DuPont was in no way prejudiced by INVISTA's corrective actions.

127.     INVISTA denies the allegations contained in paragraph 127 of the Counterclaims, refers to paragraph 113 of the Complaint and the May 13, 2005 letter for the contents thereof, and states that (a) notwithstanding INVISTA's invitation in the May 13, 2005 letter, DuPont did not respond in any fashion; and (b) INVISTA's corrective actions, which are on-going, were undertaken in substantial part following the May 13, 2005 letter, were reasonable and appropriate, and DuPont was in no way prejudiced by INVISTA's corrective actions.

128.     INVISTA denies the allegations contained in paragraph 128 of the Counterclaims, refers to paragraph 115 of the Complaint and the October 18, 2005 letter for the contents thereof, and states that (a) notwithstanding INVISTA's invitation in the October 18, 2005 letter, DuPont did not respond in any fashion; and (b) INVISTA merely completed corrective actions that had been approved by DuPont prior to Closing, which were reasonable and appropriate, and DuPont was in no way prejudiced by INVISTA's corrective actions.

129.     INVISTA denies the allegations contained in paragraph 129 of the Counterclaims, refers to paragraph 116 of the Complaint and the October 18, 2005 letter for the contents thereof, and states that (a) notwithstanding INVISTA's invitation in the October 18, 2005 letter, DuPont did not respond in any fashion; and (b) INVISTA's corrective actions, which are on-going, were undertaken in substantial part following the October 18, 2005 letter, were reasonable and appropriate, and DuPont was in no way prejudiced by INVISTA's corrective actions.

130.     INVISTA denies the allegations contained in paragraph 130 of the Counterclaims, refers to paragraphs 117-120 of the Complaint and the October 14, 2004 letter for the contents thereof, and states that (a) notwithstanding INVISTA's invitation in the October 14, 2004 letter, DuPont did not respond in any fashion; (b) by letter dated January 31, 2006,

INVISTA provided DuPont with further information relating to this claim; (c) notwithstanding INVISTA's invitation in the January 31, 2006 letter, DuPont did not respond until March 24, 2006, when DuPont rejected this claim solely on the basis of its view that DuPont was not out of compliance with Environmental Law in the United Kingdom for having failed to implement the Non-Boric project; and (d) INVISTA merely completed corrective actions that had been approved by DuPont prior to Closing, which were reasonable and appropriate, and DuPont was in no way prejudiced by INVISTA's corrective actions.

131.    INVISTA denies the allegations contained in paragraph 131 of the Counterclaims, refers to paragraph 122-124 of the Complaint and the October 14, 2005 letter for the contents thereof, and states that (a) notwithstanding INVISTA's invitation in the October 14, 2005 letter, DuPont did not respond in any fashion; (b) by letter dated January 31, 2006, INVISTA provided DuPont with further information relating to these claims; (c) notwithstanding INVISTA's invitation in the January 31, 2006 letter, DuPont did not respond in any fashion; and (d) INVISTA merely completed corrective actions that had been approved by DuPont prior to Closing, which were reasonable and appropriate, and DuPont was in no way prejudiced by INVISTA's corrective actions.

132.    INVISTA denies the allegations contained in paragraph 132 of the Counterclaims, refers to paragraph 125-126 of the Complaint and the October 14, 2005 letter for the contents thereof, and states that (a) notwithstanding INVISTA's invitation in the October 14, 2005 letter, DuPont did not respond in any fashion; (b) by letter dated January 31, 2006, INVISTA provided DuPont with further information relating to these claims; (c) notwithstanding INVISTA's invitation in the January 31, 2006 letter, DuPont did not respond in any fashion; and (d) INVISTA merely completed corrective actions that had been approved by DuPont prior to

Closing and, with respect to corrective actions that had not been approved pre-Closing by DuPont, INVISTA's corrective actions were undertaken in substantial part following the October 18, 2005 letter, were reasonable and appropriate, and DuPont was in no way prejudiced by INVISTA's corrective actions.

