**Document Electronically Filed**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- x

INVISTA B.V., et al.
             Plaintiffs,

v.

E.I. DU PONT DE NEMOURS AND COMPANY,

             Defendant.

------------------------------------------------------------- x

:
:
:
:
:
:
:
:
:
:
:
:
:

08 CV 3063 (SHS)

**DECLARATION OF
MARK V. HOLDEN
IN SUPPORT OF PLAINTIFFS'
MOTION TO DISQUALIFY**

       **MARK V. HOLDEN, ESQUIRE,** hereby declares under penalty of perjury as follows:

       1.    I am currently Senior Vice President, General Counsel and Secretary of Koch Industries, Inc. ("Koch"), which is the ultimate parent corporation of the Plaintiffs in this action (collectively, "INVISTA"). I also am a Member of INVISTA's Board of Directors. I am an attorney licensed in the State of Kansas and the District of Columbia. I have been employed at Koch since June 27, 1995 as a lawyer in a variety of different capacities. From December 2003 through December 2005, I was Vice President, General Counsel of Litigation and Compliance of Koch. Because of my work for Koch, I am familiar with the legal work that Morgan, Lewis & Bockius LLP ("MLB") performed for Koch. This affidavit is based on my personal knowledge and a review of the documents kept in the ordinary course of business. I respectfully make this Declaration in support of INVISTA's motion to disqualify MLB as counsel for defendant E.I. du Pont de Nemours and Company ("DuPont") in this action.

**MLB's Representation of Koch and Koch Affiliates**

2.       Beginning in 1998, MLB represented Koch and a number of its affiliated companies and subsidiaries on a wide range of environmental, health and safety matters.  MLB also provided advice to Koch and Koch affiliates on labor and employment issues, employee benefits issues and competition law issues.

3.       In a May 19, 1998 engagement letter between MLB and Koch, MLB states that the firm would "provide advice on a wide range of environmental law issues."  A true and correct copy of the May 19, 1998 engagement letter is annexed hereto as Exhibit A.  Indeed, while MLB was initially retained to provide legal advice on BWON[1]-related issues at the Corpus Christi refining complex of one of Koch's subsidiaries, the scope of the representation did in fact expand significantly over the next several years and  MLB provided counsel on a wide range of environmental, health and safety matters.

4.       Based on my review of the billing records, MLB professionals billed over 10,000 hours on EHS and other matters for Koch, totaling over $6 million in fees from 1998 to 2003.

5.       Based on my review of the billing records, more than 60 different lawyers and over a dozen non-lawyer professionals from MLB's New York, Philadelphia and Washington, D.C. offices billed time on Koch matters.

6.       The May 19, 1998 engagement letter set forth the terms under which MLB would represent Koch and its affiliated companies, including how MLB would handle potential conflicts of interest between its work for Koch and its affiliated companies as well as future work for other clients.  The letter provided for an advance waiver from Koch so that MLB could

---

[1]   As used herein, "BWON" refers to Benzene Waster Operations NESHAP and "PSD/NSR" refers to Prevention of Significant Deterioration/New Source Review, both of which are regulations under the Clean Air Act.

represent other clients in matters where the interests of those clients were adverse to Koch. This

advance waiver, however, did not extend to matters involving environmental law:

> Koch agrees that this firm may continue to represent, or may undertake in the future to represent, existing or new clients on any matter not involving actual litigation in areas of the law other than environmental law, even if the interests of such clients in those other matters are directly adverse to Koch. In addition, Koch agrees that the firm may represent existing firm clients in any litigation that Koch brings against those clients which involve legal issues other than environmental law.

Exh. A (emphasis added).


7.     The May 19, 1998 engagement letter also provides that MLB

> Agree[s], however, that your prospective consent to conflicting representations contained in this paragraph shall not apply in any instance where as a result of our representation of Koch in environmental law matters, we have obtained sensitive, proprietary or other confidential information of a non-public nature that, if known to another client of ours, could be used to the material disadvantage of Koch (or a company affiliated with Koch) in a matter in which we represent, or in the future are asked to undertake representation of, that client.

Id. (emphasis added).


**MLB's Termination of Its Relationship with Koch**

8.     Sometime on or before August 31, 2004, I received a phone call from

Dennis Morikawa of MLB, with whom I and other Koch personnel had worked over the years.

Mr. Morikawa told me that MLB had decided to terminate its relationship with Koch and that he

would be sending me a letter to that effect.

9.     After performing substantial work on some of Koch's most significant

matters, including corporate-wide Occupational Health and Safety Act ("OSHA") audits and a

consent decree (the "Koch Consent Decree") with EPA, DOJ and state agencies regarding

refineries operated by one of Koch's subsidiaries, Flint Hills Resources, LP ("FHR," formerly

known prior to 2001 as Koch Refining Company and then as Koch Petroleum Group), MLB's work for Koch had tapered off in 2003.

10.    When I asked why MLB was terminating the relationship, Mr. Morikawa advised that MLB had assessed the reduced level of activity on Koch matters and concluded the relationship should be terminated. Mr. Morikawa characterized the letter he planned to send me as "housekeeping" and "purely administrative." When I asked if there was any other reason regarding the termination beyond what he had just told me or anything else I should know, Mr. Morikawa replied, "No."

11.    On or about August 31, 2004, I received the termination letter Mr. Morikawa had advised me he was sending. The letter provided:

> Over the last several years it has been a real pleasure representing Koch Industries, Inc. and having had the opportunity to work with you and the many fine attorneys in the Koch Legal Department. Having assessed the level of activity on Koch matters over the last year, we have reached the conclusion that the representation of Koch Industries, Inc. should now be concluded. Naturally, should Koch Industries decide to utilize our services in the future, we would be very happy to discuss such a representation with you.

A true and correct copy of the letter from Dennis Morikawa of MLB to Mark Holden of Koch dated August 31, 2004 is annexed hereto as Exhibit B. MLB did not disclose the adverse representation of DuPont nor did it obtain Koch's consent for the representation.

12.    It was not until October 2005 that INVISTA and Koch learned, by happenstance, that MLB may have undertaken representation of DuPont in connection with INVISTA's indemnity claims against it. In March 2006, Koch and INVISTA were able to confirm MLB's representation of DuPont, at which time Koch and INVISTA first placed DuPont and MLB on notice of its objection to MLB's conflicting representation of DuPont. Thereafter, INVISTA repeatedly placed DuPont and MLB on notice of its objections prior to the filing of the

Complaint in this action. I have reviewed the Declaration of Laurie Sahatjian dated August 27, 2008 and agree with her description of events leading up to the filing of the Complaint.

## The Commencement of the INVISTA Action and Koch's Continued Objections to MLB's Representation of DuPont in this Matter

13. INVISTA filed the Complaint against DuPont in this matter on March 26, 2008.

14. The next day INVISTA's counsel contacted MLB by letter and asked how the firm planned to address its apparent conflict in representing DuPont in this matter. A true and correct copy of letter from Ben Preziosi of Curtis, Mallet-Prevost, Colt & Mosle LLP ("Curtis") to Troy Brown of MLB dated March 27, 2008 is annexed hereto as Exhibit C.

15. On March 31, 2008, MLB responded and again refused to wall off the attorneys and personnel who worked for Koch previously. A true and correct copy of the letter from Michael Bloom of MLB to Ben Preziosi of Curtis dated March 31, 2008 is annexed hereto as Exhibit D.

16. On April 10, 2008, INVISTA's counsel responded, and asked MLB to return all of the confidential materials MLB obtained or generated in connection with its representation of Koch. A true and correct copy of the April 10, 2008 letter from Ben Preziosi of Curtis to Michael Bloom of MLB is annexed hereto as Exhibit E.

17. In response to the request from INVISTA's counsel, MLB agreed to produce the documents and electronic data relating to its representation of Koch, totaling more than 200 boxes of materials. However, upon Koch's review of the materials produced in April 2008, Koch learned that MLB had withheld internal memoranda and client retention documents related to the Koch representation. When INVISTA's counsel followed up with MLB, MLB

refused to produce the withheld materials, which MLB represented were merely client intake memoranda and internal documentation.

18.    After making – and then withdrawing – an offer to meet personally, MLB finally agreed to meet with Koch representatives regarding MLB's continuing representation of DuPont in the INVISTA matter.

19.    On June 12, 2008, my colleague, Laurie Sahatjian, Koch's Associate General Counsel for Environmental, Health and Safety, and I met with Michael Bloom and Tom Reinert of MLB in their Washington, D.C. office to discuss MLB's representation of DuPont. It is my understanding that Mr. Bloom is MLB's General Counsel and Chair of MLB's Standing Committee on Conflicts and Professional Responsibility and that Mr. Reinert is the Conflicts and Professional Responsibility partner for MLB's Washington, D.C. office.

20.    At the June 12 meeting, I asked Mr. Bloom when MLB first began representing DuPont. He asked if I meant when did MLB first ever represent DuPont in any matter or specifically in the INVISTA matter, because DuPont had been an "on and off again" client of the firm over the years.

21.    I then clarified and asked him when DuPont first contacted MLB about representing it in any matter adverse to Koch or INVISTA. Mr. Bloom replied that DuPont first contacted MLB around the time that MLB sent the termination letter to Koch in or around August 2004, explaining that the initial inquiry came in around mid-August 2004. Mr. Bloom said that it was DuPont's inquiry to some of the same lawyers that represented Koch (John Quarles and Michael Steinberg) that had motivated MLB to send Koch the August 31, 2004 letter.

22.    During the June 12 meeting, he said that MLB realized a potential conflict was presented by representation of DuPont against INVISTA and that DuPont was potentially adverse to INVISTA.

23.    At the meeting, Mr. Bloom also conceded that, as a result of its work for Koch, MLB had access to sensitive, proprietary and other confidential information of a non-public nature. Mr. Bloom said that he assured himself that none of the MLB attorneys who worked on Koch matters shared confidential information about Koch or Koch affiliates with DuPont or used the confidential information to the disadvantage of Koch or INVISTA. He also claimed that none of the attorneys remembered much of anything they had done for Koch and its affiliated companies over the years. I explained to Mr. Bloom that to the extent the MLB lawyers who performed work for Koch and were in possession of Koch's confidential information did not remember what they did for Koch, that also created an issue. I explained that if what he said was true, Koch could not be assured the MLB lawyers were not sharing or using Koch's confidential information with another firm client; Mr. Bloom acknowledged that was an issue. I stated that this was another reason why MLB should have screened off these lawyers from the INVISTA-DuPont matter.

24.    When I asked about MLB's obligations to Koch and its affiliated companies under its May 19, 1998 engagement letter (Ex. A hereto), Mr. Bloom would not disclose whether MLB had analyzed its ethical obligations to Koch and its affiliated companies consistent with the representations it made in that letter. Instead, he claimed MLB satisfied itself that it could undertake the representation of DuPont adverse to INVISTA, consistent with its obligations to what he termed its "former client," Koch.

25.    At the June 12 meeting, Mr. Bloom provided me with a document purporting to show how much time certain MLB attorneys had billed on Koch matters. The

document showed that MLB had "screened off" Mr. Morikawa from the INVISTA matter, but had not screened off other attorneys, including Michael Steinberg and Jeffrey Hurwitz, both of whom worked on Koch matters. A true and correct copy of document Mr. Bloom provided at the June 12 meeting is annexed hereto as Exhibit F. This was the first time Koch and INVISTA learned that MLB had screened off any of the lawyers who previously worked for Koch, notwithstanding MLB's prior assertions that it had not screened any lawyers from the DuPont representation and had no ethical obligation to do so See Ex. C.

26.    At the meeting, after initially refusing to do so, Mr. Bloom finally agreed to make available to Koch the additional materials from Koch-matter files that it had previously withheld, and advised Koch for the first time that the withheld documents totaled another 106 boxes of materials.

27.    Following the meeting, I sent Mr. Bloom an email listing the items he had agreed to provide to Koch, including a response to Koch's request for access to the MLB files that MLB had previously refused to produce. I also asked for further information about the specific date when DuPont first contacted MLB about the INVISTA matter, which MLB attorneys who worked on Koch matters also have worked for DuPont on the INVISTA matter and when MLB advised Koch of the representation of DuPont. A true and correct copy of my June 12, 2008 email to Mr. Bloom is annexed hereto as Exhibit G.

28.    On June 13, 2008, Mr. Bloom contacted me by telephone to discuss the follow up issues detailed in my June 12 email. Among other things, he advised me that he would be responding in writing to my June 12 email. He also advised me that the initial inquiry from DuPont about MLB representing DuPont adverse to INVISTA came in before Mr. Morikawa's August 31, 2004 letter to me. He also stated that Mr. Morikawa's August 31, 2004 letter to me was motivated by "this opportunity [that] came about" to represent DuPont.

29.    On June 13, 2008, Mr. Bloom responded to my June 12 email, advising,

inter alia, that:

a.   MLB would make available to Koch for inspection at MLB's office in Philadelphia approximately 106 boxes of additional materials related to MLB's representation of Koch;

b.   DuPont had contacted MLB in late August 2004 about a potential representation relating to INVISTA;

c.   Michael Steinberg first billed time to DuPont on the INVISTA matter on September 1, 2004 and MLB opened a new DuPont matter relating to the INVISTA claims on October 19, 2004;

d.   Seven MLB professionals, in addition to Messrs. Steinberg, Hurwitz and Lewis, worked on both Koch matters and on the DuPont matter adverse to INVISTA, including four non-legal professionals and three MLB partners: T. Benjamin Huggett, Kenneth Rubin and Jack Dodds; and

e.   MLB did "not know whether or when Koch was notified of the Firm's representation of DuPont in this matter; however, as a former client, the Firm owed no duty of disclosure to Koch about this confidential new matter for DuPont while contemporaneously, the Firm owed a duty of confidentiality to DuPont not to disclose the matter unless and until authorized by DuPont to do so."

A true and correct copy of Mr. Bloom's June 13, 2008 email is annexed hereto as Exhibit H.

30.    On June 17, 2008, I responded to Mr. Bloom's email and asked him to

provide further information about when DuPont contacted MLB and when MLB screened Mr.

Morikawa from the INVISTA matter.  A true and correct copy of my June 17, 2008 email to Mr.

Bloom is annexed hereto as Exhibit I.

31.    Mr. Bloom responded by email dated June 18, 2008.  Mr. Bloom did not

provide further information about when DuPont contacted MLB, except to state that

Mr. Steinberg believed that the call from DuPont was within a few days of September 1, 2004.

Mr. Bloom stated that Mr. Morikawa never had and never will have any involvement in the

DuPont representation, and that MLB screened him from the INVISTA matter in April 2006 "out

of an overabundance of caution." A true and correct copy of Mr. Bloom's June 18, 2008 email is annexed hereto as Exhibit J.

32.    During the week of June 16, 2008, representatives of Koch inspected at MLB's office in Philadelphia the 106 boxes of additional Koch matter files that MLB had withheld from its April 2008 production of client files to Koch. The files in these 106 boxes included "attorney notes" and voluminous "working files" regarding environmental, health and safety matters at Koch and its affiliates, including regarding the OSHA audit, the Koch Consent Decree and negotiations with the EPA and DOJ.

33.    It is my understanding that all of these files – which include lengthy memoranda and notes relating to the same OSHA, BWON, and PSD/NSR violations and compliance issues and strategies that are the subject of this action – remain in the possession and control of MLB to date.

34.    MLB continued to maintain its position that it should not withdraw as counsel. In response, Koch and INVISTA retained Scott E. Mollen of the firm of Herrick, Feinstein LLP as special legal ethics counsel to advise it in connection with the conflicts issues in this case. In a letter dated August 13, 2008, Mr. Mollen wrote to Mr. Bloom again stating INVISTA and Koch's objections to MLB's representation of DuPont and asking that it withdraw without the necessity of a formal motion. Mr. Mollen's letter requested that MLB respond within 7 days. A true and correct copy of the August 13, 2008 letter from Scott Mollen to Mr. Bloom is annexed hereto as Exhibit K.

35.    MLB retained Stephen Younger of Patterson Belknap Webb & Tyler LLP, who, by letter dated August 19, 2008, responded to Mr. Mollen's August 13 letter by stating that MLB not only refused to withdraw. In the letter, Mr. Younger also threatens to seek sanctions against INVISTA if it proceeded with a motion to disqualify and to "explain the circumstances"

of "Koch's discontinuation of [MLB]'s services." A true and correct copy of the August 19, 2008 letter from Mr. Younger to Mr. Mollen is annexed hereto as Exhibit L

36.     Mr. Mollen responded to Mr. Younger by letter dated August 21, 2008, indicating that INVISTA and Koch were well aware of the arguments that MLB has continued raise regarding the conflicting representation. Mr. Mollen also requested that Mr. Younger explain further what his understanding of the facts underlying the "circumstances of [Koch's alleged] termination" of its relationship with MLB. In doing so, Mr. Mollen noted that (1) whatever the alleged circumstances were, they were not dispositive of the fact that MLB should withdraw from representing DuPont and (2) Koch and INVISTA assumed that MLB and Mr. Younger would be mindful of MLB's continuing obligation to safeguard all confidential information that Koch shared with MLB as its counsel. A response was requested by close of business on August 25, 2008. Mr. Younger responded by letter dated August 26, 2008 stating that MLB could not disclose the facts regarding "the particulars which led Koch to stop sending legal work" as it would "require [MLB] to disclose its former client's confidences" but that it would make such a disclosure "under appropriate protections as required to defend itself" against a motion to disqualify. A true and complete copy of Mr. Mollen's August 21, 2008 letter to Mr. Younger and Mr. Younger's August 26, 2008 letter to Mr. Mollen are collectively annexed hereto as Exhibit M.

