Document Electronically Filed

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- x

| | | |
|---|---|---|
| INVISTA B.V., et al. | : | 08 CV 3063 (SHS) |
| | : | |
| Plaintiffs, | : | |
| | : | **DECLARATION OF** |
| v. | : | **LAURIE SAHATJIAN** |
| | : | **IN SUPPORT OF PLAINTIFFS'** |
| E.I. DU PONT DE NEMOURS AND COMPANY, | : | **MOTION TO DISQUALIFY** |
| | : | |
| | : | |
| Defendant. | : | |

------------------------------------------------------------- x

**LAURIE SAHATJIAN, ESQUIRE,** hereby declares under penalty of perjury as follows:

1.    I am now Associate General Counsel for Environmental, Health and Safety of Koch Industries, Inc. ("Koch"), which is the ultimate parent organization of the Plaintiffs in this action (collectively, "INVISTA"). I am an attorney licensed to practice in various jurisdictions. I have been employed at Koch since July 16, 2001 as a lawyer advising on environmental, health and safety issues. Because of my work for Koch, I am familiar with the legal work that Morgan, Lewis & Bockius LLP ("MLB") performed for Koch and its affiliates from 1998 through 2004. This affidavit is based on my personal knowledge and a review of the documents kept in the ordinary course of business, as well as discussions with others at Koch and INVISTA. I respectfully make this Declaration in support of INVISTA's motion to disqualify MLB as counsel for Defendant E.I. du Pont de Nemours and Company ("DuPont") in this action.

**MLB's Work for Koch and Koch Affiliates on OSHA Matters**

2.    In early 2000, Koch retained MLB to assist Koch in corporate-wide audits for Occupational Safety and Health Act ("OSHA") compliance at the majority of facilities owned and operated by Koch and its affiliates and subsidiaries. A true and correct copy of the letter from Alan Hallock of Koch to Dennis Morikawa of MLB dated January 31, 2000 is annexed hereto as Exhibit A.

3.    Between July 2000 and December 2000, Koch, with MLB's assistance, conducted an initial OSHA compliance audit of 234 Koch company facilities. In order to facilitate their provision of legal advice and evaluation of legal risks, the MLB attorneys and other MLB professionals worked hand-in-hand with Koch in-house counsel and employees on Audit/Compliance Task Forces established by Koch's General Counsel's Office and Koch's Audit and Assurance Group. MLB attorneys worked closely with Paul Kaleta, then General Counsel of Koch and subsequently General Counsel of INVISTA, and Bill Caffey, then Koch's Vice President and subsequently a Koch Executive Vice President of Operations and a member of INVISTA's Board of Directors, in connection with these audits. The initial audit consisted of reviewing each facility's response to a written questionnaire, reviewing written materials (such as training program materials) provided by the facility and conducting interviews of facility personnel to clarify their responses to the written questionnaire. During the initial audit, the audited facilities received survey reports identifying their compliance deficiencies, directives/action items for correcting deficiencies and timetables for completing the directives/action items.

4.    At the end of the initial audit phase, Koch and MLB established a plan to conduct on-site audits of selected Koch facilities. For the 2001-2003 calendar years, Koch and

MLB identified a number of facilities for audits by outside auditors from the firms Environmental Resources Management ("ERM") or Van Breusegen & Associates ("VBA"). MLB worked closely with Koch's legal and audit group, including me, in connection with these audits and MLB attorneys even participated in certain of the on-site facility audits. ERM later assisted Koch in the pre-acquisition EHS due diligence of the DuPont facilities, which is likely to be at issue in this case, and VBA was one of the primary firms that conducted the audits of the DuPont facilities post-Closing in accordance with the Environmental Protection Agency ("EPA") Audit Agreement that is at issue in this case.

5.      During the course of the OSHA audit process, MLB attorneys visited and toured Koch company facilities, met with plant personnel and senior management regarding OSHA and other regulatory issues, and received or had access to voluminous documentation regarding Koch's operations and its compliance with environmental, health and safety laws.

6.      In connection with the corporate-wide OSHA audits and their roles on the Audit/Compliance Task Forces, MLB attorneys had extensive access to Koch company management, internal counsel and personnel, including technical experts at the plants and senior management overseeing Koch's environmental, health and safety compliance.

7.      Given the significance of these issues, Koch's senior management including Koch's General Counsel Paul Kaleta (who later became INVISTA's General Counsel) and Koch Board Members and Executive Vice Presidents Richard Fink and Bill Caffey (both of whom later became members of INVISTA's Board of Directors), worked closely with MLB, reviewing Koch's compliance programs and the best practices for compliance with, among other things, federal and state environmental, health and safety regulations.

8.    MLB's work on the corporate-wide audits, led by Dennis Morikawa, culminated in meetings with the Assistant Secretary of the United States Department of Labor in late 2001 to discuss the audit program and Koch's initiatives in health and safety compliance.

9.    I assumed responsibility for legal oversight of the OSHA audit program after starting at Koch in 2001. I worked directly with MLB attorneys Dennis Morikawa and other MLB attorneys on the negotiation and execution of the OSHA Strategic Partnership, which was initially discussed at the meeting with the Assistant Secretary of the Department of Labor. I also worked with MLB attorneys James Philbin and T. Benjamin Huggett on OSHA compliance issues, including audits and investigation work related to various Koch company facilities.

10.    MLB attorneys who worked on Koch's OSHA Audit/Compliance Task Forces, including Dennis Morikawa, James Philbin and T. Benjamin Huggett, signed confidentiality agreements acknowledging that the work they performed was privileged and highly confidential.

11.    As a result of their work with Koch and its affiliated companies on the OSHA audits and other health and safety issues, MLB had access to sensitive, proprietary and other confidential information of a non-public nature about Koch's businesses and its approach to environmental, health and safety compliance, including compliance with OSHA and other health and safety requirements.

**Koch's Pre-Litigation Objections to MLB's Representation of DuPont**

12.    In 2005 and 2006, I was involved in the negotiations between DuPont and INVISTA regarding INVISTA's indemnity claims against DuPont arising from violations of EHS regulations at DuPont facilities acquired by Koch in 2004. I learned in late 2005 that MLB may have been representing DuPont in connection with INVISTA's indemnity claims, when

-4-

DuPont copied two MLB attorneys, Troy Brown and Michael Steinberg, on a letter to INVISTA. A true and correct copy of the letter from Guy Johnson of DuPont to Tracey Mihelic of INVISTA dated October 12, 2005 is annexed hereto as Exhibit B.

13.    For months, INVISTA had been seeking a meeting with DuPont to discuss the discovery of violations by independent auditors at the former DuPont facilities and INVISTA's subsequent disclosure of those violations  In early 2005, in a meeting I attended with Guy Johnson of DuPont, Mr. Johnson stated that DuPont would establish a "technical team" to meet with INVISTA's "technical team" to discuss the alleged violations and proposed corrective actions. For more than a year after that meeting, DuPont did not respond to INVISTA's repeated requests to schedule the "technical team" meeting.