133.    INVISTA denies the allegations contained in paragraph 133 of the Counterclaims, refers to paragraph 127 of the Complaint and the October 14, 2005 letter for the contents thereof, and states that (a) notwithstanding INVISTA's invitation in the October 14, 2005 letter, DuPont did not respond in any fashion; (b) by letter dated January 31, 2006, INVISTA provided DuPont with further information relating to this claim; (c) notwithstanding INVISTA's invitation in the January 31, 2006 letter, DuPont did not respond in any fashion; and (d) INVISTA merely completed corrective actions that had been approved by DuPont prior to Closing, which were reasonable and appropriate, and DuPont was in no way prejudiced by INVISTA's corrective actions.

134.    INVISTA denies the allegations contained in paragraph 134 of the Counterclaims, refers to paragraph 128 of the Complaint and the October 14, 2005 letter for the contents thereof, and states that (a) notwithstanding INVISTA's invitation in the October 14, 2005 letter, DuPont did not respond in any fashion; (b) by letter dated January 31, 2006, INVISTA provided DuPont with further information relating to this claim; (c) notwithstanding INVISTA's invitation in the January 31, 2006 letter, DuPont did not respond in any fashion; and (d) INVISTA merely completed corrective actions that had been approved by DuPont prior to Closing, which were reasonable and appropriate, and DuPont was in no way prejudiced by INVISTA's corrective actions.

135.    INVISTA denies the allegations contained in paragraph 135 of the Counterclaims, refers to paragraph 129 of the Complaint and the October 14, 2005 letter for the contents thereof, and states that (a) notwithstanding INVISTA's invitation in the October 14, 2005 letter, DuPont did not respond in any fashion; (b) by letter dated January 31, 2006, INVISTA provided DuPont with further information relating to this claim; (c) notwithstanding INVISTA's invitation in the January 31, 2006 letter, DuPont did not respond in any fashion; and (d) INVISTA's corrective actions, which are on-going, were undertaken in substantial part following the October 18, 2005 letter, were reasonable and appropriate, and DuPont was in no way prejudiced by INVISTA's corrective actions.

136.    INVISTA denies the allegations contained in paragraph 136 of the Counterclaims, refers to paragraph 130 of the Complaint and the October 14, 2005 letter for the contents thereof, and states that (a) notwithstanding INVISTA's invitation in the October 14, 2005 letter, DuPont did not respond in any fashion; (b) by letter dated January 31, 2006, INVISTA provided DuPont with further information relating to this claim; (c) notwithstanding INVISTA's invitation in the January 31, 2006 letter, DuPont did not respond in any fashion; and (d) INVISTA merely completed corrective actions that had been approved by DuPont prior to Closing, which were reasonable and appropriate, and DuPont was in no way prejudiced by INVISTA's corrective actions.

137.    INVISTA denies the allegations contained in paragraph 137 of the Counterclaims, refers to paragraph 130 of the Complaint and the October 14, 2005 letter for the contents thereof, and states that (a) notwithstanding INVISTA's invitation in the October 14, 2005 letter, DuPont did not respond in any fashion; (b) by letter dated January 31, 2006, INVISTA provided DuPont with further information relating to this claim; (c) notwithstanding

INVISTA's invitation in the January 31, 2006 letter, DuPont did not respond in any fashion; (d) INVISTA merely completed corrective actions that had been approved by DuPont prior to Closing, which were reasonable and appropriate, and DuPont was in no way prejudiced by INVISTA's corrective actions.

138.     INVISTA denies the allegations contained in paragraph 138 of the Counterclaims, refers to paragraph 130 of the Complaint and the October 14, 2005 letter for the contents thereof, and states that (a) notwithstanding INVISTA's invitation in the October 14, 2005 letter, DuPont did not respond in any fashion; (b) by letter dated January 31, 2006, INVISTA provided DuPont with further information relating to this claim; (c) notwithstanding INVISTA's invitation in the January 31, 2006 letter, DuPont did not respond in any fashion; and (d) INVISTA's corrective actions were undertaken in substantial part following the October 18, 2005 letter, were reasonable and appropriate, and DuPont was in no way prejudiced by INVISTA's corrective actions.

139.     INVISTA denies the allegations contained in paragraph 139 of the Counterclaims, refers to paragraph 130 of the Complaint and the October 14, 2005 letter for the contents thereof, and states that (a) notwithstanding INVISTA's invitation in the October 14, 2005 letter, DuPont did not respond in any fashion; (b) by letter dated January 31, 2006, INVISTA provided DuPont with further information relating to this claim; (c) notwithstanding INVISTA's invitation in the January 31, 2006 letter, DuPont did not respond in any fashion; and (d) INVISTA merely completed corrective actions that had been approved by DuPont prior to Closing, which were reasonable and appropriate, and DuPont was in no way prejudiced by INVISTA's corrective actions.