37.     Accordingly, INVISTA was left no choice but to make the instant motion for disqualification of MLB as counsel for DuPont in this matter.

## Koch's Relationship to INVISTA and Its Financial Interest in this Action

38.     INVISTA is a wholly-owned subsidiary of Koch, headquartered in the same office complex as Koch in Wichita, Kansas. Koch imbues in its subsidiaries the very same

compliance philosophies and approaches held by the parent. As a responsible corporate citizen, Koch has oversight concerning the issues and concerns of its subsidiaries, and is particularly interested and involved in important and substantial compliance issues that arise in its subsidiaries. Personnel at all of the Koch companies are expected to adhere to the same fundamental approach and philosophy regarding compliance, and many of the legal, executive and operational personnel at INVISTA were at one time with Koch or other of the Koch subsidiaries. Thus, while the structure of the organization includes distinct subsidiaries, all of the companies and their personnel share a uniform philosophical approach of "10,000 percent compliance" in identifying, addressing and resolving business, legal and compliance issues.

39.    Many of the board members of INVISTA are senior level Koch executives. For example, I am both an officer of Koch and a member of the Board of INVISTA.

40.    Koch's in-house legal department often assists and works closely with the in-house departments of its subsidiaries, including INVISTA, particularly in connection with the types of highly sensitive and serious matters such as the BWON and PSD/NSR violations that are the subject of the INVISTA Consent Decree and this indemnity action against DuPont. As a result, and in my capacity as an INVISTA Board Member, I am generally informed on the issues involved in INVISTA's indemnity claims against DuPont.

41.    It was Koch, not INVISTA, that negotiated the deal with DuPont to purchase the facilities that are the subject of the environmental indemnity agreement that is the subject of this lawsuit. The assets Koch acquired in the more than $4 billion acquisition from DuPont – the largest Koch acquisition at that time – were then transferred to INVISTA.

42.    The outcome of this action, which involves a claim for indemnity regarding hundreds of millions of dollars in connection with environmental, health and safety liabilities, will have a direct impact on Koch's financial position.

**MLB's Representation of DuPont in the Case Against INVISTA**

43.     Based on my understanding of the facts and legal issues, the issues involved in MLB's former representation of Koch are substantially related to MLB's current representation of DuPont in the INVISTA indemnity action. In its prior representation of Koch, MLB helped Koch address, negotiate and resolve significant PSD/NSR and BWON violations at FHR refinery facilities in the Koch Consent Decree with EPA, DOJ and state agencies. Many of INVISTA's indemnity claims also arise under a proposed consent decree (the "INVISTA Consent Decree") with EPA, DOJ and state agencies and also involve the same types of PSD/NSR and BWON violations.

44.     Moreover, MLB provided substantial legal advice to Koch regarding compliance with OSHA and other health and safety regulations. Many of INVISTA's claims against DuPont involve OSHA and other health and safety regulations.

45.     MLB's involvement in the Koch Consent Decree involved many of the same senior managers and in-house attorneys from Koch and Koch affiliates who were later involved in INVISTA's consent decree with EPA and DOJ or who are otherwise involved in INVISTA's indemnity claims against DuPont. For example, MLB met extensively with senior FHR managers Jim Mahoney and Joe Coco regarding the negotiation and drafting of the Koch Consent Decree. Messrs. Mahoney and Coco also were substantially involved in negotiating the INVISTA Consent Decree with EPA and DOJ, specifically the determination of the proposed PSD/NSR and BWON corrective actions. Joe Coco was also involved with the limited due diligence DuPont allowed of its facilities during the purchase process and, after the purchase, the audits, determinations of corrective actions and negotiation of the INVISTA Consent Decree in his role as INVISTA Vice President of Operations.

46.     MLB worked closely on OSHA issues with Paul Kaleta, former General Counsel of Koch who later became INVISTA's General Counsel and signed the early notice letters to DuPont in the summer and fall of 2004.  True and correct copies of the June 17, 2004, July 13, 2004 and July 29, 2004 letters from Paul Kaleta to Roger Arrington and Paul Bonanto are annexed hereto as Exhibit N.  MLB also dealt extensively with William Frerking, Koch senior counsel, in connection with OSHA and other compliance issues.  Mr. Frerking assisted Koch on the Purchase Agreement and was involved in the due diligence of the acquired DuPont facilities.

47.     In this action, DuPont has named in its Initial Disclosures Pursuant to Fed. R. Civ. P. 26, six executives and in-house legal counsel of Koch – Joe Coco, Jim Mahoney, Bill Caffey, William Frerking, Paul Kaleta and Laurie Sahatjian – as persons "likely to have discoverable information that Defendants may use to support its claims or defenses."  A true and correct copy of  DuPont's Rule 26(a)(1) Initial Disclosures, dated June 30, 2008, is annexed hereto as Exhibit O.  Notably, DuPont lists each of these Koch employees (with the exception of Kaleta) as being affiliated with INVISTA.  See Ex. O at  8, fn 2; 10; 11; 14; 16; 18 and 20.

48.     As a result of its extensive work for Koch, MLB, of course, had access to Koch confidential information, which Bloom acknowledged when Ms. Sahatjian and I met with him and Mr. Reinert on June 12, 2008.  In connection with the Koch Consent Decree and the OSHA corporate-wide audit program, as well as its other work for Koch, MLB met with numerous Koch managers and attorneys, visited Koch's headquarters in Wichita, Kansas as well as Koch facilities across the country, and received voluminous documentation from Koch regarding its operations and its compliance with environmental, health and safety laws.  MLB's access to this confidential information is substantially prejudicial to INVISTA's claims in this matter.

49.    MLB never sought and Koch never provided its consent to MLB's representation of DuPont in this matter.    Indeed, MLB continues to assert that it had no obligation to do so, despite the fact that it acknowledged that the opportunity to represent DuPont in this matter was the impetus for MLB's August 31, 2004 letter terminating the relationship with Koch.    In his June 13, 2008 email to me, Mr. Bloom of MLB asserted that MLB had no obligation to seek a waiver from Koch:

> We do not know whether or when Koch was notified of [MLB's] representation of DuPont in this matter; however, as a former client, the Firm owed no duty of disclosure to Koch about this confidential new matter for DuPont while, contemporaneously, [MLB] owed a duty of confidentiality to DuPont not to disclose the matter unless and until authorized by DuPont to do so.

Ex. H.

50.    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, pursuant to 28 U.S.C. § 1746.

MARK V. HOLDEN

Signed this 27th day of August, 2008 at Wichita, Kansas.

-15-

# EXHIBIT A

1800 M Street, N.W.

Washington, D.C. 20036-5869

202-467-7000

Fax: 202-467-7176

# Morgan, Lewis & Bockius LLP

COUNSELORS AT LAW

*125 years*

**William H. Lewis**
202-467-7145

May 19, 1998

Robert J. Mueller, Esq.
Koch Industries, Inc.
4111 East 37th Street, North
Wichita, KS 67220

Dear Bob:

We are delighted that you have indicated you wish for our firm to provide advice on a range of environmental law issues and that Crowell & Moring LLP has asked our firm to provide assistance in connection with benzene NESHAP issues arising at the Koch Refining Company, L.P. Corpus Christi, Texas refineries. In accordance with firm policy, the purpose of this letter is to set forth our understanding of the terms upon which we will provide advice to Koch Industries, Inc. ("Koch") and, in particular, terms related to conflicts clearance on all matters involving Koch.

As with any firm representation, we will provide legal services on those matters for which Koch requests legal assistance in accordance with applicable legal and ethical standards. It is the practice of our firm to bill for legal services on a monthly basis and payment from clients is due within 30 days. The current hourly rate for my time is $330.00 per hour. The current hourly rates for associates and of counsel who might be involved range from $120.00 to $235.00 per hour. Hourly rates for paralegals currently range from $65.00 to $110.00 per hour.

In addition to our fees, we will bill you for any expenditures which we make or expenses we incur for you or on your behalf. These may include computer-based legal research costs, the costs of reproducing documents, long-distance telephone charges, parking and travel costs, expenses which we incur while we are away from our office on your business, and other similar expenditures.

Morgan, Lewis
& Bockius LLP

Robert J. Mueller, Esq.
May 19, 1998
Page 2

As you are aware, Morgan Lewis has a broad-based international practice and thus from time to time we may be asked to represent clients and potential clients whose interests are adverse or potentially adverse to those of Koch. You have indicated that you intend to retain us to provide legal services limited to the area of environmental law. Koch agrees that this firm may continue to represent, or may undertake in the future to represent, existing or new clients on any matter not involving actual litigation in areas of the law other than environmental law, even if the interests of such clients in those other matters are directly adverse to Koch. In addition, Koch agrees that the firm may represent existing firm clients in any litigation that Koch brings against those clients which involve legal issues other than environmental law. We agree, however, that your prospective consent to conflicting representations contained in this paragraph shall not apply in any instance where as a result of our representation of Koch in environmental law matters, we have obtained sensitive, proprietary or other confidential information of a non-public nature that, if known to another client of ours, could be used to the material disadvantage of Koch (or a company affiliated with Koch) in a matter in which we represent, or in the future are asked to undertake representation of, that client.

In particular, but without limiting the prior paragraph, we have advised you of, and you agree that we may continue in, the following adverse or potentially adverse representations involving matters both related and unrelated to environmental law: (1) representation of Daiwa Securities America in connection with any follow-up activities related to a 1997 financing in which a company affiliated with Koch was a party; and (2) representation of AlliedSignal in connection with its intervention in a petition for reconsideration before the Environmental Protection Agency and a petition for review before the D.C. Circuit Court of Appeals which involves a challenge by Hoechst Celanese of the Polymers and Resins Group IV Rule under Section 112 of the Clean Air Act. It has been reported that a company affiliated with Koch, together with another party, may purchase the unit of Hoechst Celanese that has challenged that rule. Koch also agrees that it waives any conflicts or potential conflicts that may arise in any subsequent proceedings which involve that Rule or successor rules and the parties referenced in this paragraph or their successors.

Please review this letter, and raise and discuss with me any questions which you may have. If this letter accurately reflects your understanding of our attorney-client relationship, please indicate your approval and acceptance by dating and signing the enclosed duplicate of the letter and returning it to me. Your signature indicates your authority to act on Koch's behalf.



Morgan, Lewis
& Bockius LLP

Robert J. Mueller, Esq.
May 19, 1998
Page 3

Again, we are delighted about the opportunity to work with you and provide assistance to Koch and to Crowell & Moring LLP in connection with matters involving Koch.

Sincerely yours,

William H. Lewis

APPROVED AND ACCEPTED:

By: _____
    Robert J. Mueller

Title: _____

Date: _____

WA03/109966.1

# EXHIBIT B

Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103-2921
Tel: 215.963.5000
Fax: 215.963.5001
www.morganlewis.com

## Morgan Lewis
### COUNSELORS AT LAW

**Dennis J. Morikawa**
215.963.5513
dmorikawa@morganlewis.com

August 31, 2004

**VIA FACSIMILE AND MAIL (316) 828-8494**

Mark V. Holden, Esquire
Co-General Counsel
Koch Industries, Inc.
4111 East 37th Street North
Wichita, KS 67220

Re:    Conclusion of Representation

Dear Mark:

Over the last several years it has been a real pleasure representing Koch Industries, Inc. and having had the opportunity to work with you and the many fine attorneys in the Koch Legal Department.

Having assessed the level of activity on Koch matters over the last year, we have reached the conclusion that the representation of Koch Industries, Inc. should now be concluded. Naturally, should Koch Industries decide to utilize our services in the future, we would be very happy to discuss such a representation with you.

We appreciate the opportunity to have been of service and hope that we will be able to assist you again at some time in the future.

Sincerely,

Dennis J. Morikawa

DJM/aml

Philadelphia  Washington  New York  Los Angeles  San Francisco  Miami  Pittsburgh  Princeton
Chicago  Palo Alto  Harrisburg  Irvine  Boston  London  Paris  Brussels  Frankfurt  Tokyo

```
*************** –COMM. JOURNAL– *************** DATE AUG-31-2004 ***** TIME 15:54 *** P.01

         MODE = MEMORY TRANSMISSION              START=AUG-31 15:53    END=AUG-31 15:54

         FILE NO.= 080

  STN NO.   COM   ABBR NO.    STATION NAME/TEL.NO.   PAGES   DURATION

   001      OK    ☎           0000#913168288494#     002/002 00:00'39"

                                                      –MORGAN LEWIS PHILA. 21ST –

  ***************************** –11TH FLR1      – ***** –        2159635001– *********
```

Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103-2921
TEL: 215.963.5000
FAX: 215.963.5001
eFax: 877.432.9652
www.morganlewis.com

# Morgan Lewis
C O U N S E L O R S   A T   L A W

## SEND TO

| | | | |
|---|---|---|---|
| Name: | Mark V. Holden | Firm: | Koch Industries, Inc. |
| FAX Number: | 316-828-8494 | Telephone Number: | 316-828-3654 |

## FROM

| | | | |
|---|---|---|---|
| Name: | Dennis J. Morikawa | Date Sent: | 8/31/2004 |
| Operator Sending: | | Telephone Number: | 215.963.5513 |
| FAX Number: | 215.963.5001 | Floor: 11 | |
| | | Number of Pages: *(including cover page)* | 2 |

## FAX MESSAGE

THE INFORMATION CONTAINED IN THIS FAX MESSAGE IS INTENDED ONLY FOR THE PERSONAL AND CONFIDENTIAL USE OF THE NAMED RECIPIENT(S). THIS MESSAGE MAY BE AN ATTORNEY-CLIENT COMMUNICATION AND AS SUCH IS PRIVILEGED AND CONFIDENTIAL. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT OR AN AGENT RESPONSIBLE FOR DELIVERING IT TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT YOU HAVE RECEIVED THIS DOCUMENT IN ERROR AND THAT ANY REVIEW, DISSEMINATION, DISTRIBUTION, OR COPYING OF THIS MESSAGE IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE, AND RETURN THE ORIGINAL MESSAGE TO US BY MAIL. THANK YOU.

## COMMENTS

# EXHIBIT C

CURTIS, MALLET-PREVOST, COLT & MOSLE LLP

ATTORNEYS AND COUNSELLORS AT LAW
101 PARK AVENUE
NEW YORK, NEW YORK 10178-0061

FRANKFURT    MUSCAT
HOUSTON      PARIS
LONDON       STAMFORD
MEXICO CITY  WASHINGTON, D.C.
MILAN

TELEPHONE 212-696-6000
FACSIMILE 212-697-1559
E-MAIL INFO@CURTIS.COM
INTERNET WWW.CURTIS.COM

March 27, 2008

**VIA FACSIMILE AND FEDERAL EXPRESS**

Troy Brown, Esq.
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA  19103-2921

Re:    INVISTA/DuPont

Dear Troy:

Enclosed is a copy of the complaint that was filed on Wednesday in the Southern District of New York.  We are in the process of serving DuPont.

Your latest correspondence to INVISTA made accusations regarding what DuPont intends to do "in any lawsuit concerning the indemnification and contractual rights and obligations of the parties."  For INVISTA, that raises again a critical issue regarding Morgan Lewis's unresolved conflicts of interest and its ethical obligations.  As you may recall, in the early part of 2006, there was an exchange of correspondence regarding your firm's conflict as a result of the prior representation by Morgan Lewis, and particularly Michael Steinberg, of Koch Industries, Inc., INVISTA's parent company, on specific environmental and OSHA matters.  As you know, INVISTA has reserved all rights with regard to this conflict.  Now that litigation has commenced, we would be interested in hearing from you or Michael Bloom how Morgan Lewis and DuPont intend to address this matter, consistent with your ethical obligations.

Please let us have your views within 10 days.