14.    In March 2006, DuPont agreed to a "technical team" meeting for April 3, 2006, just two days prior to a scheduled meeting between INVISTA and EPA to discuss proposed corrective actions.  DuPont proposed that the meeting take place at MLB's offices, confirming INVISTA's concerns that MLB was now representing DuPont adverse to it.

15.    On March 27, 2006, DuPont advised INVISTA that three MLB attorneys would be attending the April 3 meeting:  Michael Steinberg, Troy Brown, and Jeffrey Hurwitz. A true and correct copy of the letter from Guy Johnson of DuPont to me dated March 27, 2006 is annexed hereto as Exhibit C.

16.    On behalf of Koch and its affiliated companies and in connection with the April 3, 2006 meeting, I sent DuPont a letter dated March 31, 2006, advising DuPont of Koch's concerns about MLB's representation of DuPont in connection with INVISTA's indemnity claims.  I copied MLB on the letter, and stated that Koch expected MLB to wall off from the INVISTA matter all MLB attorneys and personnel who worked on Koch matters.  A true and

correct copy of my letter to Guy Johnson of DuPont dated March 31, 2006 is annexed hereto as Exhibit D.

17.    In response, Guy Johnson of DuPont sent me an email dated March 31, 2006 regarding the proposed meeting and MLB's participation in that meeting.  Mr. Johnson advised in the email that MLB had "cleared any potential conflicts with Koch Industries, Inc. sometime ago."  A true and correct copy of Mr. Johnson's March 31, 2006 email to me is included within Exhibit E.

18.    When told that Koch was not aware that MLB had cleared conflicts, Mr. Johnson clarified in a follow-up email dated March 31, 2006 that "they sent a letter terminating their relationship with Koch."  A true and correct copy of Mr. Johnson's March 31, 2006 email to me is included within Exhibit E.

19.    I responded by email, reminding Mr. Johnson that "[r]egardless of whether MLB believes they have 'terminated' or otherwise concluded their relationship with Koch, as you know that does not relieve them from all obligations to Koch."  Specifically, I wrote that MLB had "an obligation to retain as confidential, and not to use, the confidences or secrets of the former client."  A true and correct copy of my March 31, 2006 email to Mr. Johnson is included within Exhibit E.

20.    Mr. Johnson responded to my email, asking whether there were "any such matters from your perspective."  I responded that "the disputes with DuPont covered the full panoply of [environmental, health and safety] matters" and that "MLB represented Koch in connection with a number of environmental, health and safety matters, including OSHA matters and matters relating to the [BWON] and other air issues."  I wrote Mr. Johnson that he "should ask [MLB] to undertake a review as they are counsel with the obligations."  I also asked

Mr. Johnson to confirm that MLB had not addressed the substance of their representations of Koch in any manner with DuPont. A true and correct copy of Mr. Johnson's email and my email response both dated March 31, 2006 are included within Exhibit E.

21.    Mr. Johnson replied, "I can assure you that I have never, and will never, discuss the substance of any [MLB] representation of Koch Industries, Inc." A true and correct copy of Mr. Johnson's March 31, 2006 email is included within Exhibit E.

22.    On April 3, 2006, I, along with representatives from INVISTA and Koch met Mr. Johnson and other representatives of DuPont at MLB's offices in Philadelphia. Over our objection regarding any involvement in the INVISTA matter by MLB attorneys who previously worked on Koch EHS matters, MLB allowed Mr. Steinberg and Mr. Hurwitz to attend the meeting. In the interest of obtaining DuPont's input regarding the violations and corrective actions, we made a standing objection, and reserved all rights regarding MLB's representation of DuPont, and continued the meeting.

23.    At the April 3rd meeting, MLB expressly agreed that it would not in the future allege that INVISTA waived any rights with regard to challenging MLB's representation of DuPont by going forward with the important meeting with DuPont at that time.

24.    During the meeting, we discussed the violations that had been discovered at the former DuPont facilities, including violations of the Benzene Waste Operations NESHAPS ("BWON") and Prevention of Significant Deterioration/New Source Review ("PSD/NSR") regulations of the Clean Air Act. We answered detailed questions from DuPont's technical team, which included consultants from RTP Environmental, regarding the PSD/NSR violations. When DuPont's technical team appeared ready to provide advice regarding the alleged violations, the MLB attorneys instructed them not to speak.

25.    On April 4, 2006, Michael Bloom, Chair of MLB's Standing Committee on Conflicts and Professional Responsibility, responded to my March 31, 2006 letter to DuPont. Mr. Bloom asserted in his letter that MLB's former representation of Koch and its current representation of DuPont were not substantially related. Mr. Bloom accordingly concluded that there was no obligation on MLB to "wall off" or screen from the DuPont representation the attorneys who previously worked on Koch matters. A true and correct copy of the letter from Michael Bloom of MLB to me dated April 4, 2006 is annexed hereto as Exhibit F.

26.    On behalf of Koch, I responded by letter dated April 7, 2006, challenging Mr. Bloom's assertion that the two matters were not substantially related. In the letter, I stated that Koch reserved all of its rights regarding MLB's representation of DuPont. A true and correct copy of my letter to Michael Bloom of MLB dated April 7, 2006 is annexed hereto as Exhibit G.

**Negotiation of INVISTA's Consent Decree Regarding Former DuPont Facilities**

27.    As Koch's in-house counsel, I negotiated the environmental-related provisions of the purchase agreement for the DuPont facilities, assisted with EHS due diligence and later audits at the facilities acquired from DuPont, and was involved with INVISTA's negotiations with the EPA and DOJ to resolve violations of EHS regulations, including BWON and PSD/NSR regulations, at the former DuPont facilities, which negotiations began in April 2006. Other Koch in-house counsel and senior executives were involved in the review of the audits of the DuPont facilities as well as INVISTA Consent Decree negotiations. By way of example, Jim Mahoney, Koch's Executive Vice President of Operations, Excellence and Compliance and a member of INVISTA's Board of Directors, was heavily involved in the INVISTA Consent Decree negotiations with EPA, DOJ and state regulators and was also heavily

involved in the negotiations of the prior Koch Consent Decree, which involved certain refinery properties of Koch's subsidiary Flint Hills Resources, LP ("FHR") and for which MLB attorneys served as Koch's and FHR's legal counsel.    Likewise, Bill Caffey, Koch's Executive Vice President until December 31, 2005, and a member of INVISTA's Board of Directors after Closing until December 31, 2005, was involved in the limited due diligence that DuPont allowed relating to the purchase of the DuPont facilities and was involved in negotiations with DuPont and, after the purchase closed in 2004, played an oversight role relating to audit and compliance issues discovered by INVISTA at the former DuPont facilities.

28.    Notably, Michael Steinberg and Jeffrey Hurwitz, who were now representing DuPont adverse to INVISTA, had previously worked on BWON and PSD/NSR issues relating to the FHR facilities, which were ultimately the subject of the Koch Consent Decree.