140.    INVISTA denies the allegations contained in paragraph 140 of the Counterclaims, refers to paragraph 130 of the Complaint and the October 14, 2005 letter for the contents thereof, and states that (a) notwithstanding INVISTA's invitation in the October 14, 2005 letter, DuPont did not respond in any fashion; (b) by letter dated January 31, 2006, INVISTA provided DuPont with further information relating to this claim; (c) notwithstanding INVISTA's invitation in the January 31, 2006 letter, DuPont did not respond in any fashion; and (d) INVISTA merely completed corrective actions that had been approved by DuPont prior to Closing, which were reasonable and appropriate, and DuPont was in no way prejudiced by INVISTA's corrective actions.

141.    INVISTA denies the allegations contained in paragraph 141 of the Counterclaims, refers to paragraph 130 of the Complaint and the October 14, 2005 letter for the contents thereof, and states that (a) notwithstanding INVISTA's invitation in the October 14, 2005 letter, DuPont did not respond in any fashion; (b) by letter dated January 31, 2006, INVISTA provided DuPont with further information relating to this claim; (c) notwithstanding INVISTA's invitation in the January 31, 2006 letter, DuPont did not respond in any fashion; and (d) INVISTA merely completed corrective actions that had been approved by DuPont prior to Closing, which were reasonable and appropriate, and DuPont was in no way prejudiced by INVISTA's corrective actions.

142.    INVISTA denies the allegations contained in paragraph 142 of the Counterclaims, refers to paragraph 130 of the Complaint and the October 14, 2005 letter for the contents thereof, and states that (a) notwithstanding INVISTA's invitation in the October 14, 2005 letter, DuPont did not respond in any fashion; (b) by letter dated January 31, 2006, INVISTA provided DuPont with further information relating to this claim; (c) notwithstanding

INVISTA's invitation in the January 31, 2006 letter, DuPont did not respond in any fashion; and (d) INVISTA merely completed corrective actions that had been approved by DuPont prior to Closing, which were reasonable and appropriate, and DuPont was in no way prejudiced by INVISTA's corrective actions.

143.    INVISTA denies the allegations contained in paragraph 143 of the Counterclaims, refers to paragraph 132 of the Complaint and the October 13, 2005 letter for the contents thereof, and states that (a) notwithstanding INVISTA's invitation in the October 13, 2005 letter, DuPont did not respond in any fashion; and (b) INVISTA merely completed corrective actions that had been approved by DuPont prior to Closing, which were reasonable and appropriate, and DuPont was in no way prejudiced by INVISTA's corrective actions.

144.    INVISTA denies the allegations contained in paragraph 144 of the Counterclaims, refers to paragraph 133 of the Complaint and the November 18, 2005 letter for the contents thereof, and states that (a) notwithstanding INVISTA's invitation in the November 18, 2005 letter, DuPont did not respond in any fashion; and (b) INVISTA undertook the study because DuPont had failed to do so prior to Closing in the time frame required by the plant's operating permit, INVISTA's actions were reasonable and appropriate, and DuPont was in no way prejudiced by INVISTA's corrective actions.

145.    INVISTA denies the allegations contained in paragraph 145 of the Counterclaims, refers to paragraph 134 of the Complaint and the October 31, 2005 letter for the contents thereof, and states that (a) notwithstanding INVISTA's invitation in the October 31, 2005 letter, DuPont did not respond in any fashion; and (b) INVISTA merely completed corrective actions that had been approved by DuPont prior to Closing, which were reasonable and appropriate, and DuPont was in no way prejudiced by INVISTA's corrective actions.

146.    INVISTA denies the allegations contained in paragraph 146 of the Counterclaims, and states that it has made no claim in this action with respect to the Dordrecht tank farm.

147.    INVISTA denies the allegations contained in paragraph 147 of the Counterclaims, refers to paragraph 134 of the Complaint and the November 14, 2005 letter for the contents thereof, and states that (a) notwithstanding INVISTA's invitation in the November 14, 2005 letter, DuPont did not respond in any fashion; and (b) INVISTA's corrective actions, which are on-going, were undertaken in substantial part following the November 14, 2005 letter, were reasonable and appropriate, and DuPont was in no way prejudiced by INVISTA's corrective actions.