Sincerely,

Ben Preziosi

Enclosure

# EXHIBIT D

Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103-2921
Tel: 215.963.5000
Fax: 215.963.5001
www.morganlewis.com

# Morgan Lewis
COUNSELORS AT LAW

**Michael A. Bloom**
215-963-5032
mbloom@morganlewis.com
eFax: 877.432.9652

March 31, 2008

**Fax and Federal Express**

Benard V. Preziosi, Jr., Esquire
Curtis, Mallet-Prevost, Colt & Mosle, LLP
101 Park Avenue
New York, New York 10178-0061

Re:    INVISTA B.V., et al. v. E.I. du Pont de Nemours and Company; U.S.D.C., S.D.N.Y.
       (Civ.A.No. 08-CV-3063)

Dear Mr. Preziosi:

We received your letter to my partner Troy Brown, dated March 27, 2008, which inquires about
the narrow, former representation of Koch Industries, Inc. ("Koch") by Morgan Lewis. As you
know, Koch and Morgan Lewis exchanged letters on this topic in March and April 2006. For the
past two years, Morgan Lewis has been lead litigation and environmental counsel to DuPont in
connection with its indemnification dispute with a Koch affiliate, INVISTA. Since the exchange
of correspondence in early 2006, Koch and INVISTA have neither raised this topic, nor
suggested that they believe Morgan Lewis has an "unresolved conflict of interest," nor objected
to the ongoing, fully disclosed representation of DuPont by Morgan Lewis or any of its
attorneys. Therefore, particularly coming directly from INVISTA's outside litigation counsel,
following the institution of suit, we and DuPont only can conclude that this represents an
inappropriate litigation tactic. As I am sure you know, courts in the Southern District of New
York strongly disfavor using as a litigation tactic allegations of purported conflicts of interest,
particularly where the former client has remained silent for years after apparent resolution of the
issue and fully disclosed direct adversity.

In any event, when Koch initially raised this issue in late March 2006, we immediately and
thoroughly investigated and evaluated the issues. We have done so again despite the transparent
strategic motive underlying your letter, and have arrived at the same conclusion. No conflict of
interest existed then or presently exists. As we advised more than two years ago, our
representation of Koch formally concluded on August 31, 2004. Indeed, we have never
represented any INVISTA entity, including any of the nine INVISTA entities listed as named
plaintiffs in the Complaint.

Morgan Lewis
COUNSELORS AT LAW

Our existing and going forward representation of DuPont has not been and is not "substantially related" to our historic, prior legal work for Koch. Accordingly, there was and is no obligation to screen from this representation any of the Morgan Lewis attorneys who were at one time involved in the representation of Koch. Importantly, Morgan Lewis performed no work for Koch related to the acquisition of any DuPont facility in April 2004, and Morgan Lewis had no prior substantive knowledge regarding the present claims by INVISTA against DuPont. The mere fact that many years ago Morgan Lewis provided legal representation to Koch in the general subject area of environmental, health and safety law in no way precludes our ability to represent DuPont specifically, or other clients generally, in the same general subject area. Taking your point to its extreme, if it were valid, all law firms would find themselves conflicted out of any same subject area representation for all but one client in each subject matter area.

As we did in March-April 2006, we take most seriously our professional obligations to Koch as a former client, most notably in this context our responsibility to protect confidential information obtained by our lawyers from Koch. We reiterate our assurances that we have preserved the confidentiality of this information and we shall continue to do so in the future. We do not believe, however, that any other precautions are required at this time.

I would be happy to speak with you and a representative of Koch personally if you would like to discuss this matter further.

Sincerely,

Michael A. Bloom

cc:    Troy M. Brown, Esq.
       Michael W. Steinberg, Esq.

# EXHIBIT E

## CURTIS, MALLET-PREVOST, COLT & MOSLE LLP

ATTORNEYS AND COUNSELLORS AT LAW
101 PARK AVENUE
NEW YORK, NEW YORK 10178-0061

FRANKFURT   MUSCAT
HOUSTON     PARIS
LONDON      STAMFORD
MEXICO CITY WASHINGTON, D.C.
MILAN

TELEPHONE 212-696-6000
FACSIMILE 212-697-1559
E-MAIL INFO@CURTIS.COM
INTERNET WWW.CURTIS.COM

WRITER'S DIRECT:
TEL.: 212-696-6198
E-MAIL BPREZIOSI@CURTIS.COM
FACSIMILE 917-368-8899

April 10, 2008

**VIA FACSIMILE AND FIRST CLASS MAIL**

Michael Bloom, Esq.
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103-2921

Dear Mr. Bloom:

We write in response to your March 31, 2008 letter concerning Morgan Lewis's prior representation of Koch Industries, Inc., and its subsidiary companies, and continuing role as DuPont's counsel in connection with the indemnity claims brought by Koch's subsidiary, INVISTA, against DuPont.

We disagree with your suggestion that Koch and INVISTA have waived their rights with respect to Morgan Lewis's representation of DuPont. As set forth in Laurie Sahatjian's March 31, 2006 letter to Guy Johnson, Koch was never asked to waive and has never waived any conflict of interest or other ethical or disciplinary impediment to Morgan Lewis's representation of Koch. It was incumbent upon Morgan Lewis to seek such a waiver given the nature and scope of its representation of Koch. In Ms. Sahatjian's March 31, 2006 letter and on other occasions, Koch asked Morgan Lewis to wall off any legal professionals who assisted in its representation of Koch from matters related to the indemnity under the Purchase Agreement and to confirm that Morgan Lewis has not and will not use confidential information that it learned through its representation of Koch. In an April 7, 2006 letter to you, Ms. Sahatjian again asserted that Morgan Lewis should wall off the attorneys and other personnel who worked on Koch matters from the indemnity matter. Ms. Sahatjian also reserved all rights to object to Morgan Lewis's representation of DuPont.

We also disagree with your assertion that INVISTA's position in this matter represents an "inappropriate litigation tactic." Morgan Lewis and DuPont have been on notice of Koch and INVISTA's objections to Morgan Lewis's representation of DuPont in this matter since at least as early as the first quarter of 2006. As a result, Morgan Lewis and DuPont

proceeded at their peril. Now that the parties are in court, Koch and INVISTA have the mechanism, previously unavailable to them, to protect their rights.

Further, there is nothing "inappropriate" about protecting such rights. Morgan Lewis represented Koch and its refining subsidiary, Flint Hills Resources (formerly, Koch Petroleum Group, LP), with respect to Clean Air Act, including Benzene Waste Operations NESHAP ("BWON") and PSD/NSR, and OSHA related matters, and as a result, was privy to Koch's confidential information about, among other things, its environmental, health and safety compliance, policies and procedures.

Of particular concern, but without limitation, Bill Lewis and Michael Steinberg of Morgan Lewis represented Koch in connection with BWON compliance at Koch's refineries. Mr. Lewis and Denise Grant, whom we understand have since left Morgan Lewis, also represented Koch in connection with a litigation regarding BWON compliance and with regard to BWON compliance at Koch's Corpus Christi facility. Further, Jeff Hurwitz, among others, represented Koch in connection with clean air issues, including PSD/NSR. In addition, Dennis Morikawa and Jim Philbin represented a number of Koch companies on a wide variety of OSHA compliance matters for a number of years, and were intimately involved in Koch's OSHA compliance auditing process by serving as audit counsel. In connection with this broad representation based on environmental law and OSHA issues, Morgan Lewis worked frequently with Koch lawyers, employees, and consultants, many of whom are potential witnesses in the litigation with DuPont.

Undoubtedly, Morgan Lewis's prior representation of Koch, the parent entity of the INVISTA entities that have sued DuPont, is "substantially related" to the environmental, health and safety claims that are the underlying basis of the Complaint against DuPont. You have conceded Morgan Lewis's possession of confidential information it obtained through its prior representation of Koch, yet have refused to address the very serious issues concerning Morgan Lewis's representation of DuPont in this lawsuit.

Accordingly, we request on behalf of Koch that you return all materials relating to confidential information (client documents, advice memoranda, correspondence, notes, emails etc.) that you obtained or generated in connection with your representation of Koch. In gathering these materials, we expect that this sensitive, confidential information is not shared with DuPont or the lawyers representing DuPont in this matter. Please provide these materials by April 18, 2008.

INVISTA and Koch reserve all rights.

Sincerely,

Ben Preziosi

cc: Robert Dwyer, Esq. (via facsimile)

EXHIBIT F

*Client #04766700 : Koch Industries Inc.*

| F/Y | J. Hurwitz | W. Lewis | Screened From Invista Litigation D. Morikawa | M. Steinberg | Totals |
|---|---|---|---|---|---|
| 1998 | 00.00 | 00.60 | 00.00 | 10.30 | 10.90 |
| 1999 | 57.20 | 49.60 | 00.00 | 55.50 | 162.30 |
| 2000 | 61.50 | 34.70 | 00.00 | 00.00 | 96.20 |
| 2001 | 00.10 | 00.00 | 00.00 | 00.00 | 00.10 |
| Totals | 118.80 | 84.90 | 00.00 | 65.80 | 269.50 |

*Client #04766700: Koch Industries L&E*

| F/Y | J. Hurwitz | W. Lewis | D. Morikawa | M. Steinberg | Totals |
|---|---|---|---|---|---|
| 2000 | 3.20 | 00.00 | 529.80 | 00.00 | 533.00 |
| 2001 | 00.00 | 00.00 | 453.60 | 00.00 | 453.60 |
| 2002 | 00.00 | 00.00 | 73.10 | 00.00 | 73.10 |
| 2003 | 3.70 | 00.00 | 3.00 | 00.00 | 6.70 |
| Totals | 6.90 | 00.00 | 1059.60 | 00.00 | 1066.40 |

*Client #05747300 Koch Chemical Tech.*

| F/Y | J. Hurwitz | W. Lewis | D. Morikawa | M. Steinberg | Totals |
|---|---|---|---|---|---|
| 2002 | 00.00 | 00.00 | 2.10 | 00.00 | 2.10 |
| Totals | 00.00 | 00.00 | 2.10 | 00.00 | 2.10 |

*Client #05657300 Flint Hills Resources*

| F/Y | J. Hurwitz | W. Lewis | D. Morikawa | M. Steinberg | Totals |
|---|---|---|---|---|---|
| 2002 | 00.00 | 00.00 | 3.70 | 00.00 | 3.70 |
| 2003 | 00.00 | 00.00 | 17.60 | 00.00 | 17.60 |
| 2004 | 00.00 | 00.00 | 2.30 | 00.00 | 2.30 |
| Totals | 00.00 | 00.00 | 23.60 | 00.00 | 23.60 |

| Grand Total | 125.70 | 84.90 | 1085.20 | 65.80 | 1361.60 |
|---|---|---|---|---|---|

# EXHIBIT G

**From:** Holden, Mark (Koch Legal)
**Sent:** Thursday, June 12, 2008 2:59 PM
**To:** 'mbloom@morganlewis.com'
**Subject:** Follow up

Dear Michael,

I want to thank you and Tom for meeting today with Laurie Sahatjian and me to discuss our concerns regarding the various issues presented by Morgan Lewis' representation of DuPont in the dispute between Koch's subsidiary INVISTA and DuPont. As you know, Koch is a former client of Morgan Lewis and has expressed these concerns via written communications to Morgan Lewis in the past. We thought today's meeting was productive and we have a better understanding of the issues remaining before us. In order to ensure that we share the same understanding regarding deliverables by both of us, I thought it prudent to provide a quick list of those items.

You agreed to the following:

1.  Provide a copy of the firm's policy/protocol regarding "Release of Client Files."

2.  Consider whether we can have access to the working files next week based on an acceptable protocol for copies/originals/etc. I recall you were leaning towards such access but wanted to think about and discuss it in more detail internally, and that you would try to get back to us by tomorrow regarding this issue. As I explained, because time is of the essence for Koch in assessing how best to protect itself on these issues and what steps to take to do so, we can have someone travel to Morgan Lewis' Philadelphia office next week to undertake the review.

3.  Advise as to when Morgan Lewis was approached by DuPont in relation to the INVISTA matter(s)/claims/etc. and who within the firm was approached.

4.  Confirm what you told us during the meeting that the August 31, 2004 "termination of representation" letter to me signed by Mr. Morikawa was sent at that time because MLB had been approached by DuPont and had agreed to undertake representation of DuPont adverse to Koch and INVISTA.

5.  Advise as to when the conflicts analysis relating to the DuPont engagement was performed by Morgan Lewis and when the firm first advised Koch of the representation of DuPont.

6. Confirm whether there are any lawyers at the firm, other than the three we discussed - Messrs Steinberg, Hurwitz and Lewis - who were involved in any way with the matters that Morgan Lewis handled for Koch companies who have worked in any manner on behalf of DuPont in connection with the current disputes.

We agreed to provide a list of specific areas of law/matters handled by Morgan Lewis for Koch companies where we had particular concerns from a conflict/confidentiality standpoint. We are providing the list below in order to assist you in better understanding the nature and scope of work upon which Morgan Lewis previously counseled and advised Koch, but this list should in no way be considered a complete or exhaustive list and should not be construed as limiting the matters about which we currently have concerns or may in the future, nor is it a waiver of

any rights that we may have.  However, we do believe it may be useful for you to understand the breadth and depth of advice provided to Koch, which by necessity involved the transmittal of highly sensitive, proprietary, and/or confidential information concerning Koch to Morgan Lewis attorneys.

1. EPA Audit Strategy, protocols, strategic advice for the negotiated and still active consent decree on Clean Air Act (NSR/PSD and BWON) and RCRA matters.

2. BWON applicability analysis and compliance advice

3. NSR/PSD applicability analysis and compliance advice.

4. OSHA and PSM advice, including audit program development and implementation and strategic advice regarding OSHA

We look forward to hearing back from you and, to the extent we can make progress, continue our dialogue on these important issues.  Please call my cell at 316-841-6030 if you wish to discuss any of this today or tomorrow . Thanks very much and we continue to reserve all rights.

Mark Holden

EXHIBIT H

**From:** Michael A. Bloom [mailto:mbloom@morganlewis.com]
**Sent:** Friday, June 13, 2008 2:25 PM
**To:** Holden, Mark (Koch Legal)
**Cc:** Thomas E. Reinert Jr.
**Subject:** Koch Industries Requests
**Importance:** High

Mark,

In response to our meeting and email exchange of yesterday, and further to our telephone call of this morning, the following responds, by numbered paragraph, to Koch Industries' requests, as set forth in your email to me of June 12, 2008:

1. Yesterday, we provided you with a copy of the Morgan Lewis Firm Policies & Procedures Policy on "Release of Client Files".

2. This morning, I confirmed to you that Morgan Lewis would make available for Koch's review next week approximately 106 boxes of duplicate client materials and "Attorney Working Files". My assistant, Kate Kinsman (215.963.4890/kkinsman@morganlewis.com), has made arrangements to have a conference room available for this purpose during all of next week. You advised that you would be sending two people to conduct the document review. As soon as you have identified them, please advise us of their names and when they expect to arrive in our offices. Kate will be happy to assist you with logistics for the document review. As I told you, we believe that many of the documents are duplicates or variations on a theme of documents which were part of the 200+ boxes which we already have been sent to Koch. Assuming that you would like copies of some of these documents, and further assuming the reasonableness of the copying requests (i.e. you are not asking for a copy of every document), Morgan Lewis will agree to copy the documents and provide you with the requested copies at our expense.

3. The original request of Morgan Lewis to consider the possible representation of DuPont in the current Invista dispute occurred via a telephone call made by DuPont to our now retired partner and the long-time chair of our Environmental Practice, John Quarles. The call was received sometime in late August 2004. John turned the call over almost immediately to Mike Steinberg. Mike Steinberg first recorded time to the DuPont /Invista matter on September 1, 2004. Interestingly, Mike spent only 1.2 hours on the matter in September and October of 2004. Thereafter, there was no activity on the matter from October 26, 2004 until May 2, 2005.

4. Dennis Morikawa and Mike Steinberg spoke about the possible new representation of DuPont (involving the sale of the Invista facilities by DuPont to Koch) adverse to Koch in late August 2004.

Dennis advised Mike that given that we had not received any work from Koch for quite some time, it was appropriate to confirm the termination of the representation of Koch which he did pursuant to his letter to you dated August 31, 2004.

5. Conflicts were cleared during that same time period. The new DuPont matter was not opened until October 19, 2004 (which, based upon my experience, means that Mike Steinberg's September and October 2004 telephone conversations with DuPont were exploratory and that we had not undertaken the representation until the new matter was opened). We do not know whether or when Koch was notified of the Firm's representation of DuPont in this matter; however, as a former client, the Firm owed no duty of disclosure to Koch about this confidential new matter for DuPont while contemporaneously, the Firm owed a duty of confidentiality to DuPont not to disclose the matter unless and until authorized by DuPont to do so.

6. There are seven Morgan Lewis professionals who previously worked on Koch matters who have expended some time on the Invista/DuPont litigation. By current position, they are:

Jack Dodds (partner); Andrea Preate (legal assistant); Kelly Ann Hendry (research librarian); Ben Huggett (partner); Ken Rubin (partner); Linda Eaton (legal assistant); and Charles Calvaruso (administrative paralegal/court filer).

Should you have further questions, please do not hesitate to call me. Safe travel and have a good weekend.


Michael




Michael A. Bloom, Esquire
General Counsel
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103-2921
215.963.5032
Direct Fax: 877.432.9652
Fax (over 25 pages): 215.963.5001
mbloom@morganlewis.com
www.morganlewis.com

DISCLAIMER
This e-mail message is intended only for the personal
use of the recipient(s) named above. This message may
be an attorney-client communication and as such privileged
and confidential.  If you are not an intended recipient,
you may not review, copy or distribute this message. If
you have received this communication in error, please
notify us immediately by e-mail and delete the original
message.