29.    With respect to the proposed INVISTA Consent Decree, we have dealt with some of the same regulators at EPA whom we faced in the negotiations regarding the Koch Consent Decree.    Specifically, Adam Kushner, now Director, Air Enforcement Division, Shaun Burke, a technical expert for EPA, and Ken Garing, an expert on BWON issues, were involved with the INVISTA Consent Decree negotiations and I understand that these same EPA representatives were also involved in the Koch Consent Degree negotiations.    See Declaration of William Frerking in Support of Plaintiffs' Motion to Disqualify Morgan, Lewis & Bockius LLP, dated August 27, 2008.

30.    Both the Koch Consent Decree, on which MLB served as Koch's primary outside counsel, and the proposed INVISTA Consent Decree that is being negotiated with the

EPA and several state agencies, involve alleged violations of identical statutory and related regulatory requirements, including:

- Non-attainment New Source Review and/or Prevention of Significant Deterioration programs (NNSR/PSD), 42 U.S.C. §§ 7502, 7503, and 7475;

- New Source Performance Standards (NSPS), 42 U.S.C. § 7411;

- Benzene National Emissions Standards for Hazardous Air Pollutants (NESHAP), 42 U.S.C. § 7412;

- Leak Detection and Repair (LDAR) requirements, 42 U.S.C. §§ 7411-7412

- Resource Conservation and Recovery Act, (RCRA), 42 U.S.C. § 6901 et. seq.;

- Clean Water Act (CWA), 33 U.S.C. § 1312 (b) (3) and (j)

- Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), 42 U.S.C. § 9603 (a).

Given the similarity between the Koch Consent Decree negotiations and the issues discovered at the former DuPont facilities, the INVISTA/Koch negotiating team relied upon advice MLB previously had provided about violations of these same statutes and regulations in connection with the negotiation of the Koch Consent Decree.

31.    Indeed, following the strategy and commitment to compliance created by Koch (with MLB's counsel) that resulted in the Koch Consent Decree, INVISTA self-reported the violations at the former DuPont facilities of these statutes and regulations and ultimately agreed to settle with the EPA and DOJ. As Koch did in connection with the Koch Consent Decree, INVISTA will incur substantial costs in implementing the INVISTA Consent Decree.

**INVISTA's Indemnity Claims Against DuPont and Filing of This Action**

32.    After the April 3, 2006 meeting with DuPont, and based upon DuPont's repeated representations that it wanted to resolve the indemnity claims "commercially" and to

avoid litigation, INVISTA and DuPont engaged in extended negotiations in an attempt to settle the indemnification claims relating to BWON, PSD/NSR and OSHA violations at the former DuPont facilities. Given what was assumed to be both parties' good faith interest in reaching a settlement, and in light of the timing concerns resulting from the pressure by EPA and DOJ for INVISTA to negotiate the Consent Decree, there would have been no opportunity to meet with DuPont and reach settlement had INVISTA refused to meet with DuPont while it was represented by MLB.

33.     After negotiations terminated without settlement in March 2008, INVISTA filed its Complaint in the instant action.

**Koch's Continued Objection to MLB's Representation of DuPont**

34.     On June 12, 2008, Mark Holden, Koch's General Counsel, and I met with Michael Bloom and Tom Reinert of MLB in their Washington, D.C. office to discuss MLB's representation of DuPont. I have reviewed the affidavit of Mark Holden dated August 27, 2008 and agree with his description of the events of that June 12 meeting.

35.     I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, pursuant to 28 U.S.C. § 1746.

LAURIE SAHATJIAN

Signed this 27th day of August, 2008 at Wichita, Kansas.

EXHIBIT A



LEGAL DEPARTMENT

**ALAN D. HALLOCK**
ASSISTANT GENERAL COUNSEL

January 31, 2000

**VIA FACSIMILE (215-963-5299)**

Mr. Dennis J. Morikawa
Attorney at Law
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, Pennsylvania 19103-2921

Re: OSHA Matters

Dear Dennis:

It was a pleasure speaking with you by telephone last Friday. As requested, the following is a brief description of Koch Industries, Inc. and the nature of work that we would be seeking from your firm.

Koch Industries, Inc. is a privately owned corporation which, through its subsidiaries, is involved in virtually all phases of the oil and gas industry. Koch Industries and its subsidiaries employ approximately 12,000 people, with major concentrations of employees in Houston, Corpus Christi, Wichita, St. Paul and Medford, Oklahoma.

Koch Petroleum Group, L.P., an indirect subsidiary of Koch Industries, Inc., owns and operates a petroleum refinery near St. Paul, Minnesota, which is referred to internally as the Pine Bend facility. The Pine Bend refinery employs a safety director who has administered OSHA incident recording for the facility. A complaint has been voiced by a former employee about the performance of the safety director and a preliminary investigation has caused us to conclude that it is necessary to conduct a full examination of the OSHA 200 logs for the refinery.

We would be seeking your assistance in two areas:

- A full review of the Pine Bend refinery's OSHA 200 logs for 1999;

4111 East 37th Street North  •  Wichita, Kansas 67220  •  P.O. Box 2256  •  Wichita, Kansas 67201
316/828-7906  •  FAX 316/828-7664

Mr. Morikawa
January 31, 2000
Page 2

- Any necessary follow up with the agency.

We also have an interest in developing an audit program that could be applied to other Koch facilities, as well as continuing consultation on OSHA matters. Koch's philosophy and principles require conduct that is above reproach both legally and ethically, and OSHA matters are no exception.

Please do not hesitate to contact me if you are in need of any additional information.

Sincerely,

Alan D. Hallock

AHD:kp

EXHIBIT B



RECEIVED

OCT 17 2005

INVISTA LEGAL DEPARTMENT

**Guy V. Johnson**
**Corporate Counsel**
Guy.V.Johnson@usa.dupont.com
**(302) 774-5113**
**(302) 774-1189 (FAX)**
**(800) 248-5260 (FAX)**
**(302) 351-7315 (Internet Fax)**

E. I. du Pont de Nemours and Company
Legal Environment Group, D-7090-2
1007 Market Street
Wilmington, Delaware 19898

October 12, 2005

## CERTIFIED MAIL – RETURN RECEIPT REQUESTED

Tracey L. Mihelic
Chief Counsel, Environmental, Health and Safety
INVISTA S.à r.l.
4123 East 37th Street North
Wichita, KS 67220-3203

## ENVIRONMENTAL CLAIMS – WAYNESBORO, VA SITE

Dear Ms. Mihelic:

I am writing in response to certain environmental claims ("Claims") which INVISTA S.à r.l. ("INVISTA") has purported to assert against E. I. du Pont de Nemours and Company ("DuPont") pursuant to the Purchase Agreement, dated November 16, 2003, by and among DuPont, the other Global Sellers (as defined therein), KED Fiber Ltd. and KED Fiber, LLC (as amended, the "Purchase Agreement") which was novated to INVISTA B.V. on May 3, 2004.