148.    INVISTA denies the allegations contained in paragraph 148 of the Counterclaims, except admits that INVISTA made disclosure to the Brazilian authorities in accordance with the requirements of Brazilian law, refers to paragraph 135 of the Complaint and the August 31, 2005 letter for the contents thereof, and states that (a) DuPont did not respond in any fashion to INVISTA's August 31, 2005 letter or INVISTA's subsequent letters relating to this matter dated February 28, 2006, May 19, 2006, June 26, 2006 and October 23, 2006 until October 26, 2006, after which INVISTA provided further information relating to this claim to DuPont; and (b) INVISTA's corrective actions, which are on-going, were undertaken in substantial part following the August 31, 2005 letter, were reasonable and appropriate, and DuPont was in no way prejudiced by INVISTA's corrective actions.

149.    INVISTA admits the allegations contained in paragraph 149 of the Counterclaims, refers to paragraph 165 of the Complaint and the October 24, 2005 letter for the contents thereof, including the statement therein that "[t]his notice is being given pursuant to,

among others, Section 8.4(f) of the [Purchase Agreement]," and states that, with its October 24, 2005 letter, INVISTA provided DuPont with copies of Overend's complaint and INVISTA's papers in support of its motion to dismiss.

150.    INVISTA denies the allegations contained in paragraph 150 of the Counterclaims, refers to the August 2, 2006 letter for the contents thereof, and states that (a) by letter dated February 13, 2006, INVISTA provided DuPont with Overend's amended complaint and the papers relating to the motion to dismiss that amended complaint, advised DuPont that INVISTA's motion to dismiss the amended complaint had been denied and enclosed the order denying the motion; (b) by letter dated May 4, 2006, DuPont advised INVISTA of its view that it had no indemnification obligation with regard to this matter; (c) by letter dated May 24, 2006, INVISTA provided DuPont with Overend's May 12, 2006 settlement proposal and INVISTA's May 18, 2006 response; and (d) by letter dated July 25, 2006, DuPont again advised INVISTA of its view that it had no indemnification obligation with regard to this matter.

151.    INVISTA denies the allegations contained in paragraph 151 of the Counterclaim, and refers to paragraph 121 of the Complaint and the July 28, 2005 letter for the contents thereof, including the statements that "[t]his notice is being given pursuant to, inter alia, Section 8.4(f) of the [Purchase Agreement]" and "INVISTA reserves all rights under the [Purchase Agreement] with respect to the alleged breach of the Kvaerner contract and the costs and expenses incurred by INVISTA with regard to the KA Non-Boric Project (including, without limitation, for indemnification pursuant to Section 8.5(b) of the [Purchase Agreement])."

152.    INVISTA denies the allegations contained in paragraph 152 of the Counterclaims, refers to the January 17, 2006 letter for the contents thereof and paragraph 151 of this Answer, and states that (a) by letter dated August 16, 2005, DuPont requested additional

information from INVISTA; (b) by letter dated October 24, 2005, INVISTA provided DuPont with copies of the Kvaerner contract and additional information in response to DuPont's August 16, 2004 letter; (c) by letter November 19, 2005, DuPont advised INVISTA of its view that it had no indemnification obligation with regard to this matter; (d) by letter dated December 19, 2005, INVISTA provided DuPont with copies of the "Particulars of Claims" that Kvaerner had sent to INVISTA and advised DuPont that INVISTA intended to continue to pursue a commercial resolution; (e) by letter dated January 17, 2006, INVISTA advised DuPont that it had reached a settlement in principle with Kvaener; (f) by letter dated February 7, 2006, INVISTA provided DuPont with the final settlement agreement that was being endorsed by INVISTA and Kvaerner; and (g) DuPont chose not to participate in the claim resolution process with Kvaerner.

153.    INVISTA denies the allegations contained in paragraph 153 of the Counterclaims.

154.    INVISTA denies the allegations contained in paragraph 154 of the Counterclaims.

155.    INVISTA denies the allegations contained in paragraph 155 of the Counterclaims.

156.    INVISTA denies the allegations contained in paragraph 156 of the Counterclaims.

## FIRST COUNTERCLAIM

157.    INVISTA incorporates by reference and restates its responses to paragraphs 1 to 156.

158.    INVISTA denies the allegations contained in paragraph 158 of the Counterclaims, and refers to the Purchase Agreement for the contents thereof.