EXHIBIT I

**From:** Holden, Mark (Koch Legal)
**Sent:** Tuesday, June 17, 2008 4:04 PM
**To:** 'Michael A. Bloom'
**Cc:** Thomas E. Reinert Jr.
**Subject:** RE: Koch Industries Requests

Michael,

Thank you for your response to our June 12 requests, which I received just as I was leaving Washington, D.C. on Friday afternoon.  I now have had an opportunity to review it.  I note that we are awaiting the results of your inquiry into the substance of the work performed by Morgan Lewis lawyers for Koch as detailed in my June 12 email and whether the same or similar work was performed by Morgan Lewis lawyers  for DuPont in connection with the representation relating to INVISTA's claims under the Purchase Agreement.  While I await that information, as well as whatever information we may learn in light of our review of the 106 boxes of documents that you made available for review this week, I had some follow up questions.  Once again, time is of the essence as we must consider what steps Koch and INVISTA may need to take to protect themselves in light of this situation.  Therefore, I would appreciate a prompt response to my questions:

1.  Please provide a more specific date when the initial telephone call from DuPont regarding representation came into Mr. Quarles.  Your email states "late August" 2004, but it is important for Koch's analysis of whether Morgan Lewis honored its obligations to know the specific date when that call occurred.

2.  While you represented to me on June 12 that Morgan Lewis satisfied itself it could take on the adverse representation of DuPont against Koch in the INVISTA matter in August 2004, please describe who was involved in that analysis, the dates when the analysis occurred, and what was considered in making this determination.  In addition, please advise whether Morgan Lewis considered in its analysis the May 19, 1998 letter from William H. Lewis of your firm to Robert J. Mueller of Koch Industries.  If your firm did not consider the May 19, 1998 letter and the representations Morgan Lewis made in that letter, please let me know that as well.

3.  Please advise the date when Dennis Morikawa was "screened," as you put it, from the INVISTA matter.

I look forward to your responses to my inquiries .  Thank you for your continued cooperation and we continue to reserve all rights.

Mark

**From:** Michael A. Bloom [mailto:mbloom@morganlewis.com]
**Sent:** Friday, June 13, 2008 2:25 PM
**To:** Holden, Mark (Koch Legal)
**Cc:** Thomas E. Reinert Jr.
**Subject:** Koch Industries Requests
**Importance:** High

Mark,

In response to our meeting and email exchange of yesterday, and further to our telephone call of this morning, the following responds, by numbered paragraph, to Koch Industries' requests, as set forth in your email to me of June 12, 2008:

1. Yesterday, we provided you with a copy of the Morgan Lewis Firm Policies & Procedures Policy on "Release of Client Files".

2. This morning, I confirmed to you that Morgan Lewis would make available for Koch's review next week approximately 106 boxes of duplicate client materials and "Attorney Working Files". My assistant, Kate Kinsman (215.963.4890/kkinsman@morganlewis.com), has made arrangements to have a conference room available for this purpose during all of next week. You advised that you would be sending two people to conduct the document review. As soon as you have identified them, please advise us of their names and when they expect to arrive in our offices. Kate will be happy to assist you with logistics for the document review. As I told you, we believe that many of the documents are duplicates or variations on a theme of documents which were part of the 200+ boxes which we already have been sent to Koch. Assuming that you would like copies of some of these documents, and further assuming the reasonableness of the copying requests (i.e. you are not asking for a copy of every document), Morgan Lewis will agree to copy the documents and provide you with the requested copies at our expense.

3. The original request of Morgan Lewis to consider the possible representation of DuPont in the current Invista dispute occurred via a telephone call made by DuPont to our now retired partner and the long-time chair of our Environmental Practice, John Quarles. The call was received sometime in late August 2004. John turned the call over almost immediately to Mike Steinberg. Mike Steinberg first recorded time to the DuPont /Invista matter on September 1, 2004. Interestingly, Mike spent only 1.2 hours on the matter in September and October of 2004. Thereafter, there was no activity on the matter from October 26, 2004 until May 2, 2005.

4. Dennis Morikawa and Mike Steinberg spoke about the possible new representation of DuPont (involving the sale of the Invista facilities by DuPont to Koch) adverse to Koch in late August 2004. Dennis advised Mike that given that we had not received any work from Koch for quite some time, it was appropriate to confirm the termination of the representation of Koch which he did pursuant to his letter to you dated August 31, 2004.

5. Conflicts were cleared during that same time period. The new DuPont matter was not opened until October 19, 2004 (which, based upon my experience, means that Mike Steinberg's September and October 2004 telephone conversations with DuPont were exploratory and that we had not undertaken the representation until the new matter was opened). We do not know whether or when Koch was notified of the Firm's representation of DuPont in this matter; however, as a former client, the Firm owed no duty of disclosure to Koch about this confidential new matter for DuPont while contemporaneously, the Firm owed a duty of confidentiality to DuPont not to disclose the matter unless and until authorized by DuPont to do so.

6. There are seven Morgan Lewis professionals who previously worked on Koch matters who have expended some time on the Invista/DuPont litigation. By current position, they are:

Jack Dodds (partner); Andrea Preate (legal assistant); Kelly Ann Hendry (research librarian); Ben Huggett (partner); Ken Rubin (partner); Linda Eaton (legal assistant); and Charles Calvaruso (administrative paralegal/court filer).

Should you have further questions, please do not hesitate to call me. Safe travel and have a good weekend.


Michael



Michael A. Bloom, Esquire
General Counsel
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103-2921
215.963.5032
Direct Fax: 877.432.9652
Fax (over 25 pages): 215.963.5001
mbloom@morganlewis.com
www.morganlewis.com

DISCLAIMER
This e-mail message is intended only for the personal
use of the recipient(s) named above. This message may
be an attorney-client communication and as such privileged
and confidential.  If you are not an intended recipient,
you may not review, copy or distribute this message. If
you have received this communication in error, please
notify us immediately by e-mail and delete the original
message.

EXHIBIT J

**From:** Michael A. Bloom [mailto:mbloom@morganlewis.com]
**Sent:** Wednesday, June 18, 2008 3:36 PM
**To:** Holden, Mark (Koch Legal)
**Cc:** Thomas E. Reinert Jr.
**Subject:** RE: Koch Industries Requests
**Importance:** High

Mark,

Let me first report that your three representatives concluded their document review in less than two days in our offices. We are in the process of completing the photocopying of all materials requested to be copied by your team with the goal of having them in Koch's hands this week.

Second, both my recollection and that of Tom Reinert is different from your own with regard to any information disclosure concerning our work for DuPont in the INVISTA matter. The issue is not whether the type of environmental work for DuPont on the INVISTA facilities is the "same or similar" as the work which we did for Koch on different facilities. The legal and ethical issue is whether the matters which we handled for Koch were "the same or substantially related" as the INVISTA/DuPont matter which now is the subject of the SDNY litigation brought by INVISTA. Koch continues to misstate the applicable ethical test. The matters are not "the same or substantially related" for reasons which we already have discussed with you and with which we know you disagree.

Third, at this time, we cannot pinpoint the precise date that John Quarles received the initial inquiry call about the INVISTA potential matter from DuPont, however, Mike Steinberg's best recollection is that the call was received from DuPont within a few days of September 1, 2004.

Fourth, during our meeting, I did not commit to provide you with any detail concerning our internal conflicts clearance process while at the same time attempting to reassure you, however unsuccessfully, that we (a) followed our standard conflicts clearance protocol; and (b) cleared all appropriate conflicts of interest vis a vis Koch Industries and otherwise. As for the May 19,1998 letter, as I told you during our meeting, once Koch Industries became a former client of Morgan Lewis, the letter no longer controlled the relationship.

Finally, Dennis Morikawa **never** has had nor will he have any involvement on behalf of DuPont in the INVISTA matter. From the time the very first call from DuPont was received about the INVISTA matter, Dennis never had any involvement in the matter. When the issue was raised by Koch, and not because we had an ethical responsibility to do so, but out of an overabundance of caution, Dennis was formally screened from the matter in April of 2006. It also is important to share with you that Dennis - both at that time and now - has advised that he had no knowledge of any of the facilities which DuPont

sold to Koch Industries nor has he ever shared whatever limited knowledge he had or still may have about his former representation of Koch with any person involved in the defense of DuPont in the INVISTA matter.

Michael

Michael A. Bloom, Esquire
General Counsel
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103-2921
215.963.5032
Direct Fax: 877.432.9652
Fax (over 25 pages): 215.963.5001
mbloom@morganlewis.com
www.morganlewis.com
  ▽ "Holden, Mark (Koch Legal)" <HoldenM@kochind.com>

| "Holden, Mark (Koch Legal)" <HoldenM@kochind.com> | To "Michael A. Bloom" <mbloom@morganlewis.com> |
| --- | --- |
| | cc "Thomas E. Reinert Jr." <treinert@morganlewis.com> |
| | Subject RE: Koch Industries Requests |
| 06/17/2008 05:03 PM | |

Michael,

Thank you for your response to our June 12 requests, which I received just as I was leaving Washington, D.C. on Friday afternoon. I now have had an opportunity to review it. I note that we are awaiting the results of your inquiry into the substance of the work performed by Morgan Lewis lawyers for Koch as detailed in my June 12 email and whether the same or similar work was performed by Morgan Lewis lawyers for DuPont in connection with the representation relating to INVISTA's claims under the Purchase Agreement. While I await that information, as well as whatever information we may learn in light of our review of the 106 boxes of documents that you made available for review this week, I had some follow up questions. Once again, time is of the essence as we must consider what steps Koch and INVISTA may need to take to protect themselves in light of this situation. Therefore, I would appreciate a prompt response to my questions:

1. Please provide a more specific date when the initial telephone call from DuPont regarding representation came into Mr. Quarles. Your email states "late August" 2004, but it is important for Koch's analysis of whether Morgan Lewis honored its obligations to know the specific date when that call occurred.

2. While you represented to me on June 12 that Morgan Lewis satisfied itself it could take on the adverse representation of DuPont against Koch in the INVISTA matter in August 2004, please describe who was involved in that analysis, the dates when the analysis occurred, and what was considered in making this determination. In addition, please advise whether Morgan Lewis considered in its analysis the May 19, 1998 letter from William H. Lewis of your firm to Robert J. Mueller of Koch Industries. If your firm did not consider the May 19, 1998 letter and

the representations Morgan Lewis made in that letter, please let me know that as well.

3. Please advise the date when Dennis Morikawa was "screened," as you put it, from the INVISTA matter.

I look forward to your responses to my inquiries . Thank you for your continued cooperation and we continue to reserve all rights.

Mark

---

**From:** Michael A. Bloom [mailto:mbloom@morganlewis.com]
**Sent:** Friday, June 13, 2008 2:25 PM
**To:** Holden, Mark (Koch Legal)
**Cc:** Thomas E. Reinert Jr.
**Subject:** Koch Industries Requests
**Importance:** High

Mark,

In response to our meeting and email exchange of yesterday, and further to our telephone call of this morning, the following responds, by numbered paragraph, to Koch Industries' requests, as set forth in your email to me of June 12, 2008:

1. Yesterday, we provided you with a copy of the Morgan Lewis Firm Policies & Procedures Policy on "Release of Client Files".

2. This morning, I confirmed to you that Morgan Lewis would make available for Koch's review next week approximately 106 boxes of duplicate client materials and "Attorney Working Files". My assistant, Kate Kinsman (215.963.4890/kkinsman@morganlewis.com), has made arrangements to have a conference room available for this purpose during all of next week. You advised that you would be sending two people to conduct the document review. As soon as you have identified them, please advise us of their names and when they expect to arrive in our offices. Kate will be happy to assist you with logistics for the document review. As I told you, we believe that many of the documents are duplicates or variations on a theme of documents which were part of the 200+ boxes which we already have been sent to Koch. Assuming that you would like copies of some of these documents, and further assuming the reasonableness of the copying requests (i.e. you are not asking for a copy of every document), Morgan Lewis will agree to copy the documents and provide you with the requested copies at our expense.

3. The original request of Morgan Lewis to consider the possible representation of DuPont in the current Invista dispute occurred via a telephone call made by DuPont to our now retired partner and the long-time chair of our Environmental Practice, John Quarles. The call was received sometime in late August 2004. John turned the call over almost immediately to Mike Steinberg. Mike Steinberg first recorded time to the DuPont /Invista matter on September 1, 2004. Interestingly, Mike spent only 1.2 hours on the matter in September and

October of 2004. Thereafter, there was no activity on the matter from October 26, 2004 until May 2, 2005.

4. Dennis Morikawa and Mike Steinberg spoke about the possible new representation of DuPont (involving the sale of the Invista facilities by DuPont to Koch) adverse to Koch in late August 2004. Dennis advised Mike that given that we had not received any work from Koch for quite some time, it was appropriate to confirm the termination of the representation of Koch which he did pursuant to his letter to you dated August 31, 2004.

5. Conflicts were cleared during that same time period. The new DuPont matter was not opened until October 19, 2004 (which, based upon my experience, means that Mike Steinberg's September and October 2004 telephone conversations with DuPont were exploratory and that we had not undertaken the representation until the new matter was opened). We do not know whether or when Koch was notified of the Firm's representation of DuPont in this matter; however, as a former client, the Firm owed no duty of disclosure to Koch about this confidential new matter for DuPont while contemporaneously, the Firm owed a duty of confidentiality to DuPont not to disclose the matter unless and until authorized by DuPont to do so.

6. There are seven Morgan Lewis professionals who previously worked on Koch matters who have expended some time on the Invista/DuPont litigation. By current position, they are:

Jack Dodds (partner); Andrea Preate (legal assistant); Kelly Ann Hendry (research librarian); Ben Huggett (partner); Ken Rubin (partner); Linda Eaton (legal assistant); and Charles Calvaruso (administrative paralegal/court filer).

Should you have further questions, please do not hesitate to call me. Safe travel and have a good weekend.


Michael



Michael A. Bloom, Esquire
General Counsel
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103-2921
215.963.5032
Direct Fax: 877.432.9652
Fax (over 25 pages): 215.963.5001

mbloom@morganlewis.com
www.morganlewis.com

DISCLAIMER
This e-mail message is intended only for the personal
use of the recipient(s) named above. This message may
be an attorney-client communication and as such privileged
and confidential.  If you are not an intended recipient,
you may not review, copy or distribute this message. If
you have received this communication in error, please
notify us immediately by e-mail and delete the original
message.

DISCLAIMER
This e-mail message is intended only for the personal
use of the recipient(s) named above. This message may
be an attorney-client communication and as such privileged
and confidential.  If you are not an intended recipient,
you may not review, copy or distribute this message. If
you have received this communication in error, please
notify us immediately by e-mail and delete the original
message.

EXHIBIT K

# HERRICK

NEW YORK

NEWARK

PRINCETON

**SCOTT E. MOLLEN**
**PARTNER**
Direct Tel:   212.592.1505
Direct Fax:  212.545.3370

Email:  smollen@herrick.com

August 13, 2008

Michael A. Bloom, Esq.
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103

        Re:   *Invista B.V., et al., v. E.I. Du Pont De Nemours*
              *and Company*, 08-CV-3063 (SHS)

Dear Mr. Bloom:

      We have been retained by the Plaintiffs as special counsel to review and advise them on the ethical issues arising from your apparent decision to continue to represent DuPont in this action.  Given the facts and controlling judicial precedent, we can find no viable argument for Morgan, Lewis & Bockius LLP ("Morgan Lewis") to continue as counsel for DuPont, and would urge Morgan Lewis to resign as counsel promptly.  Our clients have repeatedly raised this issue with Morgan Lewis in the past and have been fair and reasonable in attempting to resolve this serious matter.  While we are confident that a motion to disqualify Morgan Lewis would be successful, our clients would prefer not to make such a motion and want to afford your firm the opportunity to avoid burdening the record, the trial court, and the parties with a formal motion.

      Over the many years that Morgan Lewis represented Koch and its affiliates in environmental, health, and safety issues and other matters, more than 60 different lawyers billed approximately 10,000 hours, totaling over $6 million in fees.  That representation continued until Morgan Lewis abruptly terminated its representation of Koch and switched its allegiance to DuPont.  DuPont apparently contacted Morgan Lewis in mid-August 2004 at the latest to advise and defend it against INVISTA's claims which underlie the above litigation.  On August 31, 2004, Morgan Lewis terminated its representation of Koch, and very shortly thereafter, it formally undertook representation of DuPont in connection with environmental claims asserted by INVISTA against DuPont.

      As a result of its work with senior Koch executives on environmental issues, over many years, Morgan Lewis had substantial access to important confidential and sensitive information regarding Koch and its affiliates, gained significant insight into Koch's approach to handling environmental compliance issues and to dealing with the EPA, DOJ, OSHA, and state agencies on environmental and health issues.  Morgan Lewis also obtained first-hand knowledge of the negotiating capabilities and styles of Koch's senior management and in-house attorneys and the process by which Koch addresses potential regulatory noncompliance.