Specifically, I am writing regarding certain Claims purportedly asserted in your February 15, 2005 letter to DuPont associated with INVISTA's Second Quarterly Audit Report findings (submitted to EPA on January 31, 2005); in your May 12, 2005 letter to DuPont associated with INVISTA's Third Quarterly Audit Report Findings (submitted to EPA on April 29, 2005); and your August 12, 2005 letter to DuPont associated with INVISTA's Fourth Quarterly Audit Report Findings (submitted to EPA on July 29, 2005) concerning the Waynesboro, VA site. INVISTA has advised that it has completed all or virtually all of the corrective actions pertaining to the "Waynesboro Claims." Further, it appears from the Audit Report Findings that INVISTA has reported to EPA that it has completed corrective action for over 90% of what it alleges were "exceptions or potential exceptions." Moreover, it does

Tracey L. Mihelic
October 12, 2005
Page 2

not appear that there are any significant or unique
"exceptions or potential exceptions" alleged at Waynesboro
(i.e., no issues pertaining to PSD/NSR, Benzene NESHAP,
HON, flaring).

Under numerous provisions of the Purchase
Agreement, DuPont is entitled to receive, and INVISTA is
obligated to provide, documents and information, and access
to knowledgeable personnel, relating to alleged claims
seeking indemnification. These provisions include, without
limitation, § 5.14 (Post-Closing Cooperation), § 5.17
(Post-Closing Access to Information) and § 5.18 (Production
of Witnesses and Individuals).

Accordingly, in order for DuPont to investigate,
review, analyze and consider the merits and bases, or lack
thereof, of the asserted Environmental Claims at
Waynesboro, DuPont requests for each of the Waynesboro
Audit findings the same documents and information EPA is
requiring (as, in large part, reflected in Robert Kaplan's
August 12, 2004 letter to you, which responds to your July
28, 2004 letter proposal for a corporate auditing agreement
with EPA) for each potential violation (emphasis added) at
the conclusion of INVISTA's assessment and correction (some
of which may already be provided in the Quarterly reports):

- Nature and description of potential violation(s)
  and specific regulatory, permit and/or statutory
  provision(s) allegedly violated (include
  references to state-mandated requirements where
  appropriate);
- Date(s) of alleged non-compliance;
- Chemical(s) involved;
- Quantity of materials (lbs.) stored, released,
  spilled or disposed of;
- Capacity of tank(s) or other equipment;
- Date emission source(s), tank(s), treatment
  unit(s), etc., was installed ;
- Date emission source(s), tank(s), treatment
  unit(s), etc. began operations;
- Description of emission source(s), tank(s) or
  treatment unit(s), etc.;
- Date(s) audit team discovered alleged non-
  compliance;

Tracey L. Mihelic
October 12, 2005
Page 3

- Identify the name, title and employer of each individual who (1) discovered the alleged violation / non-compliance, (2) investigated the alleged violation / non-compliance, (3) was involved in remedial actions related to the alleged violation / non-compliance, and/or (4) was involved in discussions with EPA regarding the alleged violation / non-compliance;
- Date(s) alleged violation was corrected or is estimated to be corrected;
- Date(s) remedial actions were taken and/or are planned to correct alleged violation; and
- Costs of remedial actions taken to correct alleged violations (broken down by individual tasks, actions, etc.) and/or estimated costs of remedial actions to be taken to correct alleged violations (broken down by individual tasks, actions, etc.).

In addition to the above documents and information, DuPont requests, for each alleged "exception or potential exception," the following:

- All documents and information reviewed by INVISTA's audit team that led to its determination that such "Claim" was an "exception or potential exception;"
- Identify all individuals interviewed by INVISTA's audit team relating to its determination that such "Claim" was an "exception or potential exception;"
- All documents and information produced or reviewed by INVISTA's audit team that contributed to or provided a rationale for determining that such "Claim" was an "exception or potential exception;" and
- All documents and information supporting and substantiating INVISTA's cost of corrective action or remediation, for which INVISTA asserts a "Claim," and for which INVISTA intends to seek reimbursement from DuPont.

Until INVISTA provides DuPont with the above information and documents, and thereafter provides access to DuPont to witnesses with knowledge relevant to the

Tracey L. Mihelic
October 12, 2005
Page 4

context and background of the information and documents
sought and provided, DuPont is unable to evaluate the
merits and bases, or lack thereof, of the Claims asserted
by INVISTA at the Waynesboro site.  Further, DuPont
reserves all rights to seek additional information and
documents going forward if same are needed to adequately
assess the Claims asserted by INVISTA at the Waynesboro
site.

        Once INVISTA provides all of the information and
documents requested above, DuPont will promptly review the
materials provided in order to reasonably assess and
evaluate INVISTA's Claims.  DuPont also will promptly
advise INVISTA of the names of witnesses it needs to
interview, or the categories of information and documents
which require elucidation from knowledgeable witnesses, and
will cooperate with INVISTA to schedule and complete those
necessary interviews in a timely and unobtrusive manner.

        Upon the completion of (1) DuPont's review of
information and documents, and (2) DuPont's interviews of
relevant and knowledgeable witnesses, DuPont will be
prepared to engage in discussions with INVISTA in an effort
to potentially resolve the "Waynesboro Claims."  We
anticipate that this process could be used to collect,
review, investigate and analyze issues raised and Claims
purportedly asserted by INVISTA at other sites, which then
positions the parties to potentially resolve those Claims
in a similar fashion.  To that end, DuPont will be
providing INVISTA with conceptually similar letters
addressing other alleged Claims at Waynesboro and other
sites over the next several weeks.

        Neither (i) this letter, nor (ii) any of DuPont's
actions prior to the date hereof, should be deemed to
constitute, or read as, a waiver of any of DuPont's rights
under the Purchase Agreement, including with respect to any
of the matters specifically addressed in INVISTA's previous
letters or Claims.  Indeed, DuPont previously has rejected
INVISTA's suggestion that DuPont has, in any way,
acquiesced to INVISTA's purported efforts to resolve
alleged Environmental Claims, whether at Waynesboro or
elsewhere.  INVISTA's suggestion is neither accurate nor
productive.  Please be advised that DuPont is not required,
and does not intend, to repeatedly reject any other such
suggestions in other INVISTA correspondence.

Tracey L. Mihelic
October 12, 2005
Page 5

As you know, the parties' rights and obligations
with respect to certain environmental matters and
indemnities are set forth in Sections 8.5 and 8.6 of the
Purchase Agreement.  Specifically, these provisions apply
to the parties' obligations and conduct with respect to the
matters raised by INVISTA in some of its previous
correspondence asserting "Claims."  DuPont has neither
granted a waiver of, nor agreed to amend, those Sections of
the Purchase Agreement.  Accordingly, if any of the matters
addressed in INVISTA's letters are, in fact, DuPont
Environmental Liabilities, DuPont has "full authority to
control, direct, manage and implement any Remediation and
to determine its scope" with regard to such DuPont
Environmental Liabilities.  In addition, DuPont has the
"full authority to conduct all negotiations, meetings and
settlements with Governmental Authorities with respect to
the DuPont Environmental Liabilities."