159.    INVISTA denies the allegations contained in paragraph 159 of the Counterclaims, and refers to the Purchase Agreement for the contents thereof.

160.    INVISTA admits the allegations contained in paragraph 160 of the Counterclaims.

161.    INVISTA denies the allegations contained in paragraph 161 of the Counterclaims, except admits that under New York law, contracts include an implied covenant of good faith and fair dealing.

162.    INVISTA denies the allegations contained in paragraph 162 of the Counterclaims.

163.    INVISTA denies the allegations contained in paragraph 163 of the Counterclaims.

164.    INVISTA denies the allegations contained in paragraph 164 of the Counterclaims.

165.    INVISTA denies the allegations contained in paragraph 165 of the Counterclaims.

## SECOND COUNTERCLAIM

166.    INVISTA incorporates by reference and restates its responses to paragraphs 1 to 165.

167.    INVISTA denies the allegations contained in paragraph 167 of the Counterclaims, except admits that, as set forth in INVISTA's Complaint, there is an actual, ripe and justiciable controversy between the parties.

168.    INVISTA denies the allegations contained in paragraph 168 of the Counterclaims, and refers to the Complaint for the contents thereof.

169.    INVISTA denies the allegations contained in paragraph 169 of the Counterclaims.

170.    INVISTA denies the allegations contained in paragraph 170 of the Counterclaims.

171.    INVISTA denies the allegations contained in paragraph 171 of the Counterclaims.

172.    INVISTA denies the allegations contained in paragraph 172 of the Counterclaims.

## ADDITIONAL DEFENSES

For its additional defenses to DuPont's Counterclaims, INVISTA incorporates herein by reference its Complaint, its responses to the allegations contained in paragraphs 1-172 of DuPont's Counterclaims and its Opposition to DuPont's motion to dismiss, and further alleges and asserts as follows:

1.    To the extent that the titles and headings inserted by DuPont in its Counterclaims are intended to make claims or assertions against INVISTA, they are denied.

2.    To the extent any of the allegations contained in the Counterclaims are not specifically responded to, they are denied.

3.    INVISTA does not assume the burden of proof with respect to any of these defenses where substantive law provides otherwise.

4.    DuPont is not entitled to relief, in whole or in substantive part, on its Counterclaims because DuPont fails to state a claim upon which relief can be granted.

5.    DuPont is not entitled to relief, in whole or in substantive part, on its Counterclaims by application of the doctrine of laches, waiver, estoppel, and/or unclean hands.

6.    DuPont is not entitled to relief, in whole or in substantive part, on its Counterclaims by application of the doctrine of prevention.

7.    DuPont is not entitled to relief, in whole or in substantive part, on its Counterclaims by application of the doctrine of forfeiture.

8.    DuPont is not entitled to relief, in whole or in substantive part, on its Counterclaims pursuant to the terms of the Purchase Agreement.

9.    DuPont is not entitled to relief, in whole or in substantive part, on its Counterclaims because INVISTA did not breach the Purchase Agreement.

10.    DuPont is not entitled to relief, in whole or in substantive part, on its Counterclaims based on Section 8.4(b)(i) of the Purchase Agreement because INVISTA has not failed to duly perform or observe the terms, provisions, covenants and agreements that INVISTA was obligated to perform or observe under the Purchase Agreement.

11.    DuPont is not entitled to relief, in whole or in substantive part, on its Counterclaims because INVISTA has not breached or failed to perform or observe Section 8.5(e) of the Purchase Agreement.

12.    DuPont is not entitled to relief, in whole or in substantive part, on its Counterclaims because INVISTA has not breached or failed to perform or observe Section 8.4(f) of the Purchase Agreement.

13.    DuPont is not entitled to relief, in whole or in substantive part, on its Counterclaims because INVISTA has not breached or failed to perform or observe the implied covenant of good faith and fair dealing.

14.     DuPont is not entitled to relief, in whole or in substantive part, on its Counterclaims because Section 8.5(e) is not a condition precedent to DuPont's indemnity and defense obligations under Section 8.5(b) of the Purchase Agreement.