      Incredibly, some of the very same attorneys who represented Koch on these matters are now defending DuPont in this action.  As a result, your firm has brought to DuPont

HERRICK, FEINSTEIN LLP
A New York limited
liability partnership
including New York
professional corporations

2 PARK AVENUE NEW YORK, NY 10016 • TEL 212.592.1400 • FAX 212.592.1500 • www.herrick.com
HF 5303139v.1 #09991/0005 08/11/2008

H E R R I C K

Michael A. Bloom, Esq.
August 13, 2008
Page 2

its intimate knowledge of Koch executives and in-house lawyers (for example, Joseph Coco, James Mahoney, Bill Caffey, William Frerking, Paul Kaleta, and Laurie Sahatjian), their confidential information and their strategy. In fact, DuPont's initial disclosures pursuant to F.R.C.P. 26 identify Messrs. Coco, Mahoney, Caffey, Frerking, Kaleta and Ms. Sahatjian as persons "likely to have discoverable information that Defendants may use to support its claims or defenses."

Morgan Lewis is well aware of the continuing significance of its representation of Koch in environmental matters. Your own May 19, 1998 engagement letter reflects the extreme importance and sensitivity of these matters because they were expressly carved out from an advance waiver permitting your firm to represent clients adverse to Koch or its affiliate companies. The engagement letter specifies that the advance waiver does not apply where:

> As a result of our representation of Koch in environmental law matters, **we have obtained sensitive, proprietary or other confidential information of a non-public nature that, if known to another client of ours, could be used to the material disadvantage of Koch (*or a company affiliated with Koch*)** in a matter in which we represent, or in the future are asked to undertake representation of, that client.    (emphasis added).

Thus, the language of your own retainer letter reflects the reality that you were to be Koch's legal counsel in connection with environmental matters of the utmost significance and that Koch and Morgan Lewis expected that sensitive, proprietary and confidential information relevant to Koch *and* its affiliates would be disclosed to Morgan Lewis.

Your firm has attempted to explain its conduct by claiming that its former client was Koch, and not INVISTA, and therefore there is no conflict and the matters at issue cannot be "substantially related." However, as your firm knows from its representation of Koch, Koch (a privately held company) imbues in its subsidiaries and affiliates the very same compliance philosophies held by the parent. Indeed, as the May 19, 1998 engagement letter explicitly recognized, confidences learned during the representation of Koch could provide a client adverse to Koch subsidiaries and affiliates -- such as INVISTA -- with an unfair advantage. Your firm also knows that the specific claims and defenses raised in this action, regardless of which facilities are involved, directly implicate the same subject matter as your firm's prior representation of Koch, i.e., the same statutes, regulations, agencies, and what the same Koch executives and in-house counsel did and learned in those difficult times regarding alleged environmental violations at certain refineries and how to deal with the government in addressing those alleged violations -- all with your firm's advice and counsel.

Moreover, as DuPont and your firm well know, Koch was the entity with whom DuPont engaged in the acquisition, including the protracted negotiations leading to the Purchase and Sale Agreement.. This is reflected by the fact that numerous current and former Koch senior executives and in-house counsel (many of whom Morgan Lewis worked closely with in its

H E R R I C K

Michael A. Bloom, Esq.
August 13, 2008
Page 3

representation of Koch and its affiliates as noted above) are listed as persons with relevant knowledge on DuPont's initial disclosures. Neither the facts nor the law support your firm's hollow claim that there is no conflict in its representation of DuPont adverse to Koch's subsidiaries and affiliates in this matter.

We also know that your firm has argued that its conduct should be now be immunized because Koch has allegedly delayed in seeking sanctions against your firm for this conduct. This argument is a non-starter. First, laches is not a defense to a motion to disqualify, except in limited situations where the adverse party is prejudiced. Although DuPont is generally entitled to counsel of its choice, it is not entitled to hire its adversaries' long-standing environmental counsel to provide advice against such adversaries. Any objective observer, and surely the Court in this case, would conclude that DuPont's decision to retain Morgan Lewis out of the hundreds of law firms in the United States with environmental law expertise was not a mere coincidence. Moreover, DuPont has able counsel of record in the Boies, Schiller firm.

Second, there has been no undue delay. Contrary to its ethical obligations and the May 19, 1998 engagement letter, Morgan Lewis failed to disclose its representation of DuPont to Koch or INVISTA. Once Koch and INVISTA learned of the representation, they repeatedly placed both DuPont and your firm on notice of its objections to your representation of DuPont and reserved its rights. Koch sent a letter to DuPont in early 2006 raising its concerns about your firm's involvement. When INVISTA and DuPont met at your offices shortly thereafter, one of your attorneys who worked on Koch matters was asked to leave the room. At the April 3, 2006 meeting, one of your attorneys assured Koch that agreeing to continue the meeting would not waive Koch's objection to your firm continuing to represent DuPont. In the correspondence that followed, Koch and INVISTA specifically reserved their rights regarding your ongoing representation of DuPont. Thus, your firm and DuPont were placed on notice that Koch and INVISTA had a problem with your firm's involvement in the subject dispute; your firm and DuPont proceeded thereafter at your own peril.

Thereafter, and prior to filing the Complaint in this matter, INVISTA and DuPont were attempting to resolve INVISTA's claims short of litigation. These efforts included direct negotiations and a mediation process lasting almost nine months. Quite clearly, there would have been no hope of settling had INVISTA refused to deal with your firm as DuPont's counsel in that process, since DuPont had stated that it would not engage in settlement dialogue without your firm's involvement. Now that the parties are in litigation, your firm's use or potential use of relevant confidential information has greater repercussions. Indeed, INVISTA did not learn until June 2008 that your firm had terminated its relationship with Koch after it had been contacted by DuPont. Your firm also delayed until then providing our clients access to 106 boxes of materials related to your firm's representation of it (materials containing sensitive privileged and confidential information, which remain in your firm's possession).

The foregoing is not meant to be exhaustive, and is being presented without prejudice to the arguments that we intend to make to the Court, if necessary. Our purpose has been to highlight some of the salient issues that we have noted during our review of the files and

HERRICK

Michael A. Bloom, Esq.
August 13, 2008
Page 4

discussions with the clients.  We hope and expect that you will consider this matter carefully in consultation with DuPont and come to the conclusion that Morgan Lewis must withdraw from its representation of DuPont in this action.  If you do not inform us by Wednesday, August 20, 2008, that Morgan Lewis will withdraw from its representation of DuPont in this action, we will have no choice but to seek your firm's removal, and the costs of such a motion, from the Court.

Very truly yours,

Scott E. Mollen

SEM:at

HF 4305996 v.1  #88000/0193 08/13/2008 03:18 PM

HF 4303130v.1 #99999/1000 08/11/2008

# EXHIBIT L

# Patterson Belknap Webb & Tyler LLP

1133 Avenue of the Americas    New York, NY 10036-6710    212.336.2000    fax 212.336.2222    www.pbwt.com

August 19, 2008

Stephen P. Younger
Phone (212) 336-2685
Fax (212) 336-7981
spyounger@pbwt.com

Scott E. Mollen, Esq.
Herrick, Feinstein LLP
2 Park Avenue
New York, NY 10016

Re:    **INVISTA B.V. et al. v. E.I. DuPont de Nemours and Company
Case No. 08 CV 3063 (SHS) (the "Lawsuit")**

Dear Scott:

We represent Morgan, Lewis & Bockius LLP ("Morgan Lewis") in relation to the above matter, and are in receipt of your letter dated August 13, 2008, in which you threaten on behalf of plaintiffs, collectively referred to as "INVISTA," to seek disqualification of Morgan Lewis as counsel to defendant DuPont in the Lawsuit unless Morgan Lewis agrees by August 20, 2008, to withdraw.

Morgan Lewis rejects INVISTA's demand that it withdraw as DuPont's counsel in the Lawsuit. Morgan Lewis considers the grounds for which INVISTA threatens disqualification to be baseless, and if a motion to disqualify should follow, Morgan Lewis will both vigorously defend and seek sanctions against the movants.

Morgan Lewis's position has been clearly stated on several occasions in the many prior letters between Morgan Lewis and its former client, Koch Industries, Inc. ("Koch"). Nonetheless, we are constrained to reiterate a few of the most compelling factual and legal bases. We do this in the expectation that you, as counsel to INVISTA, will advise your clients that their litigation tactic is misguided and should be abandoned before it becomes a burden on the Court.

As you know, INVISTA never has been a client of Morgan Lewis. INVISTA's current parent, Koch, is not a party to the Lawsuit. Koch is a former client of Morgan Lewis. Before Koch acquired INVISTA, Koch effectively terminated its attorney-client relationship with Morgan Lewis by ceasing to send work to the firm after December 12, 2003, the latest date on which any Morgan Lewis lawyer performed legal services for Koch. On August 31, 2004, after over eight months of inactivity, Morgan Lewis sent a letter to Koch confirming the termination of the client relationship. Thus contrary to your assertion, Morgan Lewis did not "abruptly terminate[] its representation of Koch." Just the opposite, it was Koch which ended the attorney-client relationship. If you proceed with a motion to disqualify, Morgan Lewis will be

Scott E. Mollen, Esq.
August 19, 2008
Page 2

prepared to prove the fact of Koch's discontinuation of Morgan Lewis's services and will need to explain the circumstances of that termination. (We suggest that you consult your clients to obtain a full understanding of the facts underlying Koch's decision to end its relationship with Morgan Lewis.)

It was not until after August 31, 2004, that Morgan Lewis agreed to represent DuPont in connection with indemnity claims asserted by INVISTA. After extended negotiations and a nearly year-long mediation process, INVISTA filed the Lawsuit in March 2008. There is no dispute that INVISTA has had actual knowledge of Morgan Lewis's representation of DuPont for years. Since the outset of the firm's representation of DuPont in connection with its dispute with INVISTA, no new facts have arisen affecting INVISTA's assessment of this matter. Instead, as a litigation tactic, and an unfortunate one, INVISTA has waited more than three years to threaten disqualification, including waiting more than five months after filing the Lawsuit.[1] Morgan Lewis will not abandon its client after more than three years of representation in this openly adverse and high-stakes litigation with INVISTA.

Further, it is doubtful that INVISTA has standing to dictate Morgan Lewis's withdrawal given the absence of any attorney-client relationship between INVISTA and the firm. As Morgan Lewis has repeatedly documented to its former client, Koch, Morgan Lewis's prior representation of Koch had nothing to do with the claims at issue in the Lawsuit. Indeed, the mere fact that the Lawsuit and Morgan Lewis's previous work for Koch both involve environmental-law issues is an insufficient basis on which to seek disqualification, let alone by an adversary in litigation that never was a client.

Your assertion that Koch "imbues in its subsidiaries and affiliates the very same compliance philosophies held by the parent" simply is not a recognized basis for disqualification. More fundamentally, this assertion makes no sense because at the operative time period at issue in the Lawsuit, INVISTA was not even owned by Koch and thus could not have been "imbue[d]" with any of Koch's purported "compliance philosophies."

Koch is a former client of Morgan Lewis and, as such, the firm will continue to safeguard Koch's confidences as it is legally and ethically bound to do. Morgan Lewis repeatedly has assured Koch of this, in written communications and in person. At every opportunity, and in response to every request by its former client, Morgan Lewis has acted with the utmost professionalism. No information obtained from Koch during Morgan Lewis's prior representation of it has been provided to or used by DuPont, and none will ever be. Koch has not

---

[1]    During those five months, Morgan Lewis, on behalf of DuPont, has, among many other things: (a) answered the Complaint, (b) asserted extensive counterclaims against INVISTA, (c) appeared at the initial pretrial conference before the Court, (d) filed and fully briefed a Motion to Dismiss certain claims in the Complaint, (e) participated in meet-and-confer conferences with INVISTA's counsel concerning fact discovery, (f) prepared and exchanged extensive Rule 26(a)(1) disclosures, (g) prepared and exchanged extensive Rule 34 Requests for Production of Documents, and (h) began preparing to exchange extensive responses to INVISTA's Rule 34 Requests.

Scott E. Mollen, Esq.
August 19, 2008
Page 3

and will not be disadvantaged by Morgan Lewis's representation of DuPont in any way, materially or otherwise. In contrast, DuPont would be seriously and materially disadvantaged if it was now, three years later and in the midst of complex litigation, deprived of its long-time counsel of choice in these matters.

Morgan Lewis has retained Steven C. Krane, Esq., of Proskauer Rose LLP as its ethics expert concerning this matter. Mr. Krane is the Immediate Past Chair of the American Bar Association Committee on Ethics and Professional Responsibility. He is prepared to render an opinion for submission to the Court in opposition to any disqualification motion.

After a reasoned consideration of the above, we sincerely hope you will save your clients, our client and the Court the time and expense of an unmeritorious motion to disqualify.

Sincerely,

Stephen P. Younger /MBL

Stephen P. Younger

cc:    Steven C. Krane, Esq.

EXHIBIT M

# HERRICK

NEW YORK

NEWARK

PRINCETON

SCOTT E. MOLLEN
PARTNER
(212) 592-1505
DIRECT FAX (212) 545-3370
EMAIL: smollen@herrick.com

August 21, 2008

VIA E-MAIL AND U.S. MAIL

Stephen D. Younger, Esq.
Patterson, Belknap, Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036-6710

   Re: INVISTA B.V. et al. v. E.I. DuPont de Nemours and Company

Dear Mr. Younger:

   We are in receipt of your letter of August 19, 2008. We were fully aware of the arguments that you have raised, and we do not find any of them persuasive. Indeed, among other issues, nowhere do you address the simple point - Morgan Lewis never even requested a waiver before it undertook its representation of DuPont. We would find it very surprising if your own expert, who is familiar with the Rules of Professional Responsibility, would advise Proskauer that a waiver was not required if his firm was faced with the same situation.

   While certainly not dispositive of the question of whether Morgan Lewis should withdraw as counsel to DuPont, we request that you explain your understanding of the facts underlying the "circumstances of that termination" which are referenced in the fourth paragraph of your letter. Your response will assist us to make the "reasoned consideration" which you asked us to make. We assume that in responding to our request, you will be mindful of Morgan Lewis' continuing obligation to Koch Industries (and companies affiliated with Koch) to safeguard the confidential information Koch shared with Morgan Lewis. Kindly provide your response by close of business on Monday, August 25th.

   Koch and INVISTA continue to reserve all rights and remedies available to them in objecting to Morgan Lewis' continued representation of DuPont in this matter.

      Sincerely,

      Scott E. Mollen

SEM:at

HERRICK, FEINSTEIN LLP
A New York limited
liability partnership
including New York
professional corporations

# Patterson Belknap Webb & Tyler LLP

1133 Avenue of the Americas    New York, NY 10036-6710    212.336.2000    fax 212.336.2222    www.pbwt.com

August 26, 2008

Stephen P. Younger
Phone (212) 336-2685
Fax (212) 336-7981
spyounger@pbwt.com

<u>VIA EMAIL AND U.S. MAIL</u>

Scott E. Mollen, Esq.
Herrick, Feinstein LLP
2 Park Avenue
New York, NY 10016

Re:    **INVISTA B.V. et al. v. E.I. DuPont de Nemours and Company
Case No. 08 CV 3063 (SHS) (the "Lawsuit")**

Dear Scott:

We have your letter dated August 21, 2008, in which you ask Morgan Lewis to inform you about the particulars which led Koch to stop sending legal work to Morgan Lewis. Obviously, sharing such information would require Morgan Lewis to disclose its former client's confidences. Morgan Lewis has taken every step necessary to safeguard its former client's confidences. Morgan Lewis will continue to do so absent a need to make disclosure under appropriate protections as required to defend itself against the frivolous claim that it ought to be disqualified from representing DuPont in the Lawsuit. We again suggest that you consult your own clients about the circumstances that led to Koch's de facto termination of Morgan Lewis before you proceed with an ill-conceived motion to disqualify.

In your letter, you assert that Morgan Lewis did not obtain a waiver from Koch to handle the Lawsuit on behalf of DuPont. As your clients are fully aware, Morgan Lewis agreed to represent DuPont at a point in time when Koch was already a former client. Moreover, the Lawsuit is a matter that differs materially from the work Morgan Lewis had done previously for Koch.

Sincerely,

*Stephen P. Younger / MBL*

Stephen P. Younger

cc:    Steven C. Krane, Esq.

EXHIBIT N



Paul J. Kaleta
General Counsel
316-828-1728

INVISTA S.à r.l.
INVISTA Building
P.O. Box 2936
Wichita, KS 67201-2936

316-828-1000 Tel
www.INVISTA.com

June 17, 2004

**VIA FACSIMILE – 302-773-5176**

Roger W. Arrington, Esq.
Paul J. Bonanto, Esq.
E. I. du Pont de Nemours and Company
1007 Market Street
Wilmington, DE 19898

Dear Messrs. Arrington and Bonato:

I am writing to notify you of potential claims under the Purchase Agreement between E.I. duPont de Nemours, KED Fiber Ltd. and KED Fiber, UC dated November 16, 2003 (and subsequent Amendments Nos. 1, 2 and 3) and other documents related thereto. The potential claims are related to the operation of the nitrile stripper column, benzene flasher and associated processes at the facility located at 2695 Old Bloomington Road, Victoria, Texas and compliance with air pollution and waste-related regulations.

We currently are investigating these issues and will provide you with more detailed information once our investigation is complete. If you have any questions in the interim, please do not hesitate to contact me.