This letter does not constitute an admission of
liability or responsibility by DuPont for any of the
matters asserted or claimed by INVISTA in any prior
communication by INVISTA to DuPont.  Further, this letter
is not intended to be an amendment to, or an offer to
amend, the Purchase Agreement.  Finally, neither the
proposals set forth in this letter, nor any future conduct
by the parties which is consistent with the proposals set
forth in this letter or otherwise, is intended or shall be
deemed to supersede or amend the terms of the Purchase
Agreement.

Tracey L. Mihelic
October 12, 2005
Page 6

        I look forward to working with you to resolve
these issues.  Please let me know when INVISTA will have
the requested information and documents regarding the
"Waynesboro Claims" assembled so that DuPont can plan to
engage in a prompt review.



                                Sincerely,

                                Guy V. Johnson

GVJ/X
INVWAYNCLAIMSLTR

    Cc: Christopher R. Graham, Esq., INVISTA

        Tye G. Darland, Esq., Koch Industries, Inc.
        Laurie Sahatjian, Esq., Koch Industries, Inc.

        Mark D. Gerstein, Esq., Latham & Watkins

        Roger W. Arrington, Esq., DuPont
        William E. Gordon, Esq., DuPont

        Lou R. Kling, Esq., Skadden, Arps, Slate, Meagher
                        & Flom LLP
        Thomas W. Greenberg, Esq., Skadden, Arps, Slate,
                        Meagher & Flom LLP

        Michael W. Steinberg, Esq., Morgan, Lewis &
                        Bockius LLP
        Troy S. Brown, Esq., Morgan, Lewis & Bockius LLP

EXHIBIT C



Guy V. Johnson
Corporate Counsel
Guy.V.Johnson@usa.dupont.com
(302) 774-5113
(302) 774-1189 (FAX)
(800) 248-5260 (FAX)
(302) 351-7315 (Internet Fax)

E. I. du Pont de Nemours and Company
Legal Environment Group, D-7090-2
1007 Market Street
Wilmington, Delaware 19898

March 27, 2006

**CERTIFIED MAIL – RETURN RECEIPT REQUESTED**

Laurie C. Sahatjian, Esq.
Associate General Counsel,
Environmental Health & Safety
Koch Industries, Inc.
4111 East 37th Street North
Wichita, KS 67220-3203

Re:   **Environmental Claims**

Dear Ms. Sahatjian:

I am writing to address a number of open issues in advance of the parties' scheduled meeting on April 3, 2006.

**Response to March 20, 2006 Letter Re: "PSD/NSR Claims"**

I have received your letter to me dated March 20, 2006 regarding "PSD/NSR Claims." DuPont will not respond to INVISTA's self-serving rhetoric and posturing, other than to reiterate, as we have in the past, that it is not productive. DuPont is constrained, however, to respond to and address a few matters raised in your letter.

First, DuPont is encouraged by INVISTA's concessions that (1) its "auditor's findings applying the actual-to-potential test are too conservative," and (2) for the majority of the projects it alleges triggered PSD/NSR review, "no BACT/LAER was required because the units at which the increase in emissions occurred (e.g., boilers and dowtherms) had not been modified." DuPont intends, therefore, that the technical team discussion on April 3

Laurie C. Sahatjian, Esq.
March 27, 2006
Page 2

will focus only on the ten findings at Camden, Seaford and
Victoria identified in your March 20 letter as those
INVISTA plans to discuss with EPA in the context of
proposed corrective actions.

Second, while encouraged by the above, DuPont is
disappointed that INVISTA continues to resist providing
DuPont with even the most obviously relevant and easily
accessible documents pertaining to, among other claims, the
PSD/NSR Claims about which the parties are meeting on April
3. At a minimum, to provide DuPont with a meaningful
opportunity to explore with INVISTA's technical consultants
the factual bases underlying the PSD/NSR Claims, INVISTA
must provide DuPont with the following documents pertaining
to the ten findings at Camden, Seaford and Victoria
identified in your March 20 letter:

     (1)  All authorizations for expenditures or
          similar documents seeking funding for
          theses projects;

     (2)  All emissions data for the units
          identified in these projects, including
          post-project emissions data for years
          other than those selected as pre-
          project baseline by ENVIRON; and

     (3)  All clean air permits and/or permit
          applications pertaining to these
          projects, including then-current
          permits for the individual units
          identified as part of the project, even
          if no permit was applied for or
          received for the project itself.

Please advise whether INVISTA will provide DuPont with this
documentation in advance of next Monday's meeting.

Third, on page three of your March 20 letter, you
suggest that INVISTA expects DuPont will provide it, in
advance of INVISTA's April 4 meeting with EPA, any
additional defenses DuPont believes INVISTA should raise
concerning the PSD/NSR Claims. As we have repeatedly
advised INVISTA, DuPont has not yet been provided adequate
documents and information to allow it to conduct a
meaningful and comprehensive review, analysis and

Laurie C. Sahatjian, Esq.
March 27, 2006
Page 3

evaluation of the purported PSD/NSR Claims.  Accordingly,
as a practical matter, DuPont does not believe it is in a
position at present to meaningfully assist INVISTA in
developing defensive theories to raise with EPA in
connection with the corrective actions that INVISTA
apparently intends to propose, without authorization of
DuPont, to EPA.  Moreover, none of DuPont's actions
regarding INVISTA's PSD/NSR Claims changes, modifies or
affects INVISTA's obligation to mitigate any damages it may
seek to recover from DuPont in connection with claims for
indemnification.

       Nonetheless, based on DuPont's review of the
limited documents and information provided to it thus far
by INVISTA, DuPont believes, at a minimum, INVISTA should
carefully explore the following issues before unilaterally
proposing any corrective actions to EPA and/or obligating
itself to expend funds to implement same:

          (1)  For certain of the findings at Camden,
Seaford and Victoria identified in your March 20 letter,
whether these findings are based on the inappropriate
aggregation of any emissions increases from individual
projects; and

          (2)  For each of the ten findings at Camden,
Seaford and Victoria identified in your March 20 letter,
whether it is clear and provable that any increases in
actual emissions were in fact attributable to (caused by)
the project at issue.

**Response to March 21, 2006 Letter Re: "BZ NESHAP Findings"**

       I have received your letter to me dated March 21,
2006, regarding "BZ NESHAP Findings," and write at this
time only to address one matter raised in that letter.  On
page three of your March 21 letter, you suggest that
INVISTA believes it would be appropriate at the scheduled
April 3 meeting for the parties to discuss BZ NESHAP
issues.  DuPont respectfully disagrees.