15.     DuPont is not entitled to relief, in whole or in substantive part, on its Counterclaims because DuPont chose not to exercise any authority it may have had under Section 8.5(e) of the Purchase Agreement.

16.     DuPont is not entitled to relief, in whole or in substantive part, on its Counterclaims because INVISTA complied with Section 8.5(e) with respect to both its Consent Decree Claims and its Non-Consent Decree Claims.

17.     DuPont is not entitled to relief, in whole or in substantive part, on its Counterclaims because INVISTA provided timely written notice of each and every Consent Decree Claim and Non-Consent Decree Claim and DuPont failed to indemnify, defend and hold harmless INVISTA from its Losses arising out of or related to the Consent Decree Claims and Non-Consent Decree Claims.

18.     DuPont is not entitled to relief, in whole or in substantive part, on its Counterclaims because INVISTA provided timely written notice of each and every Consent Decree Claim and Non-Consent Decree Claim and DuPont failed to exercise its authority under Section 8.5(e) with respect to the Consent Decree Claims and Non-Consent Decree Claims.

19.     DuPont is not entitled to relief, in whole or in substantive part, on its Counterclaims because Section 8.4(f) is not a condition precedent to DuPont's indemnity and defense obligations under Section 8.4(a) of the Purchase Agreement.

20.    DuPont is not entitled to relief, in whole or in substantive part, on its Counterclaims because INVISTA complied with Section 8.4(f) with respect to the relevant Consent Decree Claims and Non-Consent Decree Claims.

21.    DuPont is not entitled to relief, in whole or in substantive part, on its Counterclaims because INVISTA provided written notice to DuPont with respect to each and every Consent Decree Claim and Non-Consent Decree Claim indicating the nature of each claim and the basis therefore.

22.    DuPont is not entitled to relief, in whole or in substantive part, on its Counterclaims because DuPont was not actually prejudiced as a result of INVISTA's alleged failure to provide written notice pursuant to Section 8.4(f).

23.    DuPont is not entitled to relief, in whole or in substantive part, on its Counterclaims because DuPont has not suffered any "Losses" as that term is defined in the Purchase Agreement.

24.    DuPont is not entitled to relief, in whole or in substantive part, on its Counterclaims because DuPont breached the Purchase Agreement.

25.    DuPont is not entitled to relief, in whole or in substantive part because DuPont failed to mitigate its alleged damages.

26.    DuPont is not entitled to relief, in whole or in substantive part, on its Counterclaims insofar as it seeks consequential or other special damages that are unusual, unforeseeable and/or not the probable or expected result of the alleged indemnifiable acts.

27.    DuPont is not entitled to relief, in whole or in substantive part, on its Counterclaims because its alleged damages are not directly and proximately caused by any actions of INVISTA.

28. DuPont is not entitled to relief, in whole or in substantive part, on its Counterclaims because DuPont's Losses are the result of its own acts, omissions and/or factors outside INVISTA's control. The Losses allegedly sustained by DuPont, if any, were proximately caused by DuPont's own free and voluntary actions and decisions.

29. DuPont is not entitled to relief, in whole or in substantive part, on its Counterclaims by application of unjust enrichment.

WHEREFORE, INVISTA respectfully requests that this Court enter judgment:

(a) Dismissing DuPont's Counterclaims in their entirety and with prejudice;

(b) Denying DuPont the declaratory relief it seeks in its Counterclaims;

(c) Awarding INVISTA attorneys' fees, costs and such other and further relief as the Court deems just and proper.

DATED:     New York, New York
           June 20, 2008

COOLEY MANION JONES LLP
s/ Harry L. Manion III
Harry L. Manion III
Admitted *Pro Hac Vice*
Attorneys for Plaintiffs
21 Custom House Street
Boston, Massachusetts 02110
Telephone: (617) 737-3100
Fax: (617) 737-0374
E-mail:  hmanion@cmjlaw.com

CURTIS, MALLET-PREVOST, COLT
& MOSLE LLP
Benard V. Preziosi, Jr. (BP-5715)
101 Park Avenue
New York, New York  10178-0061
Telephone: (212) 696-6000
Fax: (212) 697-1559
E-mail:  bpreziosi@curtis.com