Sincerely,

Paul J. Kaleta

cc:    Lou R. Kling, Esq. (VIA FACSIMILE – 212-735-2000)
       Thomas W. Greenberg, Esq.
       Skadden, Arps, Slate, Meagher & Flom LLP
       Four Times Square
       New York, NY 10036

       Tye G. Darland, Esq.
       Koch Industries, Inc.

       Tracey L. Mihelic, Esq.
       Baker & McKenzie



INVISTA S.à r.l.
INVISTA Building
P.O. Box 2936
Wichita, KS 67201-2936

316-828-1000 Tel
www.INVISTA.com

Paul J. Kaleta
General Counsel
316-828-1728

July 13, 2004

COPY

**VIA FACSIMILE – 302-773-5176**

Roger W. Arrington, Esq.
Paul J. Bonanto, Esq.
E. I. du Pont de Nemours and Company
1007 Market Street
Wilmington, DE  19898

      RE:   <u>Environmental Claims - Notice #2</u>

Dear Messrs Arrington and Bonanto:

     I am writing to notify you of claims under the Purchase Agreement between E.I. duPont de Nemours, KED Fiber Ltd. and KED Fiber, LLC dated November 16, 2003 (and subsequent Amendments Nos. 1, 2 and 3, referred to herein as the PSA) and other documents related thereto. The claims are related to compliance with Environmental Laws (as defined in the PSA) at the facilities located in Victoria, Orange (Sabine River Works), and LaPorte, Texas, and to potential violations that have been discovered at those facilities.  All of these violations began prior to and/or existed at the Closing Date.

     As previously disclosed in my notice letter dated June 17, 2004, INVISTA S.à r.l. (INVISTA) discovered potential violations of the Clean Air Act and implementing regulations, including but not limited to, 40 C.F.R. Subpart FF (the benzene waste NESHAP), and other waste related regulations associated with the operation of the nitrile stripper column, benzene flasher and associated processes at the Victoria, Texas, facility.  The investigation of these potential violations, and other issues that have arisen, is ongoing.

I.     Potential Violations of Law Discovered To Date

    1.    Victoria Benzene NESHAP – associated with operation of nitrile stripper column.

    2.    Victoria RCRA – failure to obtain a RCRA permit for treatment of hazardous waste within the ADN process.

Roger W. Arrington, Esq.
Paul J. Bonanto, Esq.
July 13, 2004
Page 2

     3.    Victoria Clean Air Act Subpart GG – failure to file custom sampling schedule as required by 40 C.F.R. § 60.334(b)(2), relating to the operation of its Cogeneration Facility.

     4.    LaPorte - Benzene NESHAP – INVISTA is unable to confirm that the requisite 40 C.F.R. § 61.357(a) initial report was filed by April 7, 1993 or that annual reports under 40 C.F.R. § 61.357(c) were filed by April 7 of each of the subsequent years.

     5.    Orange (Sabine River Works) – Benzene NESHAP and air permitting issues associated with the operations of a filter press in the ADN process.

     6.    Victoria and Orange (Sabine River Works) – RCRA issues associated with WFE wastes at Orange (Sabine River Works) and the crude creosol waste sent from Victoria to Orange (Sabine River Works).[1]

II.    Actions Taken

     In order to reduce the risk of enforcement and to avail itself of the benefits afforded by EPA's Final Policy on "Incentives for Self-Policing: Discovery, Disclosure, Correction and Prevention of Violations," (the "Audit Policy"), INVISTA promptly has filed notices of the potential violations pursuant to Section D(3) of the Audit Policy. Section D(3) requires that the reporting entity disclose the violation in writing within 21 calendar days of discovery and each of the potential violations has been disclosed in writing to EPA Region VI within this 21 day period. As you are aware, the Audit Policy encourages self-policing by providing incentives to regulated entities to detect, disclose, and correct violations. For entities that meet the conditions of the Policy, "available incentives include waiving or reducing gravity-based civil penalties, declining to recommend criminal prosecution for regulated entities that self-police, and refraining from routine requests for audits." Audit Policy, Sec. C(1)-(4). INVISTA also has met with EPA Region VI to discuss the potential violations.

     In addition, INVISTA filed a Notice of Audit pursuant to the Texas Environmental Health & Safety Audit Privilege Act (the "Texas Audit Act" or "Act") with the Texas Commission on Environmental Quality (TCEQ) on June 7, 2004. This notice was filed in order to minimize the risk of enforcement by the State of Texas as set forth in Section 10(g) of the Texas Audit Act, which provides immunity for violations voluntarily disclosed as a result of a compliance audit. The violations discovered during the ongoing investigation, which was commenced on June 8, 2004, have been reported to the TCEQ consistent with the requirements of the Act. Again, INVISTA has met with TCEQ and has made these filings in order to reduce the risk of enforcement relating to these violations.

---

[1]    As of the date of this letter, the Audit Policy reporting period for this issue has not expired, but INVISTA is preparing an Audit Policy notice in compliance with the reporting period.

Roger W. Arrington, Esq.
Paul J. Bonanto, Esq.
July 13, 2004
Page 3


III.    Next Steps

Both EPA and TCEQ have requested that INVISTA continue its investigation and report any additional violations of Environmental Law pursuant to the requirements of the Audit Policy and the Texas Audit Act.  INVISTA will be working with EPA at both the Regional and National level, as appropriate or as directed by EPA, and expects to enter into a formal agreement to pursue additional auditing under EPA's policy for Corporate Auditing Agreements for Audit Policy Disclosures, dated May 7, 2001, or as otherwise directed by EPA.  To ensure continued self-policing and the opportunity to qualify for Audit Policy protection, if necessary, INVISTA may expand its comprehensive audit and investigation to include all U.S. facilities acquired from DuPont.  If this occurs, INVISTA intends to work with each affected state to ensure that protections afforded under state audit policies or laws also are available to it.

INVISTA is focused on reducing the risk of enforcement for any of these violations, including reducing any potential penalties to the extent allowed by applicable audit policies and laws, and reducing or eliminating any potential impact on its operations.

As indicated above, we are continuing our investigation of these issues and will provide you with more information once our investigation is complete.  If you have any questions in the interim, please do not hesitate to contact me.

Sincerely,

Paul J. Kaleta


cc:    Lou R. Kling, Esq. (VIA FACSIMILE – 212-735-2000)
       Thomas W. Greenberg, Esq.
       Skadden, Arps, Slate, Meagher & Flom LLP
       Four Times Square
       New York, NY  10036

       Tye G. Darland, Esq.
       Koch Industries, Inc.

       Tracey L. Mihelic, Esq.
       INVISTA, S.à r.l.



Paul J. Kaleta
General Counsel
316-828-1728

INVISTA S.à r.L
INVISTA Building
P.O. Box 2936
Wichita, KS 67201-2936

316-828-1000 Tel
www.INVISTA.com

July 29, 2004

**VIA FACSIMILE – 302-773-5176**

E. I. du Pont de Nemours and Company
1007 Market Street
Wilmington, DE 19898

Attn:  Roger W. Arrington, Esq.
       Paul J. Bonanto, Esq.

RE:    Notice of Disclosure of Information

Dear Messrs. Arrington and Bonanto:

I am writing to notify you of a request for potentially "Confidential Information," as defined by Section 5.20 of the Purchase Agreement by and among E. I. du Pont de Nemours, KED Fiber Ltd. and KED Fiber, LLC dated as of November 16, 2003 (and subsequent Amendments Nos. 1, 2 and 3, referred to herein as the PSA).

As I indicated in my Environmental Claims Notice #2 letter, dated July 13, 2004, INVISTA has disclosed to the U.S. Environmental Protection Agency potential violations of Environmental Law (as defined in the PSA) pursuant to EPA's Final Policy on "Incentives for Self-Policing: Discovery, Disclosure, Correction and Prevention of Violations," (the "Audit Policy") in order to reduce the risk of enforcement and avail itself of the benefits afforded by the Audit Policy.  EPA has expressed interest in INVISTA entering into a formal corporate wide audit agreement under the Audit Policy.  As part of its evaluation of the availability of this corporate-wide program, which would require auditing at all of the facilities acquired from DuPont within an agreed upon period but which would ensure Audit Policy protection for those audits, EPA has requested a copy of the PSA and copies of the relevant environmental schedules.

INVISTA has provided to EPA a copy of the PSA, as it is a publicly available document. The requested schedules are Schedules 1(e) Baseline Environmental Conditions; (1)(gg) Known Existing Contamination; (1)(hh) Known Existing Violations of Environmental Law; (1)(zz) Retained Liabilities; 3.11(a)(i) Environmental Noncompliance; 3.11(a)(ii) Material Environmental Permits; 3.11(a)(b) Environmental Claims; 3.11(c) Environmental Releases; 3.11(d) Environmental Remediation; 8.5(a)(i) Buyer Remediation Sites; 8.5(b)(vii) DuPont Environmental Retained Sites; 8.5(c)(ii) DuPont Remediation Sites to be Leased Premises.

Roger W. Arrington, Esq.
Paul J. Bonanto, Esq.
July 29, 2004
Page 2


In order to cooperate fully with EPA and to avoid an order to either DuPont or INVISTA seeking such information, INVISTA plans on providing their schedules, with all information about non-U.S. sites and any non-environmental information redacted, to EPA no later than Tuesday, August 3, 2004. In addition, INVISTA will advise the EPA that the information disclosed on these Schedules is confidential and proprietary, and will mark all schedules as "Confidential Business Information."

Please advise if you have any questions or concerns about this disclosure.

Sincerely,

Paul J. Kaleta

cc:     Skadden, Arps, Slate, Meagher & Flom LLP
        Four Times Square
        New York, NY  10036
        Attn :  Lou R. Kling, Esq. (VIA FACSIMILE – 212-735-2000)
                Thomas W. Greenberg, Esq.

        Tye G. Darland, Esq.
        Koch Industries, Inc.

        Tracey L. Mihelic, Esq.
        INVISTA, S.à r.l.

# EXHIBIT O

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————————x
                                          :
INVISTA B.V., et al.,                     :
                                          :
                  Plaintiffs,             :
                                          :
        v                                 :          08 CV 3063 (SHS)
                                          :
E.I. DU PONT DE NEMOURS                    :
AND COMPANY,                              :
                                          :
                  Defendant.              :
———————————————————————————x

### RULE 26(a)(1) INITIAL DISCLOSURES OF
### E.I. DU PONT DE NEMOURS AND COMPANY

Pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure, Defendant-Counterclaimant E.I. du Pont de Nemours and Company ("DuPont" or "Defendant"), by and through its undersigned counsel, hereby serves its initial disclosures. By providing these initial disclosures, Defendant does not waive any objection to the production of documents or testimony on the basis of privilege, relevance or as otherwise appropriate on any other ground.

In accordance with Rule 26(a)(1) of the Federal Rules of Civil Procedure, Defendant makes its initial disclosures as follows:

### I.      WITNESSES

Pursuant to Rule 26(a)(1)(A)(i), the following persons, other than counsel in this matter, are likely to have discoverable information that Defendant may use to support its claims or defenses, unless solely used for impeachment:

### A.    Individuals Currently or Formerly Associated with Defendant[1]

| | Name and Contact Information | Subject Matter |
|---|---|---|
| 1. | Markus Ackermann<br>E.I. du Pont de Nemours and Company | Dordrecht Claims |
| 2. | John Amodeo, Esquire*<br>Skadden, Arps, Slate, Meagher & Flom LLP<br>1440 New York Avenue, N.W.<br>Washington, D.C. 20005<br>(202) 371-7270 | Purchase and Sale Agreement matters |
| 3. | Robert L. Anderson<br>E.I. du Pont de Nemours and Company | Kingston, Ont. - Fire Alarm Replacement |
| 4. | Roger Arrington, Esquire<br>Formerly of E.I. du Pont de Nemours and Company | Purchase and Sale Agreement matters<br>INVISTA Communications to DuPont |
| 5. | Steve Barger<br>E.I. du Pont de Nemours and Company | BWON Claims |
| 6. | Norm Bell<br>The Bell Group, Inc. | Purchase and Sale Agreement matters<br>Health and Safety Claims<br>Kingston, Ont. - Fire Alarm Replacement |
| 7. | Mike Betzen<br>E.I. du Pont de Nemours and Company | Sabine River Works – Facility Siting |
| 8. | Paul Bonanto, Esquire<br>Formerly of E.I. du Pont de Nemours and Company | Purchase and Sale Agreement matters<br>INVISTA Communications to DuPont |
| 9. | Gary Boruff<br>E.I. du Pont de Nemours and Company | Purchase and Sale Agreement matters |
| 10. | Gary Burge<br>E.I. du Pont de Nemours and Company | Purchase and Sale Agreement matters |

---

[1] The individuals on List A are represented by Defendant's counsel in this matter and can be contacted only through Defendant's counsel, with the exception of those individuals who have an asterisk ("*") next to their names. Those individuals that have an asterisk next to their names should be contacted through Scott D. Musoff, Esquire, at Skadden, Arps, Slate, Meagher & Flom LLP, 4 Times Square, New York, NY 10036 (212) 735-7852.

| | Name and Contact Information | Subject Matter |
|---|---|---|
| 11. | Richard Clapp<br>E.I. du Pont de Nemours and Company | CUI Claims |
| 12. | Curtis Clements<br>E.I. du Pont de Nemours and Company | Process Hazards Analysis |
| 13. | Scott Collins<br>Formerly of E.I. du Pont de Nemours and Company | PSD/NNSR Claims<br>BWON Claims |
| 14. | Morris Cranor<br>Formerly of E.I. du Pont de Nemours and Company | DuPont Corporate Policies<br>Purchase and Sale Agreement matters |
| 15. | Sammy Culpepper<br>E.I. du Pont de Nemours and Company | Sabine River Works – Facility Siting |
| 16. | John Dege<br>E.I. du Pont de Nemours and Company | PSD/NNSR Claims |
| 17. | John deRuyter<br>E.I. du Pont de Nemours and Company | PSD/NNSR Claims |
| 18. | Jim Dinnage<br>E.I. du Pont de Nemours and Company | Purchase and Sale Agreement matters<br>Environmental Claims |
| 19. | Jack Dumelow<br>Formerly of E.I. du Pont de Nemours and Company | BWON Claims |
| 20. | Tom Ei<br>E.I. du Pont de Nemours and Company | Paulinia Claim |
| 21. | Gerald Ehrman<br>Formerly of E.I. du Pont de Nemours and Company | Sabine River Works – Facility Siting |
| 22. | Rebecca Elder<br>E.I. du Pont de Nemours and Company | Purchase and Sale Agreement matters |
| 23. | Keith Farmer<br>Formerly of E.I. du Pont de Nemours and Company | Camden – Fire Safety |