       First, the parties have agreed that the technical
team meeting on April 3 is for the purpose of discussing
the PSD/NSR Claims and, in particular, the factual bases
underlying those claims.  DuPont is in the process of
preparing for that meeting as best it can based on the

Laurie C. Sahatjian, Esq.
March 27, 2006
Page 4

limited documents and information provided to it thus far
by INVISTA. DuPont does not believe, however, that the
parties are presently positioned to discuss the factual
bases underlying the BZ NESHAP Claims.

Second, while we appreciate your confirmation
that INVISTA is not ignoring our March 3 letter seeking
documents and information, we reject your suggestion that
DuPont has sufficient information to review, analyze and
evaluate INVISTA's BZ NESHAP Claims. To the contrary,
DuPont's March 3 letter sets forth exactly the categories
of documents and information that it needs to conduct a
meaningful review, analysis and evaluation of INVISTA's
purported BZ NESHAP Claims. Again, as we have advised in
prior correspondence on many occasions, DuPont intends to
pursue production by INVISTA of all documents and
information DuPont needs to sufficiently and appropriately
review, analyze and evaluate all purported claims asserted
by INVISTA, including all claims relating to BZ NESHAP
issues, and DuPont does not expect to be in a position to
negotiate a resolution of any claims with INVISTA until
after such review, analysis and evaluation. INVISTA's
persistent refusal to provide these documents, which
presumably are easily accessible and already in the
possession of INVISTA's environmental consultants,
continues to undermine any dispute resolution process.

Finally, once DuPont receives the documents it
has requested of INVISTA in its March 3 letter, DuPont will
be ready to discuss the scheduling of and logistics for a
technical team meeting to address BZ NESHAP issues. We
hope that INVISTA will focus its attention on a meaningful
response to DuPont's March 3 letter so the parties can
target a May 2006 technical team meeting on these claims.

DuPont will respond to the remainder of INVISTA's
March 21 letter in due course.

## Follow-Up To March 6, 2006 Letter to INVISTA

On March 6, I wrote to you advising that DuPont
was agreeable to entering into the "Guidelines Regarding
Settlement Process" (the "Guidelines") proposed by INVISTA
and attached to your January 17 letter to me, subject to
certain revisions enumerated in my letter. In DuPont's
view, none of the suggested revisions are controversial

Laurie C. Sahatjian, Esq.
March 27, 2006
Page 5

and, thus, DuPont again requests that INVISTA provide it
with a revised and final version of the Guidelines in
advance of the April 3 meeting so the parties can have a
governing document in place.

### April 3 Technical Team Meeting

Finally, I am providing you with a list of the
persons who will attend the April 3 technical team meeting
on behalf of DuPont.  In addition to myself, the attendees
will be:

    (1)   Phil May, of RTP Environmental
           Associates, Inc.;
    (2)   Colin Campbell, of RTP Environmental
           Associates, Inc.;
    (3)   Mike Steinberg, Esq., of Morgan Lewis;
    (4)   Jeff Hurwitz, Esq., of Morgan Lewis;
           and
    (5)   Troy Brown, Esq., of Morgan Lewis.

At your earliest convenience, please identify for
me the attendees on behalf of INVISTA.  Also, please advise
me of any time restrictions for the INVISTA team, as our
team needs to plan for travel.

As communicated earlier, our April 3 meeting will
begin, at your request, at 7:30 am in the offices of
Morgan, Lewis & Bockius at 1701 Market Street,
Philadelphia, PA  19103.  In case of delays or other
issues, my cell phone is (302) 545-6287.

I look forward to hearing from you.

Sincerely,

Guy V. Johnson

GVJ/X
INVENVIRCLAIMSLTR

Laurie C. Sahatjian, Esq.
March 27, 2006
Page 6


Cc:      Christopher R. Graham, Esq., INVISTA
         Tracey L. Mihelic, Esq., INVISTA

         Mark Holden, Esq., Koch Industries, Inc.

         Mark D. Gerstein, Esq., Latham & Watkins

         Roger W. Arrington, Esq., DuPont
         William E. Gordon, Jr., Esq., DuPont

         Lou R. Kling, Esq., Skadden, Arps, Slate, Meagher
                   & Flom LLP
         Thomas W. Greenberg, Esq., Skadden, Arps, Slate,
                   Meagher & Flom LLP

         Michael W. Steinberg, Morgan, Lewis & Bockius LLP
         Troy S. Brown, Morgan, Lewis & Bockius LLP

EXHIBIT D



LEGAL DEPARTMENT                                    March 31, 2006

**LAURIE CRICK SAHATJIAN**
ASSOCIATE GENERAL COUNSEL
ENVIRONMENTAL HEALTH & SAFETY


<u>Via Federal Express</u>



Guy V. Johnson, Esq.
E.I. duPont de Nemours and Company
1007 Market Street
Wilmington, DE 19898

Dear Mr. Johnson:

We are writing in regard to the technical team meeting that has been set for Monday, April 3, 2006 at the offices of Morgan Lewis & Bockius in Philadelphia.

First, we want to make certain that you understand that the Morgan Lewis firm has represented Koch Industries, Inc. ("Koch") in connection with environmental, health and safety matters in the not too distant past. We assume Morgan Lewis has advised you of this. We also want to make sure that you understand that we have neither been asked by Morgan Lewis to waive, nor have we waived, any conflict of interest or other ethical or disciplinary impediment to its representation of DuPont that arises by reason of its prior representation of Koch in such matters. That said, we understand that Morgan Lewis has been advising you in connection with matters relating to the indemnity under the Purchase Agreement. We expect that Morgan Lewis has walled off all partners, counsel, associates, paralegals and other employees who assisted in any representation of Koch that is in any way related to the subject matter of any of the matters that are at issue between INVISTA, a wholly-owned subsidiary of Koch, and DuPont. In particular, we want to make sure that Morgan Lewis is in no way using – and will in no way use in the future – any confidential, proprietary, or secret information that it learned during its representation of Koch. We are copying Morgan Lewis on this letter so that it will be directly on notice of our position, even though its obligations with regard to former clients is independent of any such notice.

Second, we are very much concerned with the tone and content of the communications we recently have received from DuPont regarding not only the environmental, health and safety claims, but also other matters that are the subject of indemnity under the Purchase Agreement. While we understand that our interests with respect to all such matters are not necessarily aligned, we have, throughout, attempted to approach these matters on a cooperative basis and have been (and remain) hopeful that DuPont would have a like approach. We are concerned that, unlike us, DuPont is not looking for

Guy V. Johnson, Esq.
Page 2
March 31, 2006

common ground and is approaching these matters solely with a view toward litigation. DuPont's letter dealing with the non-boric project at Wilton, one of the subjects of the proposed guidelines for settlement, is indicative of this approach. We are, thus, not prepared at this time to enter into the guidelines on the terms you have suggested – including the terms regarding DuPont's "sole discretion." We know full well that we cannot force DuPont to meet with us, but we cannot execute even a non-binding document that would include any such term and purport to limit us. We, of course, remain open to discussing the guidelines further, but do not see a basis to execute them in light of DuPont's apparent view that the process is a one-way street. We, of course, remain willing to meet with you, as we have from the very outset, to share information and to obtain your views, subject to the confidentiality provisions of Section 5.20 of the PSA.