3

| | Name and Contact Information | Subject Matter |
|---|---|---|
| 24. | John Feeney<br>Formerly of E.I. du Pont de Nemours and Company | Wilton HSE Claims |
| 25. | Larry Frazer<br>Formerly of E.I. du Pont de Nemours and Company | PSD/NNSR Claims |
| 26. | John Garner<br>E.I. du Pont de Nemours and Company | Wilton Claims<br>PSD/NNSR Claims |
| 27. | Carmen Giannantonio<br>E.I. du Pont de Nemours and Company | Purchase and Sale Agreement matters |
| 28. | Thomas Greenberg, Esquire*<br>Skadden, Arps, Slate, Meagher & Flom LLP<br>4 Times Square<br>New York, NY 10036<br>(212) 735-3000 | Purchase and Sale Agreement matters |
| 29. | Mike Guillot<br>Formerly of E.I. du Pont de Nemours and Company | Sabine River Works – Facility Siting |
| 30. | Diane Heck<br>E.I. du Pont de Nemours and Company | Purchase and Sale Agreement matters |
| 31. | Robert Heffelfinger<br>E.I. du Pont de Nemours and Company | PSD/NNSR Claims |
| 32. | David Herrmann<br>E.I. du Pont de Nemours and Company | Sabine River Works – Facility Siting<br>Victoria – Facility Siting |
| 33. | Kim Iverson<br>Hexion Specialty Chemicals<br>180 East Broad Street<br>Columbus, OH 43215<br>(614) 225-7284 | Purchase and Sale Agreement matters |
| 34. | Paul Jann<br>E.I. du Pont de Nemours and Company | PSD/NNSR Claims<br>BWON Claims |

| | Name and Contact Information | Subject Matter |
|---|---|---|
| 35. | Guy V. Johnson, Esquire<br>E.I. du Pont de Nemours and Company | Purchase and Sale Agreement matters<br>INVISTA Communications to DuPont |
| 36. | Ed Kamenski<br>Formerly of E.I. du Pont de Nemours and Company | PSD/NNSR Claims<br>Purchase and Sale Agreement matters |
| 37. | John Kane<br>E.I. du Pont de Nemours and Company | PSD/NNSR Claims |
| 38. | Keith Kastor<br>Formerly of E.I. du Pont de Nemours and Company | Sabine River Works – Corrosion Under Insulation |
| 39. | Louis R. Kling, Esquire*<br>Skadden, Arps, Slate, Meagher & Flom LLP<br>4 Times Square<br>New York, NY 10036<br>(212) 735-3000 | Purchase and Sale Agreement matters |
| 40. | Donald R. Kuhlmann<br>E.I. du Pont de Nemours and Company | BWON Claims<br>Purchase and Sale Agreement Matters |
| 41. | John Robert Laughlin<br>E.I. du Pont de Nemours and Company | Sabine River Works – Facility Siting |
| 42. | T. Keith Lewis<br>E.I. du Pont de Nemours and Company | PSD/NNSR Claims |
| 43. | Gary Long<br>E.I. du Pont de Nemours and Company | BWON Claims |
| 44. | John Ludman<br>E.I. du Pont de Nemours and Company | Sabine River Works – Corrosion Under Insulation |
| 45. | Thuy Mai<br>E.I. du Pont de Nemours and Company | PSD/NNSR Claims |
| 46. | Sonny Matocha<br>Formerly of E.I. du Pont de Nemours and Company | DuPont Corporate Policies<br>Purchase and Sale Agreement matters |
| 47. | Paul Mazierski<br>E.I. du Pont de Nemours and Company | Maitland, Ont. - Landfill |

| | Name and Contact Information | Subject Matter |
|---|---|---|
| 48. | Don McCamish<br>E.I. du Pont de Nemours and Company | PSD/NNSR Claims |
| 49. | Don McConnell<br>E.I. du Pont de Nemours and Company | PSD/NNSR Claims |
| 50. | Pat McGee, Esquire<br>E.I. du Pont de Nemours and Company | PSD/NNSR Claims |
| 51. | Pat Meitner, Esquire<br>Formerly of E.I. du Pont de Nemours and Company | PSD/NNSR Claims |
| 52. | J. Michael Miller<br>Formerly of E.I. du Pont de Nemours and Company | PSD/NNSR Claims<br>BWON Claims |
| 53. | Bert Moniz<br>E.I. du Pont de Nemours and Company | Corrosion Under Insulation |
| 54. | Perry A. Morse<br>E.I. du Pont de Nemours and Company | Facility Siting |
| 55. | Richard E. Munson<br>Formerly of E.I. du Pont de Nemours and Company | Camden – Fire Safety |
| 56. | Marianne Nichols<br>E.I. du Pont de Nemours and Company | Maitland, Ont. - Landfill |
| 57. | Cliff Phares<br>E.I. du Pont de Nemours and Company | Sabine River Works – Facility Siting |
| 58. | Rebecca Pietras<br>E.I. du Pont de Nemours and Company | BWON Claims |
| 59. | Robert Reardon<br>E.I. du Pont de Nemours and Company | Purchase and Sale Agreement matters |
| 60. | Edward Reiff<br>E.I. du Pont de Nemours and Company | DuPont Corporate Policies<br>Purchase and Sale Agreement matters |
| 61. | Steve Shoemaker<br>E.I. du Pont de Nemours and Company | Dordrecht Claim<br>Paulinia Claim |

| | Name and Contact Information | Subject Matter |
|---|---|---|
| 62. | William C. Shrewsberry<br>Formerly of E.I. du Pont de Nemours and Company | PSD/NNSR Claims |
| 63. | Don Sibert<br>E.I. du Pont de Nemours and Company | BWON Claims |
| 64. | Robert Simon<br>Formerly of E.I. du Pont de Nemours and Company | Sabine River Works – Facility Siting |
| 65. | Diana T. Smith<br>E.I. du Pont de Nemours and Company | ITAM Receivable Claim |
| 66. | W.B. Tate<br>Formerly of E.I. du Pont de Nemours and Company | PSD/NNSR Claims |
| 67. | Pau Tchang<br>E.I. du Pont de Nemours and Company | Dordrecht Claim |
| 68. | James A. Thompson<br>Formerly of E.I. du Pont de Nemours and Company | PSD/NNSR Claims<br>Sabine River Works - Ground Level NOx Release Claim |
| 69. | Trobie H. Thompson<br>Formerly of E.I. du Pont de Nemours and Company | Sabine River Works – Facility Siting |
| 70. | Tri Truong<br>E.I. du Pont de Nemours and Company | Sabine River Works – Facility Siting |
| 71. | Kenneth Wall<br>Formerly of E.I. du Pont de Nemours and Company | DuPont Corporate Policies |
| 72. | John Walling<br>Formerly of E.I. du Pont de Nemours and Company | PSD/NNSR Claims |
| 73. | Fred Whitcraft<br>E.I. du Pont de Nemours and Company | PSD/NNSR Claims |

|  | Name and Contact Information | Subject Matter |
|---|---|---|
| 74. | Brenda Wilson<br>Formerly of E.I. du Pont de Nemours and Company | Sabine River Works - Ground Level NOx Release Claim |
| 75. | Ken Wolff, Esquire*<br>Skadden, Arps, Slate, Meagher & Flom LLP<br>4 Times Square<br>New York, NY 10036<br>(212) 735-3000 | Purchase and Sale Agreement matters |
| 76. | Anthony Young<br>Formerly of E.I. du Pont de Nemours and Company | Wilton Non-Boric Project<br>Wilton HSE Claims |

### B.    Individuals Associated with INVISTA[2] or with Third-Parties

|  | Name and Contact Information | Subject Matter |
|---|---|---|
| 77. | One or more representatives from:<br>ABB Consulting Services<br>Affikterbstrasse 44<br>P.O. Box 8131<br>CH-8050 Zurich<br>Switzerland<br>+41 (0)43 317 7111 | Wilton HSE Claims<br>BWON Claims |
| 78. | One or more representatives of:<br>Aker Kvaerner<br>2101 Citywest Blvd 4<br>Houston, TX 77042<br>(713) 988 2002 | Wilton Non-Boric Claim |
| 79. | Gregory Albert<br>Address Unknown | BWON Claims<br>Sabine River Works – Facility Siting |
| 80. | Doug Anderson<br>Environmental Resources Management ("ERM")<br>350 Eagleview Blvd #2000<br>Exton, PA 19341<br>(610) 524 3500 | Purchase and Sale Agreement matters |

---

[2]    INVISTA is defined to include all Plaintiffs named in this Action as well as their affiliates and subsidiaries.

| | Name and Contact Information | Subject Matter |
|---|---|---|
| 81. | John Anderson<br>Formerly of INVISTA | Wilton Non-Boric Claim<br>Wilton HSE Claims |
| 82. | Richard Anderson<br>Formerly of ENTRIX, Inc.<br>Address Unknown | PSD/NNSR Claims |
| 83. | Ann Armantraut<br>Address Unknown | BWON Claims |
| 84. | Emanuel Balale<br>INVISTA | Purchase and Sale Agreement matters |
| 85. | Rogerio Balerio<br>INVISTA | BWON Claims |
| 86. | Walter Barlowe<br>Address Unknown | PSD/NNSR Claims |
| 87. | Jane F. Barrett, Esquire<br>Blank Rome LLP<br>Watergate<br>600 New Hampshire Avenue NW<br>Washington, DC 20037<br>(202) 772-5800 | INVISTA Communications with<br>Regulatory Authorities |
| 88. | Ray Batig<br>INVISTA | BWON Claims |
| 89. | One or more representatives from:<br>Bellevue Consultants (UK) Limited<br>C/O Tomlinsons, St. John's Court<br>72 Gartside Street<br>Manchester, England M33EL | Wilton HSE Claims |
| 90. | Mark Blue<br>INVISTA | PSD/NNSR Claims |
| 91. | Guy D. Brouillard<br>INVISTA | Maitland, Ont. - Facility Siting<br>Maitland, Ont. - Corrosion Under<br>Insulation |
| 92. | Dennis Broughton<br>INVISTA | PSD/NNSR Claims |

| | Name and Contact Information | Subject Matter |
|---|---|---|
| 93. | Wilfred Buckel<br>Arctic Combustion Ltd<br>2283 Argentia Road, Unit 25<br>Mississauga, ON L5N 5Z2<br>(905) 858-4604 | Maitland, Ont. - Burner Management Upgrades |
| 94. | Lorna Buckner<br>INVISTA | Corrosion Under Insulation |
| 95. | One or more representatives from:<br>Burns & McDonnell<br>1700 West Loop South<br>Suite 300<br>Houston, Texas 77027 | Environmental Claims |
| 96. | William Caffey<br>INVISTA | Purchase and Sale Agreement matters |
| 97. | Molly Cagle, Esquire<br>Vinson and Elkins LLP<br>2801 Via Fortuna<br>Suite 100<br>Austin, Texas 78746-7568<br>(512) 542-8552 | INVISTA Communications with Regulatory Authorities |
| 98. | William Campbell<br>INVISTA | PSD/NNSR Claims |
| 99. | Holly Cannon, Esquire<br>Beveridge and Diamond<br>1350 I Street, N.W.<br>Suite 700<br>Washington, DC 20005<br>(202) 789-6029 | INVISTA Communications with Regulatory Authorities |
| 100. | Mike Carbon<br>Environ International Corp. ("ENVIRON")<br>4350 Fairfax Dr. Ste 300<br>Arlington, VA 22203<br>(703) 516 2300 | PSD/NNSR Claims |
| 101. | Keith X. Carline<br>INVISTA | Wilton HSE Claims |

| | Name and Contact Information | Subject Matter |
|---|---|---|
| 102. | Kenda Caskey<br>Burns & McDonnell<br>1700 West Loop South<br>Suite 300<br>Houston, Texas 77027 | BWON Claims<br>HCN Flare Claim |
| 103. | John C. Caton<br>INVISTA | BWON Claims |
| 104. | Robert Chance<br>INVISTA | Sabine River Works – Corrosion Under Insulation |
| 105. | Wayne Chapman<br>INVISTA | PSD/NNSR Claims |
| 106. | One or more representatives from:<br>Chartwell Environmental Inc.<br>119 E. 20th St.<br>Houston, TX 77008 | PSD/NNSR Claims |
| 107. | David Childs<br>INVISTA | BWON Claims |
| 108. | Chin Y. Chiao<br>INVISTA | Sabine River Works – Facility Siting |
| 109. | One or more representatives from:<br>CH2MHill Co. Ltd.<br>PO Box 22508<br>Denver, CO 80222<br>(303) 771 0900 | Environmental Claims |
| 110. | Joe Coco<br>INVISTA | INVISTA Communications with Regulatory Authorities<br>INVISTA Communications to DuPont Purchase and Sale Agreement matters |
| 111. | Adrian Cogan<br>INVISTA | Wilton HSE Claims |
| 112. | Luis Colon<br>Address Unknown | BWON Claims |

| | Name and Contact Information | Subject Matter |
|---|---|---|
| 113. | Bharat Contractor<br>INVISTA | BWON Claims |
| 114. | Stephen P. Costin<br>INVISTA | Wilton HSE Claims |
| 115. | Jim Crichton<br>INVISTA | PSD/NNSR Claims |
| 116. | Dean Damin<br>INVISTA | Sabine River Works – Corrosion Under Insulation |
| 117. | Tye G. Darland<br>Formerly of INVISTA<br>Senior Vice President - General Counsel<br>Georgia-Pacific Corporation<br>133 Peachtree Street<br>Atlanta, Georgia 30303 -1808 | INVISTA Communications with Regulatory Authorities<br>INVISTA Communications to DuPont<br>Purchase and Sale Agreement matters |
| 118. | Gary Daves<br>Trinity Consultants<br>350 Eagleview Blvd #2000<br>Exton, PA 19341<br>(610) 524 3500 | BWON Claims |
| 119. | Ralph Davison<br>INVISTA | Maitland, Ont. - Facility Siting |
| 120. | One or more representatives from:<br>Day & Zimmerman International Inc.<br>1818 Market Street Fl 20<br>Philadelphia, PA 19103<br>(215) 299 1525 | PSD/NNSR Claims<br>Maydown Claim |
| 121. | Paul Depres<br>Environmental Resources Management Inc.("ERM")<br>350 Eagleview Blvd #2000<br>Exton, PA 19341<br>(610) 524 3500 | Purchase and Sale Agreement matters |
| 122. | P.J.E. Duggan<br>Address Unknown | Gloucester Claim |

| | Name and Contact Information | Subject Matter |
|---|---|---|
| 123. | John Dula<br>INVISTA | Sabine River Works – HCN Steam Contamination<br>HCN Start-up Flare Claim |
| 124. | John "Wes" Eastham<br>Address Unknown | Sabine River Works – Corrosion Under Insulation |
| 125. | One or more representatives from:<br>ENTRIX, Inc.<br>5252 Westchester St., Suite 250<br>Houston, TX 77005<br>(713) 666 6223 | PSD/NNSR Claims |
| 126. | One or more representatives from:<br>ENVIRON<br>4350 Fairfax Dr. Ste 300<br>Arlington, VA 22203<br>(703) 516 2300 | PSD/NNSR Claims |
| 127. | One or more representatives from:<br>Ensr International Corp. ("ENSR")<br>2 Technology Park Drive<br>Westford, MA<br>01886-3140, USA<br>(978) 589-3000 | PSD/NNSR Claims |
| 128. | One or more representatives from:<br>ERM<br>350 Eagleview Blvd #2000<br>Exton, PA 19341<br>(610) 524 3500 | Purchase and Sale Agreement matters |
| 129. | Wayne Faulkenbery<br>INVISTA | PSD/NNSR Claims |
| 130. | Steven Feilmeier<br>INVISTA | Purchase and Sale Agreement matters |
| 131. | Kurt Ferguson<br>INVISTA | PSD/NNSR Claims |
| 132. | Carlene Fontenot<br>INVISTA | Sabine River Works – Corrosion Under Insulation |

| | Name and Contact Information | Subject Matter |
|---|---|---|
| 133. | Steve French<br>INVISTA | PSD/NNSR Claims |
| 134. | Bill Frerking<br>INVISTA | Purchase and Sale Agreement matters |
| 135. | David M. Friedland<br>Beveridge and Diamond<br>1350 I Street, N.W.<br>Suite 700<br>Washington, DC 20005<br>(202) 789-6047 | INVISTA Communications with<br>Regulatory Authorities<br>INVISTA Communications to DuPont<br>PSD/NNSR Claims |
| 136. | Tom Gardner<br>Formerly of ENSR<br>Address Unknown | PSD/NNSR Permitting |
| 137. | Jason Gault<br>INVISTA | Sabine River Works – HCN Steam<br>Contamination |
| 138. | Chuck Gazaway<br>INVISTA | BWON Claims |
| 139. | One or more representatives from:<br>GE Power Systems<br>4200 Wildwood Parkway<br>Atlanta, GA 30339 | PSD/NNSR Claims |
| 140. | Mark Gerstein, Esquire<br>Latham & Watkins LLP<br>Sears Tower, Suite 5800<br>233 South Wacker Drive<br>Chicago, IL 60606<br>(312) 876-7666 | Purchase and Sale Agreement matters |
| 141. | Roy Gibson<br>INVISTA | PSD/NNSR Claims |
| 142. | Gary Gist<br>INVISTA | BWON Claims |

| | Name and Contact Information | Subject Matter |
|---|---|---|
| 143. | Aaron Goldberg<br>Beveridge and Diamond<br>1350 I Street, N.W.<br>Suite 700<br>Washington, DC 20005<br>(202) 789-6052 | INVISTA Communications with Regulatory Authorities |
| 144. | Peter Gordon<br>INVISTA | Maitland, Ont. - Facility Siting |
| 145. | Chris Graham, Esquire<br>INVISTA | INVISTA Communications with Regulatory Authorities |
| 146. | Walter Graham<br>INVISTA | PSD/NNSR Claims |
| 147. | Cindy Gruenwald<br>INVISTA | BWON Claims<br>HCN Flare Claim |
| 148. | Gerry Grunewald<br>INVISTA | Sabine River Works – Facility Siting |
| 149. | Richard Haar<br>INVISTA | BWON Claims |
| 150. | Heather Hackenbracht<br>INVISTA | BWON Claims |
| 151. | Ken Hall<br>INVISTA | Kingston, Ont. – Fire alarm replacement |
| 152. | Joe Hendriks<br>INVISTA | Maitland, Ont. - Corrosion Under Insulation<br>Sabine River Works - Ground Level NOx Release Claim |
| 153. | Adam Hernandez<br>INVISTA | Victoria – Site Gamewell Replacement |
| 154. | Todd Higginbothom<br>ENVIRON<br>4350 Fairfax Dr. Ste 300<br>Arlington, VA 22203<br>(703) 516 2300 | PSD/NNSR Claims |