Finally, we have agreed to a technical team meeting on April 3, 2006 regarding the PSD/NSR claims. We are prepared to walk you through our holistic (or global) approach to the resolution of these and other matters with EPA (as we described, inter alia, in our November 1, 2005 letter and subsequent correspondence). These discussions, of course, are part of a settlement and compromise negotiation, and any statements made in the course of this meeting by and among the parties and their agents, employees, experts, consultants or attorneys are confidential, will not be disclosed to third parties, and are privileged and inadmissible for any purpose, including impeachment, under Rule 408 of the Federal Rules of Evidence and any federal or state statute, rule or common law provisions applicable to settlement discussions.

We look forward to our meeting on April 3, 2006.

Sincerely,

Laurie C. Sahatjian

cc:   Troy S. Brown, Esq., Morgan, Lewis & Bockius
      Roger W. Arrington, Esq., E.I. duPont de Nemours and Company
      William E. Gordon, Jr., Esq., E.I. duPont de Nemours and Company
            % JoAnn McDonough, E.I. duPont de Nemours and Company
      Lou R. Kling, Esq.
      Thomas W. Greenberg, Esq.
      Tracey L. Mihelic, Esq.
      Christopher R. Graham, Esq.
      Mark V. Holden, Esq., Koch Industries, Inc.

EXHIBIT E

-----Original Message-----
From: Guy V Johnson
To: Sahatjian, Laurie (Koch Legal)
CC: Guy V Johnson
Sent: Fri Mar 31 20:13:25 2006
Subject: Re: 3-31-2006 duPont letter

Laurie:

I can assure you that I have never, and will never, discuss the substance of any Morgan Lewis representation of Koch Industries, Inc.

Guy


----- Original Message -----
From: laurie.sahatjian
Sent: 03/31/2006 05:28 PM
To: Guy V Johnson/AE/DuPont@DuPont
Cc: laurie.sahatjian@kochind.com
Subject: RE: 3-31-2006 duPont letter

Guy

Yes, I do have some concerns. First, as you know, the disputes with DuPont cover the full panaply of EHS matters, as is evident from the reports to EPA and the notice letters that we have provided. Morgan Lewis represented Koch in connection with a number of environmental, health & safety matters, including OSHA matters and matters relating to the BZ NESHAP and other air issues. You should ask Morgan Lewis to undertake a review as they are counsel with the obligations. Of course, Morgan Lewis should not be addressing the substance of these representations in any manner with DuPont, we expect that they have not done so, and we would appreciate your assurance that this is the case.

Thanks,

Laurie

-----Original Message-----
From: Guy V Johnson [mailto:Guy.V.Johnson@USA.dupont.com]
Sent: Friday, March 31, 2006 4:10 PM
To: Sahatjian, Laurie (Koch Legal)
Cc: Guy V Johnson
Subject: Re: 3-31-2006 duPont letter

Laurie:

Are ther any such matters from your perspective?

Guy

----- Original Message -----
From: laurie.sahatjian
Sent: 03/31/2006 02:45 PM
To: Guy V Johnson/AE/DuPont@DuPont
Cc: laurie.sahatjian@kochind.com
Subject: RE: 3-31-2006 duPont letter

Guy,

    Regardless of whether Morgan Lewis believes they have
"terminated" or otherwise concluded their relationship with Koch, as you
know that does not relieve them from all obligations to Koch. Rather,
when an attorney-client relationship is discontinued, the attorney
continues to have the obligation to retain as confidential, and not to
use, the confidences or secrets of the former client. Further, the
attorney is not permitted, without the consent of the former client,
to represent another person or entity in a substantially related matter in
which that person's or entity's interests are materially adverse to the
interests of the former client. I have consulted with Mark and Chris
and we have never been contacted by Morgan Lewis to give our consent and
we have not given our consent.

    As discussed in our letter, we want to be assured that Morgan
Lewis walls off all partners, counsel, associates, paralegals and other
employees who assisted in any representation of Koch that is in any way
related to the subject matter of any of the matters that are at issue
between INVISTA and DuPont and that Morgan Lewis is in no way using (and
will not use in the future) any confidential, proprietary or secret
information that it learned during its representation of Koch.

    We can discuss on Monday.

Laurie

-----Original Message-----
From: Guy V Johnson [mailto:Guy.V.Johnson@USA.dupont.com]
Sent: Friday,March 31,2006 12:58 PM
To: Sahatjian, Laurie (Koch Legal)
Cc: Guy V Johnson
Subject: Re: 3-31-2006 duPont letter

Laurie:

I believe they sent a letter terminating their relationship with Koch.

Guy

----- Original Message -----
From: laurie.sahatjian

07/18/2008

Sent: 03/31/2006 01:16 PM
To: Guy V Johnson/AE/DuPont@DuPont
Subject: RE: 3-31-2006 duPont letter

Thanks. We're not aware they cleared any conflicts, so I will check
into it. We'll see you early am Monday.

Have a good weekend,

Laurie

-----Original Message-----
From: Guy.V.Johnson@USA.dupont.com [mailto:Guy.V.Johnson@USA.dupont.com]

Sent: Friday,March 31,2006 12:00 PM
To: Hye, Vicki
Cc: Sahatjian, Laurie (Koch Legal); Guy V Johnson
Subject: Re: 3-31-2006 duPont letter

LAURIE:

    See you Monday at 7:30 am.  My understanding is the Morgan Lewis
cleared any potential conflicts with Koch Industries, Inc. sometime ago.

    We'll be pleased to hear your presentation and then we can discuss
specifics about the 10 NSR/PSD projects.

    I'll need a "hard stop" about 3:00 pm, as I need to get back to
Wilmington and then drive to Harrisburg, PA.

    Have a good weekend.


    Guy



        HyeV@kochind.com



        03/31/2006 12:25
To
        PM              Guy V Johnson/AE/DuPont@DuPont


cc
                        laurie.sahatjian@kochind.com


Subject
                        3-31-2006 duPont letter

(sent on behalf of Laurie Sahatjian)
<<dupont.PDF>>
(See attached file: dupont.PDF)

This communication is for use by the intended recipient and contains
information that may be Privileged, confidential or copyrighted under
applicable law. If you are not the intended recipient, you are hereby
formally notified that any use, copying or distribution of this e-mail,
in whole or in part, is strictly prohibited. Please notify the sender by
return e-mail and delete this e-mail from your system. Unless explicitly
and conspicuously designated as "E-Contract Intended", this e-mail does
not constitute a contract offer, a contract amendment, or an acceptance
of a contract offer. This e-mail does not constitute a consent to the
use of sender's contact information for direct marketing purposes or for
transfers of data to third parties.