| | Name and Contact Information | Subject Matter |
|---|---|---|
| 155. | John Holland, Esquire<br>Latham & Watkins LLP<br>555 Eleventh Street, NW Suite 1000<br>Washington, DC 20004<br>(202) 637-2172 | Purchase and Sale Agreement matters |
| 156. | Randy Hudson<br>INVISTA | Sabine River Works – Corrosion Under Insulation |
| 157. | Ed Idskes<br>INVISTA | Maitland, Ont. - Ontario Fire Code Part 4<br>Maitland, Ont. – Facility Siting |
| 158. | One or more representatives from:<br>JD Consulting, L.P.<br>14450 JFK Blvd, Suite 400<br>Houston, TX 77032<br>(713) 330 8500 | Environmental Claims |
| 159. | Wacey Johnson<br>INVISTA | Sabine River Works – Corrosion Under Insulation |
| 160. | Cliff Jones<br>INVISTA | Maitland, Ont. – Burner Management Upgrades |
| 161. | Paul Kaleta, Esquire<br>Formerly of INVISTA<br>Address Unknown | INVISTA Communications with Regulatory Authorities<br>INVISTA Communications to DuPont |
| 162. | Victor Kamantauskas<br>INVISTA | Sabine River Works - Ground Level NOx Release Claim |
| 163. | Sandy Kasala<br>INVISTA | PSD/NNSR Claims |
| 164. | Emmett Keegan<br>Van Breusegen & Associates Inc.<br>332 Merlot Lane<br>Saint Albans, MO 63073<br>(636) 458 3382 | BWON Claims |
| 165. | David H. Kendrick<br>INVISTA | BWON Claims |

| | Name and Contact Information | Subject Matter |
|---|---|---|
| 166. | Tae Hoon Kim<br>INVISTA | Sabine River Works – HCN Steam Contamination |
| 167. | Stephen Kimpton<br>INVISTA | PSD/NNSR Claims |
| 168. | Ruud Klein<br>ERM<br>350 Eagleview Blvd #2000<br>Exton, PA 19341<br>(610) 524 3500 | Purchase and Sale Agreement matters |
| 169. | Gary Knight<br>INVISTA | PSD/NNSR Claims |
| 170. | Darwin Koepp<br>INVISTA | BWON Claims |
| 171. | Paul Kovar<br>INVISTA | PSD/NNSR Claims |
| 172. | Bud Leroux<br>INVISTA | Maitland, Ont. – Ontario Fire Code Part 4<br>Kingston, Ont. - Ontario Fire Code Part 4 |
| 173. | Liz Longoria<br>INVISTA | BWON Claims<br>Sabine River Works – Facility Siting<br>Sabine River Works – Corrosion Under Insulation |
| 174. | Paula LaRocca<br>INVISTA | BWON Claims |
| 175. | Graeme Laughland<br>INVISTA | Wilton HSE Claims |
| 176. | Steven Lauridsen<br>INVISTA | Maitland, Ont. - Landfill |
| 177. | Larry Leger<br>INVISTA | BWON Claims |
| 178. | Glenn W. Libby<br>INVISTA | Maitland, Ont. - Facility Siting |
| 179. | Neil MacKinder<br>INVISTA | Maitland, Ont. - Corrosion Under Insulation |

| | Name and Contact Information | Subject Matter |
|---|---|---|
| 180. | Jim Mahoney<br>INVISTA | PSD/NNSR Claims<br>BWON Claims |
| 181. | Malcolm McGeachy<br>INVISTA | Maitland, Ont. - Corrosion Under Insulation |
| 182. | Jim McIntosh<br>INVISTA | Wilton HSE Claims |
| 183. | Mike McKinnon<br>INVISTA | Maitland, Ont. – Facility Siting |
| 184. | Scott McNeeley<br>INVISTA | Maitland, Ont. – Facility Siting<br>Kingston, Ont. – Fire Alarm Replacement |
| 185. | Mark D. McPherson<br>INVISTA | BWON Claims<br>Sabine River Works – Facility Siting |
| 186. | Tulio Mello<br>INVISTA | Maitland, Ont. - Corrosion Under Insulation |
| 187. | Tracey Mihelic, Esquire<br>INVISTA | INVISTA Communications with Regulatory Authorities<br>INVISTA Communications to DuPont |
| 188. | One or more representatives from:<br>Millennium Science & Engineering Limited<br>Unit 3 Wick Business Centre<br>Manor Farm<br>Upper Wick, Dursley<br>Gloucestershire, GL116DE | Wilton HSE Claims |
| 189. | F. James Miller<br>Address Unknown | Sabine River Works – Facility Siting |
| 190. | Ian Milne<br>INVISTA | Wilton HSE Claims |
| 191. | One or more representatives from:<br>Murin Environmental Inc.<br>979 Via Puebla<br>Rio Rico, AZ 85648<br>(520) 281 4229 | Environmental Claims |
| 192. | Steve Nelson<br>INVISTA | BWON Claims |

| | Name and Contact Information | Subject Matter |
|---|---|---|
| 193. | Frank E. Nelson<br>INVISTA | Sabine River Works - Ground Level NOx Release Claim |
| 194. | Mark Niehaus<br>INVISTA | PSD/NNSR Claims |
| 195. | Doug Niemtschk<br>INVISTA | Purchase and Sale Agreement matters |
| 196. | Morris Norman<br>INVISTA | BWON Claims |
| 197. | Robert A. Novak<br>INVISTA | Sabine River Works – Facility Siting |
| 198. | Mark Oschner<br>INVISTA | PSD/NNSR Claims |
| 199. | Tom Pasmore<br>INVISTA | PSD/NNSR Claims |
| 200. | John Patterson<br>INVISTA | Maitland, Ont. – Burner Management Upgrades |
| 201. | James P. Pearson<br>INVISTA | Facility Siting |
| 202. | Larry Peebles<br>INVISTA | PSD/NNSR Claims |
| 203. | Robert V. Peirson<br>INVISTA | Kingston, Ont. – Fire Alarm Replacement |
| 204. | Micall Pelz<br>INVISTA | BWON Claims |
| 205. | Louise Pierce<br>ERM<br>350 Eagleview Blvd #2000<br>Exton, PA 19341<br>(610) 524 3500 | Purchase and Sale Agreement matters |
| 206. | Greg Pon<br>INVISTA | Kingston, Ont. - Fire alarm replacement<br>Kingston, Ont. - Ontario Fire Code Part 4 |

| | Name and Contact Information | Subject Matter |
|---|---|---|
| 207. | Art Pope<br>INVISTA | Purchase and Sale Agreement matters |
| 208. | Charles D. Quick<br>INVISTA | Maitland, Ont. - Burner Management Upgrades |
| 209. | Paul Redman<br>INVISTA | Maitland, Ont. – Corrosion Under Insulation |
| 210. | Ron Rehfuss<br>INVISTA | Sabine River Works – Facility Siting |
| 211. | Douglas J. Reisterer<br>INVISTA | BWON Claims |
| 212. | Glenn W. Reynolds<br>Senior Hydrogeologist<br>Director<br>Gartner Lee Limited<br>300 Town Centre Blvd.<br>Suite 300<br>Markham, ON L3R 5Z6 | Maitland, Ont. - Landfill |
| 213. | Mark E. Robnett<br>INVISTA | Sabine River Works – Facility Siting |
| 214. | Peter Rossi<br>Unknown Address | Wilton HSE Claims |
| 215. | Ross J. Roussel<br>Unknown Address | BWON Claims |
| 216. | Chris J. Rutherford<br>INVISTA | Maitland, Ont. – Facility Siting<br>Maitland, Ont. – Corrosion Under Insulation |
| 217. | Laurie Sahatjian, Esquire<br>INVISTA | Purchase and Sale Agreement matters<br>INVISTA Communications with Regulatory Authorities<br>INVISTA Communications to DuPont |
| 218. | Donald Schmitt<br>Address Unknown | BWON Claims |

| | Name and Contact Information | Subject Matter |
|---|---|---|
| 219. | Kent Schmitt<br>Address Unknown | BWON Claims |
| 220. | Ernest Schutt<br>INVISTA | BWON Claims |
| 221. | Patricia Shaw<br>INVISTA | Wilton HSE Claims<br>Purchase and Sale Agreement matters |
| 222. | Stephen Shaw<br>INVISTA | Wilton: Non-Boric Claim<br>Wilton HSE Claims |
| 223. | George Sivils<br>INVISTA | PSD/NNSR Claims |
| 224. | Scott G. Sontheimer<br>INVISTA | BWON Claims |
| 225. | Ron E. Steele<br>INVISTA | PSD/NNSR Claims |
| 226. | John Stewart<br>INVISTA | Wilton Non-Boric Claim<br>Wilton HSE Claims |
| 227. | Cedric Tahiani<br>INVISTA | Maitland, Ont. – Corrosion Under Insulation |
| 228. | Ian Taylor<br>INVISTA | Wilton Health and Safety Claims<br>Purchase and Sale Agreement matters |
| 229. | Michael Taylor<br>Address Unknown | Gloucester Claim |
| 230. | Mike Terry<br>INVISTA | PSD/NNSR Claims<br>Purchase and Sale Agreement matters<br>Seaford secondary containment |
| 231. | Christopher C. Theile, Esquire<br>Vinson & Elkins, LLP<br>2801 Via Fortuna Suite 100<br>Austin, TX 78746<br>(516) 542-8632 | INVISTA Communications with Regulatory Authorities |

| | Name and Contact Information | Subject Matter |
|---|---|---|
| 232. | One or more representatives from:<br>Trinity Consultants<br>350 Eagleview Blvd #2000<br>Exton, PA 19341<br>(610) 524 3500 | BWON Claims |
| 233. | James R. Thompson<br>ABS Consulting<br>ABS Plaza<br>16855 Northchase Dr.<br>Houston, TX 77060-6008<br>(281) 673-2800 | Victoria – Health and Safety Claims |
| 234. | Leroy Trahan<br>INVISTA | Sabine River Works - Corrosion Under Insulation |
| 235. | Walter Tyler<br>INVISTA | Purchase and Sale Agreement matters |
| 236. | Bruce Tylock<br>INVISTA | Purchase and Sale Agreement matters |
| 237. | Renee Van Breusegen<br>Van Breusegen & Associates Inc.<br>332 Merlot Lane<br>Saint Albans, MO 63073<br>(636) 458 3382 | BWON Claims |
| 238. | One or more representatives from:<br>Van Breusegen & Associates Inc.<br>332 Merlot Lane<br>Saint Albans, MO 63073<br>(636) 458 3382 | BWON Claims |
| 239. | Gary Van Cleave<br>INVISTA | PSD/NNSR Claims<br>BWON Claims |
| 240. | Hannah Valmont<br>INVISTA | Purchase and Sale Agreement matters |
| 241. | John Van Oostrom<br>INVISTA | Maitland, Ont. - Ontario Fire Code Part 4 |
| 242. | Frank Vanryn<br>INVISTA | Purchase and Sale Agreement matters<br>Maitland, Ont. – Landfill |

|  | Name and Contact Information | Subject Matter |
|---|---|---|
| 243. | Jerry Violet<br>INVISTA | PSD/NNSR Claims |
| 244. | Jonathan C. Vogt<br>INVISTA | Sabine River Works - Ground Level NOx Release Claim |
| 245. | Brian Wazenreid<br>Terracon Consultants, Inc.<br>18001 W 106th St., Ste. 300<br>Olathe, KS 66061<br>(913) 599 6886 | Seaford Secondary Containment |
| 246. | George J. Weiner<br>Formerly Blank Rome LLP<br>Address Unknown | INVISTA Communications with Regulatory Authorities |
| 247. | Robert Welch<br>INVISTA | PSD/NNSR Claims |
| 248. | Chris Wells<br>INVISTA | Maitland, Ont. - Facility Siting |
| 249. | William Whitaker<br>INVISTA | PSD/NNSR Claims |
| 250. | Dave Wilhelm<br>INVISTA | PSD/NNSR Claims |
| 251. | Al Wilkes<br>INVISTA | PSD/NNSR Claims |
| 252. | Jack Winters<br>Zachry Const. Corp. | Sabine River Works - Corrosion Under Insulation |
| 253. | Russell H. Wright<br>INVISTA | Purchase and Sale Agreement matters |
| 254. | William Wynn<br>INVISTA | PSD/NNSR Claims |
| 255. | Waguth M. Zaky<br>INVISTA | Maitland, Ont. - Facility Siting |

## II.    CATEGORIES AND LOCATION OF DOCUMENTS

Pursuant to Rule 26(a)(1)(A)(ii), the following is a description by category and location

of documents, electronically stored information, and tangible things that are in the possession,

custody or control of Defendant and that Defendant may use to support its claims or defenses,

unless solely used for impeachment.  Defendant reserves its right to supplement the following

description as its investigation continues.

| Location | Category |
|---|---|
| E.I. du Pont de Nemours and Company<br>1007 Market Street<br>Wilmington, DE 19898<br>(302) 774-1000 | Corporate and other documents that DuPont may use to support its claims and defenses |
| DuPont Victoria Plant<br>P&IP Operations<br>P. O. Box 2626<br>Victoria, TX 77902-2626 | Documents belonging to current and/or former DuPont employees that DuPont may use to support its claims and defenses |
| Skadden, Arps, Slate, Meagher & Flom LLP<br>4 Times Square<br>New York, NY 10036<br>(212) 735-3000 | Documents regarding Purchase and Sale Agreement matters |
| E.I. du Pont de Nemours and Company<br>Chestnut Run Plaza<br>4417 Lancaster Pike<br>Wilmington, DE 19805 | Documents belonging to current and/or former DuPont employees that DuPont may use to support its claims and defenses |
| E. I. du Pont de Nemours and Company<br>Barley Mill Plaza<br>Lancaster Pike and Rt. 141<br>Wilmington, DE 19805 | Documents belonging to current and/or former DuPont employees that DuPont may use to support its claims and defenses |
| E.I. du Pont de Nemours and Company<br>Sabine River Works Plant<br>P&IP<br>3055 Farm-to-Market Rd 1006<br>Orange, Texas 77630 | Documents belonging to current and/or former DuPont employees that DuPont may use to support its claims and defenses |

| Location | Category |
|---|---|
| Iron Mountain<br>Records Management Division<br>6 Dock View Drive<br>New Castle, Delaware 19720<br>(302) 654-9500 | Historical and archived documents that DuPont may use to support its claims and defenses |
| E.I du Pont de Nemours and Company<br>Chattanooga Plant<br>4501 N. Access Rd.<br>Chattanooga, TN 37414 | Documents belonging to current and/or former DuPont employees that DuPont may use to support its claims and defenses |
| E.I. du Pont de Nemours and Company<br>LaPorte Plant<br>12501 Strang Road<br>La Porte, Texas 77571-8704 | Documents belonging to current and/or former DuPont employees that DuPont may use to support its claims and defenses |
| E.I. du Pont de Nemours and Company<br>Kingston Plant<br>505 Front Road<br>Kingston Ontario<br>Canada K7L 5A1 | Documents belonging to current and/or former DuPont employees that DuPont may use to support its claims and defenses |

At this time, Defendant has not yet completed a review of electronically stored information in its possession, custody or control that Defendant may use to support its counterclaims or defenses in this action. However, it is possible that such electronically stored information includes emails or non-email electronically stored information that Defendant may use to support its counterclaims or defenses in this action. Defendant reserves the right to supplement or amend this disclosure to identify additional types of documents and/or places where such documents are located with additional information when it becomes available.

## III.    COMPUTATION OF DAMAGES

In accordance with Rule 26(a)(1)(A)(iii), at this early stage of litigation, and in advance of any discovery, Defendant computes its damages to include an as-yet undetermined amount in excess of $75,000.

## IV.   INSURANCE AGREEMENT

Pursuant to Rule 26(a)(1)(A)(iv), Defendant is not aware of any insurance agreements available to satisfy part or all of any judgment that may be entered in this action or to indemnify or reimburse any party for payments made to satisfy any judgment.

## V.   RESERVATION OF RIGHTS

Defendant's initial investigation has been impaired because the majority of the relevant documents and knowledgeable persons are within INVISTA's possession, custody or control, and Defendant has not had access to them.  Defendant therefore reserves the right to amend and/or supplement these initial disclosures to include information obtained through the course of further investigation and analysis, discovery and trial preparation.

DATED:      New York, New York
            June 30, 2008

                        BOIES, SCHILLER & FLEXNER LLP

                        David Boies (DB-4399)
                        dboies@bsfllp.com
                        333 Main Street
                        Armonk, NY 10504
                        P: 914.749.8200

                        Robert J. Dwyer (RD-6457)
                        rdwyer@bsfllp.com
                        575 Lexington Avenue, 7th Floor
                        New York, NY 10022
                        P: 212.446.2300

                        Amy J. Mauser *(Admitted Pro Hac Vice)*
                        amauser@bsfllp.com
                        5301 Wisconsin Avenue, N.W., Suite 800
                        Washington, D.C. 20015
                        P: 202.237.2727

D. Scott Bassinson (SB-0136)
sbassinson@bsfllp.com
10 North Pearl Street
4th Floor
Albany, NY 12207

MORGAN, LEWIS & BOCKIUS LLP

Troy S. Brown (Admitted Pro Hac Vice)
tsbrown@morganlewis.com
Jeffrey N. Hurwitz (Admitted Pro Hac Vice)
jhurwitz@morganlewis.com
Margot Bloom (MB-7455)
margot.bloom@morganlewis.com
Erica C. Blackledge (Admitted Pro Hac Vice)
eblackledge@morganlewis.com
1701 Market Street
Philadelphia, PA 19103
P: 215.963.5000
P: 215.963.5001

Attorneys for Defendant
E.I. du Pont de Nemours and Company

By: _____
        Troy S. Brown