Francais Deutsch Italiano  Espanol  Portugues  Japanese  Chinese  Korean

http://www.DuPont.com/corp/email_disclaimer.html

This communication is for use by the intended recipient and contains
information that may be Privileged, confidential or copyrighted under
applicable law. If you are not the intended recipient, you are hereby
formally notified that any use, copying or distribution of this e-mail,
in whole or in part, is strictly prohibited. Please notify the sender by
return e-mail and delete this e-mail from your system. Unless explicitly
and conspicuously designated as "E-Contract Intended", this e-mail does
not constitute a contract offer, a contract amendment, or an acceptance
of a contract offer. This e-mail does not constitute a consent to the
use of sender's contact information for direct marketing purposes or for
transfers of data to third parties.

Francais Deutsch Italiano  Espanol  Portugues  Japanese  Chinese  Korean

http://www.DuPont.com/corp/email_disclaimer.html

This communication is for use by the intended recipient and contains
information that may be Privileged, confidential or copyrighted under
applicable law. If you are not the intended recipient, you are hereby
formally notified that any use, copying or distribution of this e-mail,
in whole or in part, is strictly prohibited. Please notify the sender by
return e-mail and delete this e-mail from your system. Unless explicitly
and conspicuously designated as "E-Contract Intended", this e-mail does
not constitute a contract offer, a contract amendment, or an acceptance
of a contract offer. This e-mail does not constitute a consent to the
use of sender's contact information for direct marketing purposes or for
transfers of data to third parties.

Francais Deutsch Italiano  Espanol  Portugues  Japanese  Chinese  Korean

http://www.DuPont.com/corp/email_disclaimer.html

This communication is for use by the intended recipient and contains
information that may be Privileged, confidential or copyrighted under
applicable law. If you are not the intended recipient, you are hereby
formally notified that any use, copying or distribution of this e-mail,
in whole or in part, is strictly prohibited. Please notify the sender by
return e-mail and delete this e-mail from your system. Unless explicitly
and conspicuously designated as "E-Contract Intended", this e-mail does
not constitute a contract offer, a contract amendment, or an acceptance
of a contract offer. This e-mail does not constitute a consent to the
use of sender's contact information for direct marketing purposes or for
transfers of data to third parties.

Francais Deutsch Italiano  Espanol  Portugues  Japanese  Chinese  Korean

http://www.DuPont.com/corp/email_disclaimer.html

07/18/2008

EXHIBIT F

Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103-2921
Tel: 215.963.5000
Fax: 215.963.5001
www.morganlewis.com



**Michael A. Bloom**
Partner
215.963.5032
mbloom@morganlewis.com

VIA E-MAIL AND FIRST CLASS MAIL

April 4, 2006

Laurie Crick Sahatjian
Associate General Counsel – Environmental Health & Safety
Koch Industries Inc.
4111 East 37th Street North
Wichita, KS  67220

Re:   <u>Representation of E.I. DuPont de Nemours and Company ("duPont")</u>

Dear Ms. Sahatjian:

Michael Steinberg has forwarded me your letter of March 31, 2006, addressed to Guy V. Johnson of duPont, regarding Morgan Lewis's representation of duPont in connection with various contractual claims that Koch has asserted against duPont under a Purchase Agreement dated November 16, 2003.  As Attorney for the Firm and Chairman of the Firm's Standing Committee on Conflicts and Professional Responsibility, I have inquired about the matter and can respond to you as follows:

First, as you know, Morgan Lewis has in the past represented Koch in connection with specific environmental and OSHA matters at various industrial facilities owned and operated by Koch or its affiliates.  Each of those matters had concluded by late 2003 or early 2004.  We have performed no work for Koch or its affiliates in the last two years.

Second, the contractual claims asserted by Koch against DuPont clearly are not "substantially related" to the limited work that Morgan Lewis performed for Koch some years ago.  Our work for Koch involved alleged violations of environmental and OSHA requirements at particular Koch facilities.  Our current work for DuPont, on the other hand, involves contractual claims under the Purchase Agreement dated November 16, 2003, which in some cases turn on the compliance status of various DuPont manufacturing facilities in May of 2004, when those facilities were transferred to INVISTA pursuant to that Purchase Agreement.  These matters are not "substantially related".



Ms. Sahatjian
Page 2

Third, because the current representation of DuPont is not "substantially related" to our former work for Koch, there is no obligation here to "wall off" or screen from this representation any of the Morgan Lewis attorneys who were at one time involved in the representation of Koch.

Fourth, we understand, and we take most seriously, our professional obligations to Koch as a former client, most notably in this context our responsibility to protect confidential information obtained by our lawyers from Koch. We can assure you that we have fulfilled that obligation to preserve the confidentiality of this information and we shall continue to do so in the future.

Should you have any questions about our response or any related matter, I would encourage you to call me. I remain

Sincerely,

Michael A. Bloom


cc:    Michael W. Steinberg
       Troy S. Brown

EXHIBIT G

 **KOCH** INDUSTRIES INC

LEGAL DEPARTMENT                                April 7, 2006

**LAURIE CRICK SAHATJIAN**
ASSOCIATE GENERAL COUNSEL
ENVIRONMENTAL HEALTH & SAFETY

<u>**Via E-Mail and First Class Mail**</u>

Michael A. Bloom, Esq.
Morgan Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA  19103-2921

Dear Mr. Bloom:

We are in receipt of your April 4, 2006 letter.

We appreciate your confirmation that Morgan Lewis has and will continue to maintain the confidentiality of the information it learned during its representations of Koch Industries, Inc. ("Koch") and that such information will in no way be utilized in the representation of DuPont or shared with DuPont. However, we disagree with the other conclusions in your letter.

As you acknowledge, Morgan Lewis represented Koch in substantive environmental and OSHA matters. You claim that your representation of DuPont is not "substantially related" to these prior representations of Koch because the disputes between INVISTA, Koch's wholly-owned subsidiary, and DuPont arise out of a purchase agreement and are contractual in nature. However, as you appear to acknowledge, the substantive matters underlying the contractual indemnity claims arise, inter alia, from violations of substantive laws such as the Clean Air Act and OSHA, among others, that are the very same substantive laws that formed the basis of the legal services you provided to Koch. In our view, it is clear that the matters at issue in your representation of DuPont are substantially related to the matters that formed the subject matter of your representation of Koch, and we disagree with your conclusion that Morgan Lewis is not obligated, at a minimum, to wall off from the representation of DuPont those attorneys and other personnel who were involved in the Koch representation.

We are troubled by the fact that you have given our proposed solution such short shrift and we, of course, reserve all rights to object to Morgan Lewis's representation of DuPont.

Sincerely,

Laurie C. Sahatjian

cc:     Guy Johnson, Esq.
        Mark V. Holden, Esq.
        Christopher R. Graham, Esq.
        Ben Preziosi, Esq.